UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JEAN OLIVER

                 Plaintiff,

        -against-

NEW YORK STATE POLICE; JOSEPH
D'AMICO, in his individual and official capacity;
FRANCIS CHRISTENSEN, in his individual and
official capacity; MICHAEL CERRETTO, in his
individual and official capacity; WAYNE OLSON,
in his individual and official capacity; STEVEN
NIGRELLI, in his individual and official capacity;
MARTIN MCKEE, in his individual and official
capacity; TIMOTHY OWENS, in his individual
and official capacity; PAUL KELLY, in his
individual and official capacity; TIMOTHY
BOUR, in his individual and official capacity; and
GARY KOPACZ, in his individual and official
capacity,

                 Defendants.

INDEX NO. 15-cv-0444 (BKS)

**VERIFIED SECOND AMENDED
COMPLAINT**

**JURY TRIAL DEMANDED**

JEAN OLIVER, by and through her attorneys, Sanders & Sanders, alleges the following:

## NATURE OF COMPLAINT

1. This is a proceeding for declaratory relief, an injunction, and damages for violations of

   Plaintiff's rights under the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.; the

   Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq*.; the Civil Rights Act of 1871, 42

   U.S.C. §§ 1983, 1985(3), and 1986; the New York State Human Rights Law, Executive

   Law § 296.

2. Plaintiff contends all defendants engaged in disparate treatment, harassment and

   retaliation, and took adverse employment actions against her, based on her sex and a

   perceived disability.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1343.

4. This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief pursuant to 28 U.S.C. §§ 2201-202; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorney fees under 42 U.S.C. §§ 1988 and 2000e-5(k).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(1)(B)(3) because at least some of the discriminatory acts described in this Complaint occurred in this district and Plaintiff's employment records are most likely maintained in this district.

## PARTIES

6. Plaintiff, Jean Oliver, is a female resident of the State of New York over 18 years of age and has been at all relevant times hereto.

7. Defendant, New York State Police ("State Police"), is an executive department within the executive branch of the State of New York, with a principal office located at Building, 22, 1220 Washington Ave., Albany, NY 12226-2252.

8. Upon information and belief, the State Police meets the minimum requirements for employees under Title VII and the Human Rights Law.

9. The following defendants are referred to as the "individual defendants" herein.

10. Joseph D'Amico is a resident of the State of New York, is the duly appointed Superintendent ("Superintendent") of the State Police and has been at all relevant times hereto. He is named in his individual and official capacity as an employee acting under color of state law.

11. Colonel Francis Christensen is a resident of the State of New York, is the Deputy Superintendent in charge of Employee Relations for the State Police and has been at all relevant times hereto.  He is named in his individual and official capacity as an employee acting under color of state law.

12. Major Michael Cerretto is a resident of the State of New York who oversaw the entirety of Troop A during the relevant period.  He is named in his individual and official capacity as an employee acting under color of state law.

13. Major Wayne Olson is a resident of the State of New York, is a detail commander for the State Police and was one of Plaintiff's supervisors during the relevant period.  He is named in his individual and official capacity as an employee acting under color of state law.

14. Major Steven Nigrelli, is a resident of the State of New York, was Captain of the Troop A Criminal Investigation Bureau for the State Police and was one of Plaintiff's supervisors during the relevant period and is presently Troop A commander.  He is named in his individual and official capacity as an employee acting under color of state law.

15. Lieutenant Martin McKee is a resident of the State of New York and was one of Plaintiff's supervisors during the relevant period.  He is named in his individual and official capacity as an employee acting under color of state law.

16. Lieutenant Timothy Owens is a resident of the State of New York and was the investigator into the allegations made against Plaintiff.  He is named in his individual and official capacity as an employee acting under color of state law.

3

17. Senior Investigator Paul Kelly is a resident of the State of New York and was one of Plaintiff's supervisors during the relevant period. He is named in his individual and official capacity as an employee acting under color of state law.

18. Senior Investigator Timothy Bour is a resident of the State of New York and was one of Plaintiff's supervisors during the relevant period. He is named in his individual and official capacity as an employee acting under color of state law.

19. Senior Investigator Gary Kopacz is a resident of the State of New York and was one of Plaintiff's supervisors during the relevant period. He is named in his individual and official capacity as an employee acting under color of state law.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

20. As a result of sexual harassment and gender discrimination encountered while assigned to the Community Narcotics Enforcement Team ("CNET"), Plaintiff filed an informal complaint on October 26, 2013 with the State Police EEO Office.

21. Plaintiff then filed a formal complaint and an investigation ensued on November 19, 2013.

22. On or about September 15, 2014, Plaintiff met with an investigator in the Equal Employment Opportunity Commission ("EEOC") offices in order to file a formal charge of discrimination against the State Police. The investigator failed to file a formal charge on Plaintiff's behalf at that time.

23. Thereafter, Plaintiff returned to the EEOC offices, met with a different investigator and filed a formal charge of discrimination with the EEOC on September 25, 2014, which was dual-filed with the New York State Division of Human Rights ("NYSDHR"). (Exhibit 1). The charge, numbered 525-2014-00792, alleged sex discrimination,

4

harassment and retaliation.  The EEOC issued a determination on January 29, 2015

finding probable cause that gender discrimination and retaliation occurred.  (Exhibit 2).

The determination notified Plaintiff of her right to sue letter concerning those allegations

with respect to which it did not find probable cause.  Following review and conciliation

efforts by the Department of Justice into the claims the EEOC had found probable cause,

it issued a right to sue letter on those claims the EEOC found probable cause for on

October 7, 2015.  (Exhibit 3).

24. Plaintiff filed a second EEOC charge on May 20, 2015, dual-filed with the NYSDHR.

(Exhibit 4).  The charge, number 525-2015-00545, alleged continued retaliation against

Plaintiff, also after she was transferred.  The EEOC issued a right to sue letter, dated May

22, 2015 (Exhibit 5), and a letter informing Plaintiff that the May 20, 2015 EEOC charge

is subsumed by her prior EEOC Charge and is address in her already filed initial federal

complaint.  (Exhibit 6).

25. Plaintiff filed a formal complaint of discrimination with the New York State Division of

Human Rights ("NYSDHR") on July 16, 2015, which was dual-filed with the Equal

Employment Opportunity Commission.  (Exhibit 7).  The NYSDHR complaint,

numbered 10176304, alleged sex discrimination, harassment, disability discrimination,

military status discrimination and retaliation.  By determination dated September 23,

2015 the NYSDHR dismissed the complaint for administrative convenience.  (Exhibit 8).

On October 23, 2015 the EEOC issued a right to sue letter on all allegations in the

complaint.  (Exhibit 9).

## FACTUAL ALLEGATIONS

26. Plaintiff began working for Defendant on October 23, 1997 as a New York State Trooper.

27. Throughout Plaintiff's employment with Defendant she had never received negative comments in a performance evaluation until after she made the complaints discussed herein.

28. Plaintiff was promoted to the position of investigator in 2005 and was assigned to the Batavia Downs Video Lottery Unit, where she had no issues with sexual harassment.

29. In 2008, Plaintiff was assigned to CNET West based in Batavia, NY.  CNET's function is a drug investigation unit.

30. As a member of CNET, Plaintiff was assigned to and responsible for participating in and initiating drug investigations, including undercover operations, writing and executing search warrants, dealing with confidential informants, and working with other police agencies performing the same and similar tasks.

31. During her entire time at CNET West, Plaintiff was subjected to a "boys club" atmosphere.

32. During that same period, Investigator Jeremy Peterson inappropriately put his hands all over Plaintiff on multiple occasions without her consent and without any discipline.

33. On multiple occasions, Investigator Peterson would get Plaintiff's attention then swirl his tongue around his lips in a sexually implicit manner.

34. Investigator Peterson also slapped Plaintiff's buttocks on multiple occasions.  He would brazenly come up behind Plaintiff, in the presence of others, take a file or his hand and slap her buttocks.

35.  On some occasions, usually while Plaintiff was turned the other way typing, Investigator Peterson would come up behind Plaintiff and suddenly grab her waist and on one occasion, kissed her on the back of her neck.

36. Investigator Peterson would repeatedly run over to Plaintiff as soon as he would see her in the office and start hugging her.

37. On some occasions, usually while Plaintiff was turned the other way filing, Investigator Peterson would come up behind Plaintiff and kiss her on the cheek.

38. Investigator Peterson made countless sexual comments concerning Plaintiff's body with sexual innuendos.

39. None of this was welcomed by Plaintiff, but it was accepted within the office.

40. Upon information and belief, most employees and supervisors in CNET West and the Batavia office knew what Investigator Peterson did to Plaintiff and many employees witnessed his inappropriate conduct.

41. Things got worse in late 2013 when Senior Investigator Paul Kelly became Plaintiff's supervisor.

42. Senior Investigator Kelly was the leader of the "boys club" at CNET West and the primary instigator for the sexually harassing behavior taken against Plaintiff.

43. Senior Investigator Kelly made condescending and demeaning remarks about Plaintiff based on her sex on a frequent basis.

44. Senior Investigator Kelly made it clear what he really wanted from Plaintiff and what he saw her as to the point that other employees told Plaintiff to just have sex with Senior Investigator Kelly.

45. Senior Investigator Kelly's actions were meant to impose his dominance over Plaintiff in order to get her to ultimately acquiesce to what he truly wanted.

46. Senior Investigator Kelly, on multiple occasions, stood uncomfortably close to Plaintiff when reviewing files to the point his body was touching hers and she was so intimidated by him she was afraid to move.

47. Senior Investigator Kelly also positioned himself in such a way to put himself in close proximity to Plaintiff's private areas, including forcing Plaintiff to sit in the massage chair in his office then positioning himself in various ways to be in close proximity to Plaintiff's private areas.

48. Senior Investigator Kelly asked Plaintiff to review files outside the presence of others, again, in order to exert his dominance over her and position himself in sexually demeaning ways.

49. Senior Investigator Kelly never got that close with Plaintiff's male coworkers.

50. Senior Investigator Kelly was loud and intimidating, which caused others in the office to either willingly or unwillingly go along with his treatment toward Plaintiff.  It also encouraged other employees to engage in similar treatment.

51. Lieutenant McKee was aware of this conduct and let it continue.

52. Male employees were not subjected to this treatment.

53. Moreover, male employees were given more responsibility and put in charge of larger investigations than their female coworkers.

54. Nor were female employees asked to participate in training of other investigators, that went to male employees.

55. Ultimately, women were there in the same job as the men, but were excluded from decision-making and other higher-level functions.

56. Plaintiff's supervisors, including Major Nigrelli, Lieutenant McKee, and Senior Investigator Kelly, also knew about the harassment by others toward Plaintiff, including both physical and non-physical harassment.

57. Lieutenant McKee's and Senior Investigator Kelly's actual treatment and outright acceptance of the treatment by others of Plaintiff created a sexually hostile work environment that permeated to other members of the State Police in CNET West.  Other male members of CNET West engaged in similar behavior due to the atmosphere and tacit permission to harass created by the supervisors.

58. Plaintiff did not welcome or encourage any of the discriminatory or harassing conduct made toward her.

59. Plaintiff filed an informal complaint on October 26, 2013 with the State Police EEO office setting forth the sex discrimination and harassment she was subjected to.

60. Plaintiff then filed a formal complaint on November 19, 2013.

61. Following Plaintiff's complaint, where Plaintiff described in detail to IAB personnel, an incident where Investigator Peterson approached Plaintiff and began to swirl his tongue in a sexually implicit manner, Investigator Peterson then on two separate occasions approached Plaintiff while she was in the midst of having a conversation with her co-workers, at which time Investigator Peterson stepped into the middle of the conversation to stick his tongue out at Plaintiff, this time in a childlike manner, before walking away.

62. Plaintiff reported this to the EEO office and many of the same types of activities described above on an almost daily basis to supplement her complaint.

63. Lieutenant McKee ordered some CNET employees to fabricate statements against Plaintiff in order to discredit her during the investigation into her complaints and told other employees at CNET West to keep quiet about the allegations Plaintiff made in her internal complaints.

64. Immediately following Plaintiff's complaint, she was retaliated against when she was transferred and reassigned in retaliation for making her complaints.

65. As part of Plaintiff's reassignment, she was forced to work in the Eastern Region of CNET West.  Plaintiff's commute increased by 2 to 3 hours as a result.  Thus, instead of working out of the satellite offices, Plaintiff was actually moved to Senior Investigator Kelly's primary office where she was subjected to even more time under his supervision, most of that time alone.

66. Upon reassignment, Plaintiff's official supervisor became Senior Investigator Timothy Bour.

67. Lieutenant McKee, Major Olson, and Colonel Christensen were aware that by transferring Plaintiff they were actually putting Plaintiff on the same team as one of the employees she complained about sexually harassing her, Jeremy Peterson, which caused Plaintiff to be subject to further harassment and retaliation as well.

68. None of the individuals Plaintiff complained about were reassigned.

69. Defendant never did anything to stop the discrimination, harassment and retaliation.  In fact, it hardly even investigated.  And to the extent it did investigate, Defendant left all of the investigative files on what is called the "Share Drive," which is accessible to all members of the State Police.  As a result, Plaintiff's confidentiality was violated and the veracity of any investigation was compromised.

10

70. In fact, all of Plaintiff's supervisors, including Senior Paul Kelly and Timothy Bour, monitored the statements submitted concerning Plaintiff's EEO complaints and steered the statements made by others accordingly in order to cover for the actions of themselves and others.

71. The discrimination, harassment and retaliation did not stop upon the reassignment. Senior Investigator Bour belittled Plaintiff, laughed at her about the complaints she was making, excluded her from operations, and claimed she suffered from post-traumatic stress disorder ("PTSD"), which was made up because Plaintiff did not suffer from PTSD.

72. In or about January 2014, Lt. McKee authorized false allegations made against Plaintiff relating to her activity during an undercover operation done jointly with the Cheektowaga Police Department in order to substantiate he and Senior Investigator Bour's claim that Plaintiff suffered from PTSD.

73. Timothy Bour, Plaintiff's new supervisor, gave her the first negative comments in a performance evaluation she had ever received from the State Police just minutes before Plaintiff was leaving for an undercover operation where she was the buyer in order to get her in a wrong state of mind for the operation.

74. Thereafter, Plaintiff discovered that she was actually being video recorded during that undercover operation.  While audio monitoring operations was normal, video recording the undercover operative was not because it put the operative in danger of being detected. Yet, Plaintiff was video recorded working as an undercover operative and put in serious danger as a result.

75. Thereafter Lt. McKee directed members of Plaintiff's team to falsify derogatory memoranda against Plaintiff while at the same time both he and Senior Investigator Bour informed Major Olson that Plaintiff was also suffering from PTSD. Lt. McKee and Senior Investigator Bour then notified Plaintiff that they needed to also advise all of Plaintiff's coworkers that her undercover duties were taken away by Major Olson because she was suffering from PTSD. When Plaintiff questioned both Lt. McKee and Senior Investigator Bour as to why they would make such false allegations, they responded by informing Plaintiff that they didn't want to get into trouble for failing to report this to Major Olson if Plaintiff suddenly decided to commit suicide with her service weapon.

76. Senior Investigator Bour even told Major Olson and other supervisors that Plaintiff was going to commit suicide in order to have her removed from CNET.

77. Plaintiff notified Major Olson the allegations made against her were false and suggested he speak with members of the Cheektowaga Police Department, who was also involved in the undercover operation. Upon information and belief, neither Wayne Olson nor anyone else at the State Police did so.

78. Plaintiff was removed from her undercover duties by Major Olson based on the false claims made to him by Senior Investigator Timothy Bour and Lt. Martin McKee that she was suffering from PTSD.

79. Plaintiff is a Captain in the United States Army Reserves.

80. Plaintiff had only recently returned from a tour of duty in Afghanistan when she was removed from undercover duties. Plaintiff has never suffered from PTSD and has never been diagnosed or treated for PTSD.

81. While Plaintiff was permitted to return to undercover work in March 2014, Wayne Olson still required her to only engage in such work under the direct supervision of Lieutenant McKee and was never actual given any more undercover duties.

82. Lieutenant McKee and Plaintiff's other supervisors put Plaintiff in situations where she was set up to fail in order to sabotage her performance in the hopes they could bring disciplinary charges against her as a result.

83. On May 15, 2014, Plaintiff was notified that she had been accused of stealing files by Lieutenant McKee, and that unless she agreed to immediately transfer out of CNET West, a Personnel Complaint would be filed against her.  Investigator Scott Gilman presented Plaintiff with the accusations and told her that the only way she could make the personnel complaint go away was to agree to transfer out of CNET.

84. As a result of this false allegation and pressure, Plaintiff submitted a transfer request and was immediately reassigned to the Counter Terrorism Intelligence Unit ("CTIU") under Senior Investigator Gary Kopacz.  Plaintiff did not willingly transfer.

85. On May 16, 2014 Plaintiff was escorted to her desk, in the presence of her coworkers, to retrieve her personal belongings.  Plaintiff was also forced to turn over her weapon and her deceased father's holster.  There was no policy precluding Plaintiff from using her father's holster.  Plaintiff's personal holster has yet to be returned, even though Defendant knows the sentimental value it holds.

86. Major Michael Cerretto was the commander for Troop A during this period.  He, along with Colonel Francis Christensen, were the highest chain of command over Troop A other than the Superintendent.

87. They created the "boys club" atmosphere at Troop A and let it continue.

88. Colonel Christensen, Deputy Superintendent for the State Police, sided with Plaintiff's supervisors and spearheaded the movement to remove Plaintiff from CNET West based on these fabricated allegations.

89. Thereafter, on June 20, 2014, Plaintiff was notified that she was the subject of a Level 4 personnel complaint, which is the highest level of complaint that can be made against a member of the State Police.

90. On September 8, 2014 Plaintiff filed a grievance challenging the circumstances leading to her forced transfer.

91. Also in September 2014, Captain Steven Nigrelli twice threatened Plaintiff with personnel complaints for the same conduct that male employees never received complaints for if she did not drop her complaints.

92. Thereafter, on October 21, 2014 Plaintiff received a Level 4 personnel complaint – which is the highest level of complaint that can be made against a member of the State Police.

93. Initially, Martin McKee and Paul Kelly made false claims and created false documentation in order to support this complaint.

94. Thereafter, Captain Nigrelli and Senior Investigator Gary Kopacz, Plaintiff's new supervisor, created additional false documentation and lied in order to address obvious inconsistencies from the initial complaint resulting from the lies that would have resulted in it being dismissed.

95. Defendant skipped its policy of an informal inquiry and instead just brought the complaint.

96. Plaintiff requested a hearing at that time.  However, Defendant did nothing with respect to the complaint, violating its own policy requiring a hearing be scheduled within 20 days of a request.

97. Lieutenant Timothy Owens was in charge of the State Police investigation and covered up evidence based on the direction of his supervisors and ignored the retaliatory motivations for bringing the charge against Plaintiff to begin with.

98. Plaintiff filed a second grievance on October 27, 2014, after the Level 4 Personnel Complaint was lodged against her and other, less senior, investigators were transferred to CNET West.

99. After Plaintiff's transfer she repeatedly sought to transfer back to CNET West.

100.  Colonel Christensen is the Deputy Superintendent of Employee Relations and is responsible for the filling of vacancies.  He singled Plaintiff out and refused to transfer her back to CNET West as requested.

101.  Even though Colonel Christensen was involved in Plaintiff's transfer and her complaint, he named himself the hearing officer and presided over Plaintiff's hearing into her two grievances, where he denied both of them.

102.  Plaintiff filed an EEOC charge on May 20, 2015 alleging continued discriminatory, harassing and retaliatory action taken against her after her transfer to CTIU.

103.   Senior Investigator Gary Kopacz, in coordination with Captain Nigrelli, poisoned the members of CTIU before Plaintiff even arrived, and continued to do so during her entire time there.

104.  Senior Investigator Kopacz told other members he was "sick to his stomach" that Plaintiff was coming to CTIU and that "they would get through this."

105.  Senior Investigator Kopacz made many false and derogatory statements about Plaintiff, carrying over the lies from her previous supervisors at CNET.

106.  Senior Investigator Kopacz stated to others that Plaintiff was "fucking crazy," which was then spread to others.

107.  This continued to spread the idea around the State Police that Plaintiff was suffering from a disability related to PTSD.

108.  Senior Investigator Kopacz, in concert with Captain Nigrelli, Major Olson and Colonel Christensen, undermined Plaintiff's authority and continued to damage her career after the transfer.

109.  Following Plaintiff's transfer, she was hardly given any job duties and spent most days at the office with almost no work to do.  Plaintiff was literally forced to be in her office most days staring at a wall.  Plaintiff's career was sabotaged as a result of her complaints.

110.  Plaintiff also applied for promotions to Senior Investigator during the period in question, yet, she was twice denied promotions by Colonel Christensen.

111.  However, on May 29, 2015, just nine days after Plaintiff's second EEOC charge, she received an amended Level 4 personnel complaint.

112.  Colonel Christensen, the head of IAB, and Major Cerretto, pushed the complaint against Plaintiff even after the initial charges brought against her were clearly meritless by amending the charges to include additional false claims.

113.  But for the actions of the individual defendants working together to falsify allegations against Plaintiff, she never would have had charges brought against her.

114.  Plaintiff's hearing was scheduled for June 30 and July 1, 2015, even though Plaintiff was previously scheduled to be out serving active duty in the Army reserves for two

weeks during the month of June, which the State Police knew about before the hearing

was scheduled, hindering her ability to prepare for the hearing.

115.  On June 30 and July 1, 2015 Defendant held an administrative hearing into the

allegations against Plaintiff.

116.  During the hearing, Major Nigrelli, Lieutenant McKee, Senior Investigator Bour and

Senior Investigator Kopacz all lied about the events surrounding the charges against

Plaintiff.

117.  As a result of the falsified evidence created by the individual defendants, the hearing

panel found Plaintiff guilty of the charges and recommended termination, which Joseph

D'Amico, the State Police Superintendent, adopted, on July 14, 2015.

118.  Following Plaintiff's termination, the State Police unlawfully caused a search to be

done of Plaintiff's house for supposed pistols she no longer had a permit for as a result of

her termination.  The State Police, without a warrant, surrounded Plaintiff's home, in the

presence of her neighbors, and conducted a search of her house.  However, Plaintiff was

in possession of no such pistols, which the State Police had reason to know even before

the search.

## FIRST CAUSE OF ACTION
## SEX DISCRIMINATION UNDER TITLE VII, 42 U.S.C. § 2000 *et seq*.

119.  Plaintiff repeats and realleges every allegation in paragraphs 1 through 118 of this

Complaint with the same force and effect as though fully set forth herein.

120.  At all relevant times herein, Plaintiff was a female employee with the meaning of Title

VII and the State Police was an employer within the meaning of Title VII.

121.  The State Police engaged in a pattern and practice of discrimination against Plaintiff on

the basis of sex in violation of Title VII by subjecting Plaintiff to disparate treatment,

which included discriminatory terms and conditions of employment and adverse

employment actions, as described above.

122.  The State Police created and maintained an atmosphere of hostility toward females.

123.  The State Police failed to adequately supervise, control, discipline or otherwise remedy

the conduct of Plaintiff's supervisors.

124.  As a direct result of the State Police's acts set forth herein against Plaintiff, Plaintiff has

lost past and future wages and other employment benefits, and has suffered damage to

her reputation and severe and lasting embarrassment, humiliation and anguish, and other

incidental and consequential damages and expenses.

### SECOND CAUSE OF ACTION
### SEXUAL HARASSMENT HOSTILE WORK ENVIRONMENT UNDER TITLE VII, 42 U.S.C. § 2000 *et seq.*

125.  Plaintiff repeats and realleges every allegation in paragraphs 1 through 124 of this

Complaint with the same force and effect as though fully set forth herein.

126.  At all relevant times herein, Plaintiff was a female employee with the meaning of Title

VII and the State police was an employer within the meaning of Title VII.

127.  The State Police engaged in a pattern and practice of harassment amounting to a hostile

work environment on the basis of sex in violation of Title VII by subjecting Plaintiff to

sexual physical touching, non-physical sexual intimidation and dominance and repeated

sexual remarks as described above.

128.  The State Police created and maintained an atmosphere of hostility toward females.

129.  The State Police failed to adequately supervise, control, discipline or otherwise remedy

the conduct of Plaintiff's supervisors.

130.  As a direct result of the State Police's acts set forth herein against Plaintiff, Plaintiff has lost past and future wages and other employment benefits, and has suffered damage to her reputation and severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

**THIRD CAUSE OF ACTION**
**RETALIATION UNDER TITLE VII, 42 U.S.C. § 2000 *et seq*.**

131.  Plaintiff repeats and realleges every allegation in paragraphs 1 through 130 of this Complaint with the same force and effect as though fully set forth herein.

132.  At all relevant times herein, Plaintiff was a female employee with the meaning of Title VII and the State Police was an employer within the meaning of Title VII.

133.  The State Police engaged in retaliation against Plaintiff by subjecting Plaintiff to disparate treatment and adverse employment actions as described above.

134.  The State Police created and maintained an atmosphere of hostility toward females.

135.  The State Police failed to adequately supervise, control, discipline or otherwise remedy the conduct of Plaintiff's supervisors.

136.  As a direct result of the State Police's acts set forth herein against Plaintiff, Plaintiff has lost past and future wages and other employment benefits, and has suffered damage to her reputation and severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

**FOURTH CAUSE OF ACTION**
**DISABILITY DISCRIMINATION UNDER THE REHABILITATION ACT OF 1973, 29 U.S.C. 701, *et seq*.**

137.  Plaintiff repeats and realleges every allegation in paragraphs 1 through 136 of this Complaint with the same force and effect as though fully set forth herein.

138.  At all relevant times herein, the State Police was Plaintiff's employer and received federal financial assistance as required by the Rehabilitation Act.

139.  The State Police regarded Plaintiff as disabled in violation of the Rehabilitation Act by subjecting Plaintiff to disparate treatment, which included discriminatory terms and conditions of employment and adverse employment actions, as described above.

140.  The State Police failed to adequately supervise, control, discipline or otherwise remedy the conduct of Plaintiff's supervisors.

141.  As a direct result of the State Police's acts set forth herein against Plaintiff, Plaintiff has lost past and future wages and other employment benefits, and has suffered damage to her reputation and severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

## FIFTH CAUSE OF ACTION
## SEX DISCRIMINATION BY INDIVIDUAL DEFENDANTS IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE 14TH AMENDMENT BROUGHT UNDER 42 U.S.C. § 1983

142.  Plaintiff repeats and re-alleges every allegation in paragraphs 1 through 141 of this Complaint with the same force and effect as though fully set forth herein.

143.  The individual defendants have violated the provisions of 42 U.S.C. § 1983 in that acting under the color of law, they jointly and/or severally have deprived Plaintiff of her rights, privileges, and/or immunities as provided by the Constitution of the United States and its laws.

144.  That the individual Defendants acted with intent to violate or with deliberate or reckless indifference to Plaintiff's clearly established rights under the Fourteenth Amendment.

145.  At the time of the discriminatory actions described above, the prohibition of sex discrimination under the Equal Protection Clause was clearly established.

146. The individual defendants purposefully discriminated against Plaintiff based on sex.

147. The individual defendants created and maintained an atmosphere of hostility toward

females.

148. The individual defendants failed to adequately supervise, control, discipline or

otherwise remedy the conduct of Plaintiff's supervisors.

149. As a direct result of the individual defendants' acts set forth herein against Plaintiff,

Plaintiff has lost past and future wages and other employment benefits, and has suffered

damage to her reputation and severe and lasting embarrassment, humiliation and anguish,

and other incidental and consequential damages and expenses.

150. The individual defendants' conduct was outrageous, was done in a deliberate and

malicious manner intended to injure Plaintiff and was done in conscious disregard to

Plaintiff's rights.  Therefore, Plaintiff is entitled to an award of punitive damages.

151. Due to the ongoing nature of the alleged conduct, Plaintiff seeks prospective injunctive

relief against defendants D'Amico and Christensen as the ultimate appointing authorities

and against all individual defendants to cease from the discriminatory, harassing, and

retaliatory acts described herein.

## SIXTH CAUSE OF ACTION
### SEXUAL HARASSMENT HOSTILE WORK ENVIRONMENT DISCRIMINATION BY INDIVIDUAL DEFENDANTS IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE 14TH AMENDMENT BROUGHT UNDER 42 U.S.C. § 1983

152. Plaintiff repeats and re-alleges every allegation in paragraphs 1 through 151 of this

Complaint with the same force and effect as though fully set forth herein.

153. The individual defendants have violated the provisions of 42 U.S.C. § 1983 in that

acting under the color of law, they jointly and/or severally have deprived Plaintiff of her

rights, privileges, and/or immunities as provided by the Constitution of the United States and its laws.

154.  That the individual defendants acted with intent to violate or with deliberate or reckless indifference to Plaintiff's clearly established rights under the Fourteenth Amendment.

155.  At the time of the discriminatory actions described above, the prohibition of sex discrimination under the Equal Protection Clause was clearly established.

156.  The individual defendants purposefully discriminated against Plaintiff based on sex.

157.  The individual defendants created and maintained an atmosphere of hostility toward females.

158.  The individual defendants failed to adequately supervise, control, discipline or otherwise remedy the conduct of Plaintiff's supervisors.

159.  As a direct result of the individual defendants' acts set forth herein against Plaintiff, Plaintiff has lost past and future wages and other employment benefits, and has suffered damage to her reputation and severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

160.  The individual defendants' conduct was outrageous, was done in a deliberate and malicious manner intended to injure Plaintiff and was done in conscious disregard to Plaintiff's rights.  Therefore, Plaintiff is entitled to an award of punitive damages.

161.  Due to the ongoing nature of the alleged conduct, Plaintiff seeks prospective injunctive relief against defendants D'Amico and Christensen as the ultimate appointing authorities and against all individual defendants to cease from the discriminatory, harassing, and retaliatory acts described herein.

## SEVENTH CAUSE OF ACTION
## RETALIATION BY INDIVIDUAL DEFENDANTS IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE 14TH AMENDMENT BROUGHT UNDER 42 U.S.C. § 1983

162.  Plaintiff repeats and re-alleges every allegation in paragraphs 1 through 161 of this Complaint with the same force and effect as though fully set forth herein.

163.  The individual defendants have violated the provisions of 42 U.S.C. § 1983 in that acting under the color of law they, jointly and/or severally have deprived Plaintiff of her rights, privileges, and/or immunities as provided by the Constitution of the United States and its laws.

164.  That the individual defendants acted with intent to violate or with deliberate or reckless indifference to Plaintiff's clearly established rights under the Fourteenth Amendment.

165.  At the time of the discriminatory actions described above, the prohibition of retaliation under the Equal Protection Clause was clearly established.

166.  The individual defendants retaliated against Plaintiff by subjecting Plaintiff to disparate treatment and adverse employment actions as described above.

167.  The individual defendants created and maintained an atmosphere of hostility toward females.

168.  The individual defendants failed to adequately supervise, control, discipline or otherwise remedy the conduct of Plaintiff's supervisors.

169.  As a direct result of the individual defendants' acts set forth herein against Plaintiff, Plaintiff has lost past and future wages and other employment benefits, and has suffered damage to her reputation and severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

170.  The individual defendants' conduct was outrageous, was done in a deliberate and

malicious manner intended to injure Plaintiff and was done in conscious disregard to

Plaintiff's rights.  Therefore, Plaintiff is entitled to an award of punitive damages.

171.  Due to the ongoing nature of the alleged conduct, Plaintiff seeks prospective injunctive

relief against defendants D'Amico and Christensen as the ultimate appointing authorities

and against all individual defendants to cease from the discriminatory, harassing, and

retaliatory acts described herein.

**EIGHTH CAUSE OF ACTION**
**CONSPIRACY TO COMMIT SEX DISCRIMINATION BY INDIVIDUAL**
**DEFENDANTS IN VIOLATION OF THE EQUAL PROTECTION CLAUSE BROUGHT**
**UNDER 42 U.S.C. § 1983**

172.  Plaintiff repeats and re-alleges every allegation in paragraphs 1 through 171 of this

Complaint with the same force and effect as though fully set forth herein.

173.  The individual defendants have violated the provisions of 42 U.S.C. § 1983 in that

acting under the color of law they, jointly and/or severally have deprived Plaintiff of her

rights, privileges, and/or immunities as provided by the Constitution of the United States

and its laws.

174.  That the individual defendants acted with intent to violate or with deliberate or reckless

indifference to Plaintiff's clearly established rights under the Fourteenth Amendment.

175.  At the time of the discriminatory actions described above, the prohibition of sex

discrimination under the Equal Protection Clause was clearly established.

176.  The individual defendants purposefully conspired to discriminate against Plaintiff based

on sex.

177.  The individual defendants, acting in concert, created and maintained an atmosphere of

hostility toward females.

24

178. The individual defendants failed to adequately supervise, control, discipline or otherwise remedy the conduct of Plaintiff's supervisors.

179. As a direct result of the individual defendants' discrimination against Plaintiff, Plaintiff has lost past and future wages and other employment benefits, and has suffered damage to her reputation and severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

180. The individual defendants' conduct was outrageous, was done in a deliberate and malicious manner, intended to injure Plaintiff and was done in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to an award of punitive damages.

181. Due to the ongoing nature of the alleged conduct, Plaintiff seeks prospective injunctive relief against defendants D'Amico and Christensen as the ultimate appointing authorities and against all individual defendants to cease from the discriminatory, harassing, and retaliatory acts described herein.

### NINTH CAUSE OF ACTION
**CONSPIRACY TO COMMIT SEXUAL HARASSMENT HOSTILE WORK ENVIRONMENT DISCRIMINATION BY INDIVIDUAL DEFENDANTS IN VIOLATION OF THE EQUAL PROTECTION CLAUSE BROUGHT UNDER 42 U.S.C. § 1983**

182. Plaintiff repeats and re-alleges every allegation in paragraphs 1 through 181 of this Complaint with the same force and effect as though fully set forth herein.

183. The individual defendants have violated the provisions of 42 U.S.C. § 1983 in that acting under the color of law they, jointly and/or severally have deprived Plaintiff of her rights, privileges, and/or immunities as provided by the Constitution of the United States and its laws.

184.  That the individual defendants acted with intent to violate or with deliberate or reckless indifference to Plaintiff's clearly established rights under the Fourteenth Amendment.

185.  At the time of the discriminatory actions described above, the prohibition of sexual harassment under the Equal Protection Clause was clearly established.

186.  The individual defendants purposefully conspired to discriminate against Plaintiff based on sex.

187.  The individual defendants, acting in concert, created and maintained an atmosphere of hostility toward females.

188.  The individual defendants failed to adequately supervise, control, discipline or otherwise remedy the conduct of Plaintiff's supervisors.

189.  As a direct result of the individual defendants' discrimination against Plaintiff, Plaintiff has lost past and future wages and other employment benefits, and has suffered damage to her reputation and severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

190.  The individual defendants' conduct was outrageous, was done in a deliberate and malicious manner, intended to injure Plaintiff and was done in conscious disregard of Plaintiff's rights.  Therefore, Plaintiff is entitled to an award of punitive damages.

191.  Due to the ongoing nature of the alleged conduct, Plaintiff seeks prospective injunctive relief against defendants D'Amico and Christensen as the ultimate appointing authorities and against all individual defendants to cease from the discriminatory, harassing, and retaliatory acts described herein.

## TENTH CAUSE OF ACTION
## CONSPIRACY TO RETALIATE BY INDIVIDUAL DEFENDANTS IN VIOLATION OF THE EQUAL PROTECTION CLAUSE BROUGHT UNDER 42 U.S.C. § 1983

192.  Plaintiff repeats and re-alleges every allegation in paragraphs 1 through 191 of this

Complaint with the same force and effect as though fully set forth herein.

193.  The individual defendants have violated the provisions of 42 U.S.C. § 1983 in that

acting under the color of law they, jointly and/or severally have deprived Plaintiff of her

rights, privileges, and/or immunities as provided by the Constitution of the United States

and its laws.

194.  That the individual defendants acted with intent to violate or with deliberate or reckless

indifference to Plaintiff's clearly established rights under the Fourteenth Amendment.

195.  At the time of the discriminatory actions described above, the prohibition of retaliation

under the Equal Protection Clause was clearly established.

196.  The individual defendants retaliated against Plaintiff by subjecting Plaintiff to disparate

treatment and adverse employment actions as described above.

197.  The individual defendants, acting in concert, created and maintained an atmosphere of

hostility toward females.

198.  The individual defendants failed to adequately supervise, control, discipline or

otherwise remedy the conduct of Plaintiff's supervisors.

199.  As a direct result of the individual defendants' discrimination against Plaintiff, Plaintiff

has lost past and future wages and other employment benefits, and has suffered damage

to her reputation and severe and lasting embarrassment, humiliation and anguish, and

other incidental and consequential damages and expenses.

200.  The individual defendants' conduct was outrageous, was done in a deliberate and

malicious manner, intended to injure Plaintiff and was done in conscious disregard of

Plaintiff's rights.  Therefore, Plaintiff is entitled to an award of punitive damages.

201.  Due to the ongoing nature of the alleged conduct, Plaintiff seeks prospective injunctive

relief against defendants D'Amico and Christensen as the ultimate appointing authorities

and against all individual defendants to cease from the discriminatory, harassing, and

retaliatory acts described herein.

### ELEVENTH CAUSE OF ACTION
### CONSPIRACY TO COMMIT SEX DISCRIMINATION BY INDIVIDUAL DEFENDANTS IN VIOLATION OF THE EQUAL PROTECTION CLAUSE BROUGHT UNDER 42 U.S.C. § 1985(3)

202.  Plaintiff repeats and re-alleges every allegation in paragraphs 1 through 201 of this

Complaint with the same force and effect as though fully set forth herein.

203.  The individual defendants have violated the provisions of 42 U.S.C. § 1985 in that

acting under the color of law they, jointly and/or severally have deprived Plaintiff of her

rights, privileges, and/or immunities as provided by the Constitution of the United States

and its laws.

204.  That the individual defendants acted with intent to violate or with deliberate or reckless

indifference to Plaintiff's clearly established rights under the Fourteenth Amendment.

205.  At the time of the discriminatory actions described above, the prohibition of sex

discrimination under the Equal Protection Clause was clearly established.

206.  The individual defendants purposefully conspired to discriminate against Plaintiff based

on sex.

207.  The individual defendants, acting in concert, created and maintained an atmosphere of

hostility toward females.

28

208.  The individual defendants failed to adequately supervise, control, discipline or

otherwise remedy the conduct of Plaintiff's supervisors.

209.  As a direct result of the individual defendants' discrimination against Plaintiff, Plaintiff

has lost past and future wages and other employment benefits, and has suffered damage

to her reputation and severe and lasting embarrassment, humiliation and anguish, and

other incidental and consequential damages and expenses.

210.  The individual defendants' conduct was outrageous, was done in a deliberate and

malicious manner, intended to injure Plaintiff and was done in conscious disregard of

Plaintiff's rights.  Therefore, Plaintiff is entitled to an award of punitive damages.

211.  Due to the ongoing nature of the alleged conduct, Plaintiff seeks prospective injunctive

relief against defendants D'Amico and Christensen as the ultimate appointing authorities

and against all individual defendants to cease from the discriminatory, harassing, and

retaliatory acts described herein.

**TWELFTH CAUSE OF ACTION**
**CONSPIRACY TO COMMIT SEXUAL HARASSMENT HOSTILE WORK**
**ENVIRONMENT DISCRIMINATION BY INDIVIDUAL DEFENDANTS IN**
**VIOLATION OF THE EQUAL PROTECTION CLAUSE BROUGHT UNDER 42 U.S.C.**
**§ 1985(3)**

212.  Plaintiff repeats and re-alleges every allegation in paragraphs 1 through 211 of this

Complaint with the same force and effect as though fully set forth herein.

213.  The individual defendants have violated the provisions of 42 U.S.C. § 1985 in that

acting under the color of law they, jointly and/or severally have deprived Plaintiff of her

rights, privileges, and/or immunities as provided by the Constitution of the United States

and its laws.

29

214.  That the individual defendants acted with intent to violate or with deliberate or reckless indifference to Plaintiff's clearly established rights under the Fourteenth Amendment.

215.  At the time of the discriminatory actions described above, the prohibition of sexual harassment under the Equal Protection Clause was clearly established.

216.  The individual defendants purposefully conspired to discriminate against Plaintiff based on sex.

217.  The individual defendants, acting in concert, created and maintained an atmosphere of hostility toward females.

218.  The individual defendants failed to adequately supervise, control, discipline or otherwise remedy the conduct of Plaintiff's supervisors.

219.  As a direct result of the individual defendants' discrimination against Plaintiff, Plaintiff has lost past and future wages and other employment benefits, and has suffered damage to her reputation and severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

220.  The individual defendants' conduct was outrageous, was done in a deliberate and malicious manner, intended to injure Plaintiff and was done in conscious disregard of Plaintiff's rights.  Therefore, Plaintiff is entitled to an award of punitive damages.

221.  Due to the ongoing nature of the alleged conduct, Plaintiff seeks prospective injunctive relief against defendants D'Amico and Christensen as the ultimate appointing authorities and against all individual defendants to cease from the discriminatory, harassing, and retaliatory acts described herein.

## THIRTEENTH CAUSE OF ACTION
## CONSPIRACY TO RETALIATE BY INDIVIDUAL DEFENDANTS IN VIOLATION OF THE EQUAL PROTECTION CLAUSE BROUGHT UNDER 42 U.S.C. § 1985(3)

222.  Plaintiff repeats and re-alleges every allegation in paragraphs 1 through 221 of this

Complaint with the same force and effect as though fully set forth herein.

223.  The individual defendants have violated the provisions of 42 U.S.C. § 1983 in that

acting under the color of law they, jointly and/or severally have deprived Plaintiff of her

rights, privileges, and/or immunities as provided by the Constitution of the United States

and its laws.

224.  That the individual defendants acted with intent to violate or with deliberate or reckless

indifference to Plaintiff's clearly established rights under the Fourteenth Amendment.

225.  At the time of the discriminatory actions described above, the prohibition of retaliation

under the Equal Protection Clause was clearly established.

226.  The individual defendants retaliated against Plaintiff by subjecting Plaintiff to disparate

treatment and adverse employment actions as described above.

227.  The individual defendants, acting in concert, created and maintained an atmosphere of

hostility toward females.

228.  The individual defendants failed to adequately supervise, control, discipline or

otherwise remedy the conduct of Plaintiff's supervisors.

229.  As a direct result of the individual defendants' discrimination against Plaintiff, Plaintiff

has lost past and future wages and other employment benefits, and has suffered damage

to her reputation and severe and lasting embarrassment, humiliation and anguish, and

other incidental and consequential damages and expenses.

230.  The individual defendants' conduct was outrageous, was done in a deliberate and

malicious manner, intended to injure Plaintiff and was done in conscious disregard of

Plaintiff's rights.  Therefore, Plaintiff is entitled to an award of punitive damages.

231.  Due to the ongoing nature of the alleged conduct, Plaintiff seeks prospective injunctive

relief against defendants D'Amico and Christensen as the ultimate appointing authorities

and against all individual defendants to cease from the discriminatory, harassing, and

retaliatory acts described herein.

**FOURTEENTH CAUSE OF ACTION**
**FAILURE TO PREVENT A CONSPIRACY TO COMMIT SEX DISCRIMINATION BY**
**INDIVIDUAL DEFENDANTS IN VIOLATION OF THE EQUAL PROTECTION**
**CLAUSE BROUGHT UNDER 42 U.S.C. § 1986**

232.  Plaintiff repeats and re-alleges every allegation in paragraphs 1 through 231 of this

Complaint with the same force and effect as though fully set forth herein.

233.  The individual defendants have violated the provisions of 42 U.S.C. § 1986 in that

acting under the color of law they, jointly and/or severally have deprived Plaintiff of her

rights, privileges, and/or immunities as provided by the Constitution of the United States

and its laws.

234.  That the individual defendants acted with intent to violate or with deliberate or reckless

indifference to Plaintiff's clearly established rights under the Fourteenth Amendment.

235.  At the time of the discriminatory actions described above, the prohibition of sex

discrimination under the Equal Protection Clause was clearly established.

236.  The individual defendants purposefully conspired to discriminate against Plaintiff based

on sex.

237.  The individual defendants, acting in concert, created and maintained an atmosphere of

hostility toward females.

238.  The individual defendants failed to adequately supervise, control, discipline or otherwise remedy the conduct of Plaintiff's supervisors.

239.  As a direct result of the individual defendants' discrimination against Plaintiff, Plaintiff has lost past and future wages and other employment benefits, and has suffered damage to her reputation and severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

240.  The individual defendants' conduct was outrageous, was done in a deliberate and malicious manner, intended to injure Plaintiff and was done in conscious disregard of Plaintiff's rights.  Therefore, Plaintiff is entitled to an award of punitive damages.

241.  Due to the ongoing nature of the alleged conduct, Plaintiff seeks prospective injunctive relief against defendants D'Amico and Christensen as the ultimate appointing authorities and against all individual defendants to cease from the discriminatory, harassing, and retaliatory acts described herein.

### FIFTEENTH CAUSE OF ACTION
**FAILURE TO PREVENT A CONSPIRACY TO COMMIT SEXUAL HARASSMENT HOSTILE WORK ENVIRONMENT DISCRIMINATION BY INDIVIDUAL DEFENDANTS IN VIOLATION OF THE EQUAL PROTECTION CLAUSE BROUGHT UNDER 42 U.S.C. § 1986**

242.  Plaintiff repeats and re-alleges every allegation in paragraphs 1 through 241 of this Complaint with the same force and effect as though fully set forth herein.

243.  The individual defendants have violated the provisions of 42 U.S.C. § 1986 in that acting under the color of law they, jointly and/or severally have deprived Plaintiff of her rights, privileges, and/or immunities as provided by the Constitution of the United States and its laws.

244.  That the individual defendants acted with intent to violate or with deliberate or reckless indifference to Plaintiff's clearly established rights under the Fourteenth Amendment.

245.  At the time of the discriminatory actions described above, the prohibition of sexual harassment under the Equal Protection Clause was clearly established.

246.  The individual defendants purposefully conspired to discriminate against Plaintiff based on sex.

247.  The individual defendants, acting in concert, created and maintained an atmosphere of hostility toward females.

248.  The individual defendants failed to adequately supervise, control, discipline or otherwise remedy the conduct of Plaintiff's supervisors.

249.  As a direct result of the individual defendants' discrimination against Plaintiff, Plaintiff has lost past and future wages and other employment benefits, and has suffered damage to her reputation and severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

250.  The individual defendants' conduct was outrageous, was done in a deliberate and malicious manner, intended to injure Plaintiff and was done in conscious disregard of Plaintiff's rights.  Therefore, Plaintiff is entitled to an award of punitive damages.

251.  Due to the ongoing nature of the alleged conduct, Plaintiff seeks prospective injunctive relief against defendants D'Amico and Christensen as the ultimate appointing authorities and against all individual defendants to cease from the discriminatory, harassing, and retaliatory acts described herein.

## SIXTEENTH CAUSE OF ACTION
### FAILURE TO PREVENT CONSPIRACY TO RETALIATE BY INDIVIDUAL DEFENDANTS IN VIOLATION OF THE EQUAL PROTECTION CLAUSE BROUGHT UNDER 42 U.S.C. § 1986

252. Plaintiff repeats and re-alleges every allegation in paragraphs 1 through 251 of this Complaint with the same force and effect as though fully set forth herein.

253. The individual defendants have violated the provisions of 42 U.S.C. § 1983 in that acting under the color of law they, jointly and/or severally have deprived Plaintiff of her rights, privileges, and/or immunities as provided by the Constitution of the United States and its laws.

254. That the individual defendants acted with intent to violate or with deliberate or reckless indifference to Plaintiff's clearly established rights under the Fourteenth Amendment.

255. At the time of the discriminatory actions described above, the prohibition of retaliation under the Equal Protection Clause was clearly established.

256. The individual defendants retaliated against Plaintiff by subjecting Plaintiff to disparate treatment and adverse employment actions as described above.

257. The individual defendants, acting in concert, created and maintained an atmosphere of hostility toward females.

258. The individual defendants failed to adequately supervise, control, discipline or otherwise remedy the conduct of Plaintiff's supervisors.

259. As a direct result of the individual defendants' discrimination against Plaintiff, Plaintiff has lost past and future wages and other employment benefits, and has suffered damage to her reputation and severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

260.  The individual defendants' conduct was outrageous, was done in a deliberate and

malicious manner, intended to injure Plaintiff and was done in conscious disregard of

Plaintiff's rights.  Therefore, Plaintiff is entitled to an award of punitive damages.

261.  Due to the ongoing nature of the alleged conduct, Plaintiff seeks prospective injunctive

relief against defendants D'Amico and Christensen as the ultimate appointing authorities

and against all individual defendants to cease from the discriminatory, harassing, and

retaliatory acts described herein.

### SEVENTEENTH CAUSE OF ACTION
### SEX DISCRIMINATION BY INDIVIDUAL DEFENDANTS IN VIOLATION OF NEW YORK HUMAN RIGHTS LAW, EXECUTIVE LAW § 296

262.  Plaintiff repeats and re-alleges every allegation in paragraphs 1 through 261 of this

Complaint with the same force and effect as though fully set forth herein.

263.  At all times relevant hereto, Plaintiff was a female employee protected by Article 15 of

the New York Executive Law § 296.

264.  That at all times relevant herein, the individual Defendants were acting under the color

of state law.

265.  The individual defendants engaged in a pattern and practice of discrimination against

Plaintiff on the basis of sex in violation of the HRL by subjecting Plaintiff to disparate

treatment, which included discriminatory terms and conditions of employment and

adverse employment actions, as described above.

266.  The individual defendants created and maintained an atmosphere of hostility toward

females.

267.  The individual defendants failed to adequately supervise, control, discipline or

otherwise remedy the conduct of Plaintiff's supervisors.

36

268.  As a direct result of the individual defendants' acts set forth herein against Plaintiff, Plaintiff has lost past and future wages and other employment benefits, and has suffered damage to her reputation and severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

269.  The individual defendants' conduct was outrageous, was done in a deliberate and malicious manner, intended to injure Plaintiff and was done in conscious disregard of Plaintiff's rights.  Therefore, Plaintiff is entitled to an award of punitive damages.

**EIGHTEENTH CAUSE OF ACTION**
**SEXUAL HARASSMENT HOSTILE WORK ENVIRONMENT DISCRIMINATION BY INDIVIDUAL DEFENDANTS IN VIOLATION OF NEW YORK HUMAN RIGHTS LAW, EXECUTIVE LAW § 296**

270.  Plaintiff repeats and realleges every allegation in paragraphs 1 through 269 of this Complaint with the same force and effect as though fully set forth herein.

271.  At all times relevant hereto, Plaintiff was a female employee protected by Article 15 of the New York Executive Law § 296.

272.  That at all times relevant herein, the individual defendants were acting under the color of state law.

273.  The individual defendants engaged in a pattern and practice of harassment amounting to a hostile work environment on the basis of sex in violation of the HRL by subjecting Plaintiff to sexual physical touching, non-physical sexual intimidation and dominance and repeated sexual remarks as described above.

274.  The individual defendants created and maintained an atmosphere of hostility toward females.

275.  The individual defendants failed to adequately supervise, control, discipline or otherwise remedy the conduct of Plaintiff's supervisors.

276.  As a direct result of the individual defendants' acts set forth herein against Plaintiff, Plaintiff has lost past and future wages and other employment benefits, and has suffered damage to her reputation and severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

277.  The individual defendants' conduct was outrageous, was done in a deliberate and malicious manner, intended to injure Plaintiff and was done in conscious disregard of Plaintiff's rights.  Therefore, Plaintiff is entitled to an award of punitive damages.

### NINETEENTH CAUSE OF ACTION
### RETALIATION BY INDIVIDUAL DEFENDANTS IN VIOLATION OF NEW YORK HUMAN RIGHTS LAW, EXECUTIVE LAW § 296

278.  Plaintiff repeats and realleges every allegation in paragraphs 1 through 277 of this Complaint with the same force and effect as though fully set forth herein.

279.  At all times relevant hereto, Plaintiff was a female employee protected by Article 15 of the New York Executive Law § 296.

280.  That at all times relevant herein, the individual defendants were acting under the color of state law.

281.  The individual defendants engaged in retaliation against Plaintiff in violation of the HRL by subjecting Plaintiff to disparate treatment and adverse employment actions as described above.

282.  The individual defendants created and maintained an atmosphere of hostility toward females.

283.  The individual defendants failed to adequately supervise, control, discipline or otherwise remedy the conduct of Plaintiff's supervisors.

284.  As a direct result of the individual defendants' acts set forth herein against Plaintiff, Plaintiff has lost past and future wages and other employment benefits, and has suffered damage to her reputation and severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

285.  The individual defendants' conduct was outrageous, was done in a deliberate and malicious manner, intended to injure Plaintiff and was done in conscious disregard of Plaintiff's rights.  Therefore, Plaintiff is entitled to an award of punitive damages.

**TWENTIETH CAUSE OF ACTION**
**DISABILITY DISCRIMINATION BY INDIVIDUAL DEFENDANTS IN VIOLATION OF NEW YORK HUMAN RIGHTS LAW, EXECUTIVE LAW § 296**

286.  Plaintiff repeats and realleges every allegation in paragraphs 1 through 285 of this Complaint with the same force and effect as though fully set forth herein.

287.  At all times relevant hereto, Plaintiff was a female employee protected by Article 15 of the New York Executive Law § 296.

288.  That at all times relevant herein, the individual defendants were acting under the color of state law.

289.  The individual defendants regarded Plaintiff as disabled in violation of the HRL by subjecting Plaintiff to disparate treatment, which included discriminatory terms and conditions of employment and adverse employment actions, as described above.

290.  The individual defendants created and maintained an atmosphere of hostility toward females.

291.  The individual defendants failed to adequately supervise, control, discipline or otherwise remedy the conduct of Plaintiff's supervisors.

292.  As a direct result of the individual defendants' acts set forth herein against Plaintiff, Plaintiff has lost past and future wages and other employment benefits, and has suffered damage to her reputation and severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

293.  The individual defendants' conduct was outrageous, was done in a deliberate and malicious manner, intended to injure Plaintiff and was done in conscious disregard of Plaintiff's rights.  Therefore, Plaintiff is entitled to an award of punitive damages.

WHEREFORE, Plaintiff requests relief as follows:

a)  Enter judgment declaring the acts and practices of Defendants to be in violation of the laws of the United States and the State of New York;

b)  Issue a permanent injunction ordering Defendants to cease and desist from engaging in the illegal and unlawful acts and practices described herein and ordering Defendants to reinstate Plaintiff;

c)  Award Plaintiff the amount of wages, including fringe benefits, lost as a result of Defendants' discrimination, harassment and retaliation;

d)  Award Plaintiff consequential damages for losses resulting from Defendants' discrimination, harassment and retaliation;

e)  Award Plaintiff compensatory damages for losses resulting from Defendants' discrimination, harassment and retaliation;

f)  Award Plaintiff liquidated damages;

g)  Award Plaintiff punitive damages;

h)  Award Plaintiff the cost of this action, together with interest and attorney fees.

Dated:  Cheektowaga, NY
        March 18, 2016

                                        s/Harvey P. Sanders
                                        Harvey P. Sanders, Esq.
                                        Sanders & Sanders
                                        *Attorneys for Plaintiff*
                                        401 Maryvale Drive
                                        Cheektowaga, NY 14225
                                        (716) 839-1489
                                        harvey.sanders@wnyemploymentlaw.com

<u>VERIFICATION</u>

State of New York     )
County of Erie          ) SS:

JEAN OLIVER, being duly sworn, deposes and says that she is the Plaintiff herein; that she has
read the foregoing Second Amended Complaint and knows the contents thereof; that the same is
true of her own knowledge except as to the matters therein stated on information and belief; and
that as to those matters, she believes the same to be true.

_____
Jean Oliver

Subscribed and sworn to before me
this 18 day of March, 2016.

_____
Notary Public   expire 18 March 2017

EXHIBIT 1

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 525-2014-00792 |

| New York State Division Of Human Rights | and EEOC |
|---|---|

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Jean C. Oliver | (716) 523-3707 | |

| Street Address | City, State and ZIP Code |
|---|---|
| Elma, NY 14059 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| NEW YORK STATE POLICE | 500 or More | (585) 344-6200 |

| Street Address | City, State and ZIP Code |
|---|---|
| 4525 West Saile Drive,  Batavia, NY 14020 | |

SEP 2 5 2014

| Name | No. Employees, Members | Phone No. (include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER (Specify)

| DATE(S) DISCRIMINATION TOOK PLACE |  |
|---|---|
| Earliest | Latest |
| 09-24-2014 | 09-24-2014 |

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I have worked for Respondent since 1997.  My current position is Investigator.  I am currently assigned to Counter Terrorism Intelligence Unit.

In or around October 2013, I filed a formal complaint of gender harassment including but not limited to claims of sexual harassment; intimidation, and denial of equal terms and conditions of employment provided to males.  I filed the complaint with Investigator June Bradley.  At the time, I was assigned to the Drug Enforcement Unit and performed undercover duties.  My complaint was referred to the IAB for investigation as Bradley stated that the Governor had eliminated informal complaints regarding EEO issues.  After filing the complaint, I was subject to immediate retaliatory behavior by Sr. Investigator Paul Kelly including but not limited to being re-assigned to a different supervisor, Senior Investigator Timothy Boar.  I was advised this was because I could not work with individuals I had complained about.  Boar prohibited me from participating in any operations for this same reason.  When I questioned IAB, they advised that they had never made this recommendation.  Boar then stated it was at the direction of Major Wayne Olsen.  On or about January 16, 2014, Olsen took away my undercover duties because there was an allegation that I suffered from "PTSD."  This was never substantiated by Olsen and in fact was a false allegation.  I was not allowed to work with

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br>X _Jean C Oliver_ |
| 9/25/14       X _Jean C Oliver_<br>Date            Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | | ☐ FEPA | |
| | | ☒ EEOC | 525-2014-00792 |
| New York State Division Of Human Rights | | | and EEOC |
| *State or local Agency, if any* | | | |

teams. False complaints were filed against me regarding an undercover operation, although the Cheetowaga Police were also involved and could have verified that the allegations were false, Respondent failed to investigate.

IAB, as part of the investigation, sent a mass email and "cc" all supervisors involved regarding obtaining statements pertinent to the investigation. There was no confidentiality regarding the terms of the investigation at this point. Upon information and belief, Kelly was reviewing the statements of those involved and required them to submit them to a folder on the Share Drive for his review. I saw some of those submissions on the Share Drive. I reported this to IAB and was told I was told I should stay out of that office and that I was insubordinate for looking at those files.

In or around March 2014, Olsen stated that I was being allowed to integrate back, I could only participate in undercover work under direct supervision of my supervisor. I was accused of being a liar due to my complaint. On or about May 1, 2014, right before I was to leave on my undercover assignment, I was called into the office by Boar who gave me a poor evaluation that was based on untruths. During this undercover operation, a coworker was secretly videotaping the operation, which was customary. However, I later discovered when the coworker played back the footage, that the video was of myself which could put me in harms way as my cover would be revealed. I was never allowed any undercover duties from that point forward. Around that same time, IAB completed their investigation. I was was not told the outcome of the investigation and not given any details.

On or about May 15, 2014, I was contacted by Investigator Scott Gillman from the union and advised that I would be leaving the unit and if I did not agree, a personnel complaint would be filed against me. I called Sr. Investigator Brian Meyer from my union who refused to take my grievance and advised me there was nothing to be done. On or about May 16, 2014, I was escorted to my desk to retrieve my personal belongings, including my weapon and holster. I had carried my weapon in my father;s holster and Lt. Martin McKee took my personnel holster. Although I have provided Respondent with the state issued holster I received, I have been denied my personnel holster. I was advised to write a memo regarding this. When I submitted the memo, Lt. Steve Nigrelli told me that my memo was not truthful and made me re-write it to his satisfaction. I was forced to move to the Counter Terrorism Intelligence Unit. Things did not change for me with the move. Major Cerretto file a Level 4 personnel complaint filed that was fabricated. On or about September 24, 2014, I was given a memo by Nigrelli threatening unpaid suspension and termination. I have requested a formal hearing. I believe I have been subject to different terms and conditions of employment, harassed, intimidated, disciplined, and threatened in retaliation for complaining about gender discrimination and sexual harassment in willful violation of Title VII of the Civil Rights Act of 1964, as amended.

SEP 25 2014

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| | SIGNATURE OF COMPLAINANT |
| | X |
| 9/25/14    X _(signature)_ | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| *Date*          *Charging Party Signature* | |

EXHIBIT 2



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Buffalo Local Office

6 Fountain Plaza, Suite 350
Buffalo, NY 14202
Phone: (716) 551-4442
Fax: (716) 551-4387

John E. Thompson Jr.,
Director

## DETERMINATION



Charging Party
Jean Oliver

Elma, NY 14059

Charge No: 525-2014-00792

Respondent
New York State Police
4525 West Saile Drive
Batavia, NY 14020

On behalf of the U.S. Equal Employment Opportunity Commission ("Commission"), I issue the following determination on the merits of the subject charge filed under Title VII of the Civil Rights Act of 1964, as amended (Title VII). Respondent New York State Police is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended. All requirements for coverage have been met.

Charging Party believes that she has been subject to different terms and conditions of employment, transferred, harassed, intimidated, disciplined, and threatened in retaliation for complaining about gender discrimination and sexual harassment. Charging Party is an investigator for the NYS Police.

Respondent denies discriminating against Charging Party. In its position statement, Respondent asserts that the conduct alleged by Charging Party does not violate Title VII. Respondent argues that any adverse employment action taken was for a legitimate business purpose and not for retaliatory or gender-based discriminatory purposes. Respondent states Charging Party was transferred because the senior investigators assigned to her region were either targets or potential targets of her internal EEO complaint and keeping Charging Party with them would be a disservice to all involved parties and not in the best interest of the division. Respondent further states that Charging Party requested subsequent transfers and was granted the same. Charging Party experienced performance issues and was disciplined accordingly.

The Commission's investigation reveals that Respondent did initially retaliate against Charging Party. After Charging Party filed her internal complaint she was immediately retaliated against by being transferred to a different unit. Respondent admitted that it transferred Charging Party as a direct result of her filing a covered complaint. This is clearly retaliatory as it is a direct result of Charging Party exercising her rights under Title VII. Additionally, this action creates a

Page 2                                                                    Charge No. 525-2014-00792

chilling effect as it sends a message to others that if they complain, they will be subject to
different terms and conditions of employment. Such actions discourage others from coming
forward and exercising their rights for fear of retaliatory involuntary transfer, or worse.

Based on the above, Respondent's asserted defense does not withstand scrutiny and the
Commission has determined that there is reasonable cause to believe that Respondent has
discriminated against Charging Party on account of her gender and in retaliation for engaging in
a protected activity of filing her initial internal complaint of gender discrimination. Additional
allegations were not supported by the evidence available, occurred under different supervisors
and decision makers, and appear to be legitimate concerns with Charging Party's performance.

This determination is final. Title VII of the Civil Rights Act of 1964 requires that, if the
Commission determines that there is reasonable cause to believe that violations have occurred, it
shall endeavor to eliminate the alleged unlawful employment practices by informal methods of
conference, conciliation, and persuasion. Having determined that there is reason to believe that
violations have occurred, the Commission now invites Respondent to join with it in an effort
toward a just resolution of this matter. Enclosed is a letter outlining the proposed terms of
conciliation.

Disclosure of information obtained by the Commission during the conciliation process may only
be made in accordance with Title VII of the Civil Rights Act of 1964 and the Commission's
Procedural Regulations. The confidentiality provisions of Sections 706 and 709 of Title VII and
Commission Regulations apply to information obtained during conciliation.

If Respondent declines to enter into conciliation discussions, or when the Commission's
representative is unable to secure an acceptable conciliation agreement, the Director shall so
inform the parties, advising them of the court enforcement alternatives available to aggrieved
persons and the Commission.

With respect to the allegations where cause was not found, the Charging Party may only pursue
this matter by filing suit against the Respondent within 90 days of receipt of this letter.
Otherwise, the Charging Party's right to sue will be lost.


On behalf of the Commission:

_(signature)_                                                    JAN 2 9 2015

John E. Thompson Jr., Director                                  _____
Buffalo Local Office                                            Date

EXHIBIT 3



**U.S. Department of Justice**

Civil Rights Division

VG:KDW:KLF
DJ 170-53-0

*Employment Litigation Section - PHB*
*950 Pennsylvania Avenue, NW*
*Washington, DC 20530*
*www.usdoj.gov/crt/emp*

OCT - 7 2015

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

CERTIFIED MAIL 7010 0290 0000 2016 3249
RETURN RECEIPT REQUESTED

Ms. Jean C. Oliver
c/o Lindy Korn, Esq.
Law Office of Lindy Korn
535 Washington St., 9th Floor
Buffalo, NY 14203

       Re:    Jean C. Oliver v. New York State Police
               EEOC Charge No. 525-2014-00792

Dear Ms. Oliver:

     It has been determined that the Department of Justice will not file suit on the above-referenced charge of discrimination that was referred to us by the Equal Employment Opportunity Commission (EEOC). This should not be taken to mean that the Department of Justice has made a judgment as to whether or not your charge is meritorious.

     <u>You are hereby notified that conciliation in this matter was unsuccessful by the EEOC. You are further notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e et seq., against the above-named respondent. If you choose to commence a civil action, such suit must be filed in the appropriate court within 90 days of your receipt of this Notice.</u>

     We are returning the files in this matter to the EEOC's Buffalo Local Office. If you or your attorney have any questions concerning this matter or wish to inspect the investigative file, please feel free to address your inquiry to: John E. Thompson, Jr., Director, EEOC, 6 Fountain Plaza, Suite 350, Buffalo, NY 14202.

                     Sincerely,

                     Vanita Gupta
        Principal Deputy Assistant Attorney General
               Civil Rights Division

     By:

                   Karen D. Woodard
               Principal Deputy Chief
           Employment Litigation Section

cc:    Jean C. Oliver
       New York State Police
       Thomas A. Capezza, Esquire
       EEOC, Buffalo Local Office

EXHIBIT 4

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 525-2015-00545 |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Jean C. Oliver | (716) 523-3707 | |

| Street Address | City, State and ZIP Code |
|---|---|
| Elma, NY 14059 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| NEW YORK STATE POLICE | 500 or More | (518) 457-7254 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1220 Washington Avenue, Albany, NY 12226 | RECEIVED<br>MAY 20 2015<br>EEOC BULO |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest 05-16-2014   Latest 04-23-2015

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I have worked for respondent since 1997. My current position is Investigator.

Please see the attached statement.

I believe I continue to be retaliated against because of my gender/female and because I filed an EEO complaint with Respondent in October 2013 claiming gender discrimination and sexual harassment in willful violation of the Civil rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br>X |
| 5/26/15        X   [signature]<br>Date        Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

On Thursday, April 23, 2015, I was having a conversation with my coworker regarding the sudden transfer of my former supervisor, Senior Investigator Gerald (Gary) Kopacz. During this conversation, my coworker informed me that he had gotten to know me since I came to this unit and saw what was really going on and wanted me to know the truth in terms of what S/Inv. Kopacz had been doing to me. My coworker then proceeded to tell me about a meeting which occurred on or about May 12, 2014, and prior to my forced to transfer into Troop A CTIU Buffalo, where S/Inv. Kopacz met with his subordinates and my soon-to-be co-workers to advise them that he was contacted by CPT Nigrelli over the weekend who informed him that Inv. Jean Oliver was coming to the unit. S/Inv. Kopacz told these Members that he was "sick to his stomach" when he heard that I was coming and went on to tell them that he spoke with S/Inv. June Bradley (the regional EEO supervisor) who told him about all the things that I did and warned him that I document everything. I was told that S/Inv. Kopacz warned everyone during this meeting that they needed to be very careful about what they said around me because I document everything. He went on to tell them not to worry about the situation and that "they would get through this".

S/Inv. Kopacz was my direct supervisor from the time I was forced to come into this unit, on May 16, 2014, after I was informed that I was being forced to leave CNET West and threatened with a personnel complaint if I did not agree to leave (which was in direct violation of my contractual rights as a sworn Member) through the date S/Inv. Kopacz transferred out of Troop A, CTIU Buffalo, which was Monday, April 20, 2015. That by abusing his position of authority and influence as a supervisor in Troop A, S/Inv. Kopacz carried over the hostile working environment I was subjected to by the former supervisors in CNET West, directly into Troop A, by making such false and derogatory statements to my soon-to-be co-workers in order to perpetuate the hostilities I was subjected to in CNET West into my new unit with the new Members I would be working with which then spread throughout the entire Troop, further isolating me and further removing me from being welcomed and/or accepted by my new coworkers who were already fearful of me before I even came into this unit based on the false claims S/Inv. Kopacz made against me.

From the time I was forced to transfer into Troop A, CTIU Buffalo, (May 16, 2014) through the date S/Inv. Kopacz transferred out of the unit (April 20, 2015) he repeatedly denied me the ability to learn the various activities CTIU Buffalo was involved in and further denied me the ability to participate in most of the unit's functions. In addition, I was regularly excluded from being involved in investigations, training opportunities, and meetings and was frequently left sitting in the office alone facing a wall for extremely long periods of time throughout the day while the other Members within this unit were out performing their various duties. I repeatedly expressed my frustration over the situation to S/Inv. Kopacz who would respond to me with a variety of reasons as to why I was not allowed to participate in many of our unit's operations.

I had direct knowledge of S/Inv. Kopacz having regular conversations with at least one of his subordinates and my co-worker, Investigator Fred Andriaccio, where S/Inv. Kopacz made inferences of me being "fucking crazy" which Inv. Andriaccio reciprocated by telling S/Inv. Kopacz that "she doesn't know what the fuck she is doing" (which I personally heard). There were also regular conversations going on between S/Inv. Kopacz and Inv. Andriaccio who would sit together whispering at the office in my presence which I believe was an intentional act on their part and was done to intimidate me and further isolate me from everyone in this unit and the Members within this Troop.

The coworker I spoke with regarding this meeting further told me that he believed that it was S/Inv. Kopacz who initiated the filing of the highest level personnel complaint (Level 4) against me which is still pending and which could result in my termination from the New York State Police. Based on conversations I had with S/Inv. Kopacz and Members of IAB and Division supervisors following the filing of this personnel complaint against me, I believe that both S/Inv. Kopacz and several former supervisors in CNET West provided false documentation to initiate this complaint against me and that these false reports were then used as the basis to authorize the filing of this personnel complaint, which would have likely never been lodged against me if an informal inquiry into these allegations had been properly conducted in accordance with New York State Rules and Regulations pertaining to the handling of these investigations, and that for reasons which no one is willing to explain to me was never done prior to the lodging of this personnel complaint against me.

That when I was suddenly notified that a Level 4 Personnel Complaint had already been lodged against me, I immediately provided documentation to IAB which should have dismissed these charges. I then further repeatedly attempted to discuss this matter with S/Inv. Kopacz to ask for his assistance in clarifying what had actually occurred.   However, S/Inv. Kopacz took no action on my behalf but rather tried to convince me that I would not get fired and everything would work out in the end.  During a specific conversation I had with S/Inv. Kopacz on or about July 22, 2014 he would only respond to my request for his assistance by telling me that he knew what I was going through because he had gotten himself into trouble in the past before too (referencing an incident which occurred several years ago where S/Inv. Kopacz went to Albany on a training event and became extremely intoxicated, crawling into bed with another man from another law enforcement agency who had been assigned to room with S/Inv. Kopacz and that in response to S/Inv. Kopacz's actions, the man became so angry, he packed his bag and left in the middle of the training event, which resulted in a personnel complaint being filed against S/Inv, Kopacz). While I tried to explain to S/Inv. Kopacz that I did not see any correlation between the circumstances surrounding his situation and mine, I did express to him the serious concerns I had over the fact that the allegations made against me in this personnel complaint had somehow changed during my interrogation by IAB on July 21, 2014, and were completely different from the concerns S/Inv. Kopacz shared with me in a conversation we had on June 17, 2014, and  completely different from what I was told I was accused of violating on June 20, 2014, when I was first notified that this Personnel Complaint had been lodged against me by MAJ Cerretto and CPT Nigrelli.  During this time, I continued to ask S/Inv. Kopacz for his assistance in reaching out to higher command to address the legitimacy of this complaint and stop what was happening to me, but he simply refused and allowed this complaint to proceed against me.

I was further told by my coworker that after S/Inv. Kopacz transferred out of this unit and into his current position as a supervisor in CNET West, he then informed the Officer in Charge of CNET West (Lt. Kevin Reyes who was formerly the Officer in charge of CTIU Buffalo) that he had to leave CTIU Buffalo because he could not handle the stress any longer of having to work at CTIU Buffalo and referred to himself "like the peanut butter stuck to a shit sandwich" referencing him being stuck in the middle of the ongoing situation involving me and his personal difficulties in working under our BCI Captain, Steven Nigrelli.

That when I spoke with my coworker regarding this information, he expressed his concern over outwardly coming forward with this information as he was fearful of the retaliation he might be subjected to, but informed me that this information could be validated by interviewing the Members

within this unit as S/Inv. Kopacz would not be able to deny that this meeting took place. My coworker went on to tell me that he that he did not believe that neither Division nor Troop A supervisors had any knowledge of this meeting and/or what S/Inv. Kopacz said to my coworkers during this meeting.

That S/Inv. Kopacz had no reason to treat me this way or to allow me to continue to be subjected to the retaliation I was subjected to by several former supervisors within CNET West after I filed an EEO complaint relative to the harassment (both sexual and non-sexual) and discrimination I had been subjected to. And in spite of the way I was treated by S/Inv. Kopacz, I continued to complete any and all tasks I was given and continued to try to assist him as well as the Members both within my unit and within my Troop in any way possible. My performance evaluations have all been satisfactory and I have sought out every training opportunity available in an effort to keep myself busy and in an effort to maintain my investigative skills, since having most of these duties taken away from me.

That I shared this information with my union representatives and Division leadership who responded to this by telling me that this is no longer a problem for me since S/Inv. Kopacz is no longer at CTIU Buffalo.

EXHIBIT 5

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Jean C. Oliver | From: | **Buffalo Local Office** |
|---|---|---|---|
| | Elma, NY 14059 | | **6 Fountain Plaza**<br>**Suite 350**<br>**Buffalo, NY 14202** |

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **525-2015-00545** | **Maureen Kielt,**<br>**Investigator** | **(716) 551-3089** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

| | |
|---|---|
| [ ] | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
| [ ] | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| [ ] | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| [ ] | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| [X] | The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. |
| [ ] | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| [ ] | Other *(briefly state)* |

### - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_____     MAY 22 2015
**John E. Thompson,**
**Local Office Director**                              *(Date Mailed)*

Enclosures(s)

cc:   **Thomas A. Capezza**
**Counsel**
**NYS DIVISION OF STATE POLICE**
**1220 Washington Avenue**
**Bldg. 22**
**Albany, NY 12226**

EXHIBIT 6



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Buffalo Local Office**

6 Fountain Plaza, Suite 350
Buffalo, NY 14202
(716) 551-4442
TTY (716) 551-5923
FAX (716) 551-4387

Jean Oliver

Elma, NY 14059

Re:   EEOC Charge No.: 525-2015-00545
      Jean Oliver v. New York State Police

Dear Ms. Oliver:

The Equal Employment Opportunity Commission (hereinafter referred to as the "Commission"), has reviewed the above-referenced charge according to our charge prioritization procedures. These procedures, which are based on a reallocation of the Commission's staff resources, apply to all open charges in our inventory and call for us to focus our limited resources on those cases that are most likely to result in findings of violations of the laws we enforce.

In accordance with these procedures, we have evaluated your charge based upon the information and evidence submitted. You allege that you continue to be retaliated against because of your gender/female and because you filed an EEO complaint with Respondent in October 2013, claiming gender discrimination and sexual harassment. You recently obtained additional evidence that your supervisor made comments about you to coworkers during a meeting in May 2014. Many of your allegations raised have already been address in your previous charge filed with the EEOC, Charge 525-2014-0545 and you were given a Notice of Right to Sue on April 17, 2015.

Having been informed that you are pursuing your claim in Federal Court on your previous Charge 525-2014-00545, I have decided that this office will not expend its limited resources pursuing an investigation of claims which will be decided in Court.

Since the issues in the charge before the Equal Employment Opportunity Commission (EEOC) are the same issues as those in the previous charge and the court action, a final judgment on the merits will preclude you from further pursuit of these matters, including before the EEOC. You cannot have "two bites of the apple." Therefore, I am administratively dismissing this charge.

The Commission's processing of this charge has been concluded. Included with this letter is your Notice of Dismissal and Right to Sue. Following this dismissal, you may only pursue this matter by filing suit against the Respondent named in the charge within 90 days of receipt of said notice. Otherwise, your right to sue will be lost. Please contact Federal Investigator Maureen C. Kielt at (716) 551-3089 if you have any questions.

Sincerely,

Date:  MAY 2 2 2015

John E. Thompson, Jr., Director
Buffalo Local Office

EXHIBIT 7



NEW YORK STATE
# DIVISION OF HUMAN RIGHTS
WALTER J. MAHONEY STATE OFFICE BUILDING
65 COURT STREET, SUITE 506
BUFFALO, NEW YORK 14202

(716) 847-7632
Fax: (716) 847-7625
www.dhr.ny.gov

ANDREW M. CUOMO
GOVERNOR

HELEN DIANE FOSTER
COMMISSIONER

July 16, 2015

Jean C. Oliver

Elma, NY 14059

> Re:    Jean C. Oliver v. New York State, Division of State Police
> Case No. 10176304

Dear Jean C. Oliver:

Please be advised that this office has received your complaint.  Your filing date is 7/16/2015 .

A copy of your complaint, and the determination, will be sent to the U.S. Equal Employment Opportunity Commission (EEOC), so that your complaint may be dual-filed under applicable federal law.  Your EEOC charge number is 16GB503470.

To protect your rights, it is essential that the Division be notified promptly of any change in your address or telephone number.  A form is enclosed for this purpose.

You will be contacted by the Human Rights Specialist assigned to your case when the active investigation of your complaint begins.  In the meantime, if you have any questions please call our office at (716) 847-7632.

Very truly yours,

Tasha E. Moore
Regional Director

1.  I am a Caucasian female with a date of birth of
2.  I reside in the State of New York and am a citizen of the same.
3.  Respondent is the New York State Police, who maintains a local troop office at 4525 West Saile Drive, Batavia, New York 14020.
4.  I began working for the Respondent New York State Police on October 23, 1997.  In 2005 I was promoted to my current position of Investigator.
5.  In my 18 years of employment with the New York State Police I have had no poor performance reviews until I complained about discrimination at the hands of the New York State Police.
6.  My initial complaint regarding discrimination occurred in October of 2013.  After I filed that complaint, I began to receive complaints about my performance by the New York State Police.
7.  Although I did not formally complain until November of 2013, I had been subjected to sexual harassment for a period of years while working for the Respondent.
8.  The pattern of harassment and my complaining continued.  The Respondent would often retaliate against me based on my complaints.
9.  On January 16, 2014 Major Olson informed me that I would be relieved of my undercover duties because there was an allegation that I suffered from PTSD.
10.  These undercover duties were a routine job duty for my position.
11.  These allegations of PTSD were untrue, and unsubstantiated.
12.  Moreover, the alleged PTSD was related to my tour of duty in Afghanistan for the Army.
13.  I am a Captain in the United States Army Reserves, and had recently returned from my tour of duty.
14.  As a result of Major Olson's PTSD accusation, I was not allowed to perform my routine duties, to work in teams, and I was segregated from the rest of my coworkers and effectively isolated.
15.  Upon information and belief, these acts were adverse actions based upon discrimination under the Americans with Disabilities Act Amendments Act (ADAAA) because I was told they were done because the Respondent believed I had a disability of PTSD.
16.  Upon information and belief, these acts were adverse actions based upon discrimination due to my military status because the claimed disability arose from my service in the United States Army Reserves.
17.  Subsequent to these acts, false complaints were filed against me regarding an undercover operation.
18.  These complaints injured me in job status and prestige.
19.  Accordingly, I complained about the falsity of these complaints.
20.  Respondent failed to investigate my complaints and further harmed me.
21.  Upon information and belief, these damaging, false complaints were adverse actions motivated by the perception of disability and/or my military status.
22.  Additionally, the investigation regarding my complaints about sexual harassment was a sham investigation that also compromised my privacy by allowing the details of that investigation to be accessible to all employees of the respondent.

23. Upon information and belief, this sham investigation was motivated by gender/sex discrimination, discrimination based upon perceived disability, discrimination based upon my military status, and in retaliation for engaging in protected activity.

24. On April 14, 2014 Timothy Bour gave me a false, poor performance review.

25. Upon information and belief, this false, poor performance review was motivated by gender/sex discrimination, discrimination based upon perceived disability, discrimination based upon my military status, and in retaliation for engaging in protected activity.

26. On May 15, 2014, Scott Gilman, acting on behalf of the New York State Police Investigators Association, informed me that I would be required by the Respondent to transfer from my unit. If I did not transfer from my unit willingly, a personnel complaint would be filed against me. This personnel complaint could result in my termination.

27. The following day, on May 16, 2014 I was marched by the Respondent to my desk and ordered to clear out my desk and turn in the contents thereof.

28. Included in the items I turned in to the Respondent was a personal holster of great sentimental value. Respondent has refused to return this holster to me despite my repeated requests to do so.

29. Under duress, I agreed to the transfer for fear of my job.

30. Despite this, on June 20, 2014 Respondent filed a personnel complaint against me.

31. On July 1, 2014 my son, Richard Allen Oliver, Jr., was notified that his application for the position of Trooper with the Respondent was denied without explanation.

32. Upon information and belief, my son was qualified for the position and maintained his qualification up to and beyond the termination date.

33. Upon information and belief, the rejection of my son was a retaliatory action by the Respondent intended to dissuade me from making further complaints regarding the actions of the Respondent, or from engaging in further protected activity.

34. On September 8, 2014 I filed a grievance regarding my involuntary transfer from my unit. This grievance also alleged that my transfer was motivated by gender-based discrimination.

35. On September 25, 2014 I filed an EEOC complaint against the Respondent. That EEOC complaint is EEOC Charge No. 525-2014-00792. A true and correct copy of that complaint is attached hereto, and made a part hereof, as **Exhibit A**.

36. The EEOC Complaint contained causes of action for gender/sex discrimination and for retaliation.

37. Generally, those allegations included claims that the Respondent assigned me to another supervisor, prohibited from participating in operations that are part of my regular job duties, removed from my regular job duties of undercover duty, not permitted to work in teams with my coworkers which effectively isolated me, filed false complaints against me, falsely accused of insubordination, accused of being a liar for complaining about discrimination/retaliation, given false, poor performance reviews, that my safety was compromised by a coworker inappropriately taping me during the single undercover operation I was permitted to participate in, forced to transfer from my unit, had personal belongings taken from me by the Respondent, and had a false personnel complaint filed against me.

38. Pursuant to my grievance of my involuntary transfer from my unit, a hearing was held on December 9, 2014.

39. After this hearing, on December 22, 2014, the Respondent issued a memo. This memo dismissed my grievance as my merely being "upset" with the way my unit operated, and that I had "difficulty working with the personnel in the unit."

40. This characterization of my grievance attempts to minimize the discrimination complaints I lodged by stating that I had "difficulty" working with others.

41. Characterizing me as "upset" is meant to disparage me as a female by claiming that I am emotional.

42. Therefore, this memorandum by Respondent is itself evidence of discriminatory animus.

43. Upon information and belief, the denial of my grievance by this memorandum was motivated by gender/sex discrimination, discrimination based upon perceived disability, discrimination based upon my military status, and in retaliation for engaging in protected activity.

44. On January 29, 2015 the EEOC issued a Determination that found reasonable cause to believe that the Respondent had discriminated against me on account of my gender and in retaliation for engaging in protected activity. A true and correct copy of that Determination is attached hereto, and made a part hereof, as **Exhibit B**.

45. I hereby expressly incorporate the allegations contained in the EEOC complaint and enhance those facts with the following pleading.

46. In April of 2015 I requested to view my personnel file at the local office of the Respondent.

47. Respondent denied me access to my own personnel file.

48. Accordingly, I requested access to my personnel file at the Batavia location and Division Headquarters in Albany.

49. I was granted access to my files, however, both files were missing several important documents regarding my certifications, positive performance reviews, and other relevant documents.

50. The absence of these documents had a deleterious effect on all personnel decisions that involve me and my record with Respondent.

51. The absence of these documents in the Batavia and Albany locations is deliberate and motivated by gender/sex discrimination, discrimination based upon perceived disability, discrimination based upon my military status, and in retaliation for engaging in a protected activity.

52. Accordingly, I filed a grievance regarding my request to review my personnel file at the local office with the Respondent and was subsequently granted access to my personnel file at the local office.

53. Respondent denied me access to my local personnel file in a deliberate act to further harass and frustrate my repeated attempts to correct the negative effects I have suffered as a result of engaging in a protected activity.

54. On June 30, and July 1, 2015, Respondent held an administrative hearing against me regarding administrative charges which they lodged against me in a personnel complaint filed against me.

55. On July 14, 2015, Troop A Commander, Major Michael Cerretto, informed me that I have been terminated and handed me a notice of dismissal signed from New York State Police Superintendent, Joseph A. D'Amico. A true and correct copy of that Determination is attached hereto, and made a part hereof, as **Exhibit C**.

3

EXHIBIT A

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 525-2014-00792 |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Jean C. Oliver | (716) 523-3707 | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| , Elma, NY 14059 | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| NEW YORK STATE POLICE | 500 or More | (585) 344-6200 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 4525 West Saile Drive, Batavia, NY 14020 | | |

SEP 25 2014

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN | Earliest: **09-24-2014**   Latest: **09-24-2014** |
| ☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION | |
| ☐ OTHER (Specify) | ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I have worked for Respondent since 1997. My current position is Investigator. I am currently assigned to Counter Terrorism Intelligence Unit.

In or around October 2013, I filed a formal complaint of gender harassment including but not limited to claims of sexual harassment, intimidation, and denial of equal terms and conditions of employment provided to males. I filed the complaint with Investigator June Bradley. At the time, I was assigned to the Drug Enforcement Unit and performed undercover duties. My complaint was referred to the IAB for investigation as Bradley stated that the Governor had eliminated informal complaints regarding EEO issues. After filing the complaint, I was subject to immediate retaliatory behavior by Sr. Investigator Paul Kelly including but not limited to being re-assigned to a different supervisor, Senior Investigator Timothy Boar. I was advised this was because I could not work with individuals I had complained about. Boar prohibited me from participating in any operations for this same reason. When I questioned IAB, they advised that they had never made this recommendation. Boar then stated it was at the direction of Major Wayne Olsen. On or about January 16, 2014, Olsen took away my undercover duties because there was an allegation that I suffered from "PTSD." This was never substantiated by Olsen and in fact was a false allegation. I was not allowed to work with

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br>X |
| 9/25/14   X _(signature)_<br>Date        Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 525-2014-00792 |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

teams. False complaints were filed against me regarding an undercover operation, although the Cheetowaga Police were also involved and could have verified that the allegations were false, Respondent failed to investigate.

IAB, as part of the investigation, sent a mass email and "cc" all supervisors involved regarding obtaining statements pertinent to the investigation. There was no confidentiality regarding the terms of the investigation at this point. Upon information and belief, Kelly was reviewing the statements of those involved and required them to submit them to a folder on the Share Drive for his review. I saw some of those submissions on the Share Drive. I reported this to IAB and was told I was told I should stay out of that office and that I was insubordinate for looking at those files.

In or around March 2014, Olsen stated that I was being allowed to integrate back, I could only participate in undercover work under direct supervision of my supervisor. I was accused of being a liar due to my complaint. On or about May 1, 2014, right before I was to leave on my undercover assignment, I was called into the office by Boar who gave me a poor evaluation that was based on untruths. During this undercover operation, a coworker was secretly videotaping the operation, which was customary. However, I later discovered when the coworker played back the footage, that the video was of myself which could put me in harms way as my cover would be revealed. I was never allowed any undercover duties from that point forward. Around that same time, IAB completed their investigation. I was not told the outcome of the investigation and not given any details.

On or about May 15, 2014, I was contacted by Investigator Scott Gillman from the union and advised that I would be leaving the unit and if I did not agree, a personnel complaint would be filed against me. I called Sr. Investigator Brian Meyer from my union who refused to take my grievance and advised me there was nothing to be done. On or about May 16, 2014, I was escorted to my desk to retrieve my personal belongings, including my weapon and holster. I had carried my weapon in my father;s holster and Lt. Martin McKee took my personnel holster. Although I have provided Respondent with the state issued holster I received, I have been denied my personnel holster. I was advised to write a memo regarding this. When I submitted the memo, Lt. Steve Nigrelli told me that my memo was not truthful and made me re-write it to his satisfaction. I was forced to move to the Counter Terrorism Intelligence Unit. Things did not change for me with the move. Major Cerretto file a Level 4 personnel complaint filed that was fabricated. On or about September 24, 2014, I was given a memo by Nigrelli threatening unpaid suspension and termination. I have requested a formal hearing. I believe I have been subject to different terms and conditions of employment, harassed, intimidated, disciplined, and threatened in retaliation for complaining about gender discrimination and sexual harassment in willful violation of Title VII of the Civil Rights Act of 1964, as amended.

SEP 2 5 2014

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.  SIGNATURE OF COMPLAINANT  X |
| 9\26\14          X _____  Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EXHIBIT B



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Buffalo Local Office

6 Fountain Plaza, Suite 350
Buffalo, NY 14202
Phone: (716) 551-4442
Fax: (716) 551-4387

John E. Thompson Jr.,
Director

# DETERMINATION

<u>Charging Party</u>                               <u>Charge No: 525-2014-00792</u>
Jean Oliver

Elma, NY 14059

<u>Respondent</u>
New York State Police
4525 West Saile Drive
Batavia, NY 14020

On behalf of the U.S. Equal Employment Opportunity Commission ("Commission"), I issue the following determination on the merits of the subject charge filed under Title VII of the Civil Rights Act of 1964, as amended (Title VII). Respondent New York State Police is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended. All requirements for coverage have been met.

Charging Party believes that she has been subject to different terms and conditions of employment, transferred, harassed, intimidated, disciplined, and threatened in retaliation for complaining about gender discrimination and sexual harassment. Charging Party is an investigator for the NYS Police.

Respondent denies discriminating against Charging Party. In its position statement, Respondent asserts that the conduct alleged by Charging Party does not violate Title VII. Respondent argues that any adverse employment action taken was for a legitimate business purpose and not for retaliatory or gender-based discriminatory purposes. Respondent states Charging Party was transferred because the senior investigators assigned to her region were either targets or potential targets of her internal EEO complaint and keeping Charging Party with them would be a disservice to all involved parties and not in the best interest of the division. Respondent further states that Charging Party requested subsequent transfers and was granted the same. Charging Party experienced performance issues and was disciplined accordingly.

The Commission's investigation reveals that Respondent did initially retaliate against Charging Party. After Charging Party filed her internal complaint she was immediately retaliated against by being transferred to a different unit. Respondent admitted that it transferred Charging Party as a direct result of her filing a covered complaint. This is clearly retaliatory as it is a direct result of Charging Party exercising her rights under Title VII. Additionally, this action creates a

Page 2                                    Charge No. 525-2014-00792

chilling effect as it sends a message to others that if they complain, they will be subject to different terms and conditions of employment. Such actions discourage others from coming forward and exercising their rights for fear of retaliatory involuntary transfer, or worse.

Based on the above, Respondent's asserted defense does not withstand scrutiny and the Commission has determined that there is reasonable cause to believe that Respondent has discriminated against Charging Party on account of her gender and in retaliation for engaging in a protected activity of filing her initial internal complaint of gender discrimination. Additional allegations were not supported by the evidence available, occurred under different supervisors and decision makers, and appear to be legitimate concerns with Charging Party's performance.

This determination is final. Title VII of the Civil Rights Act of 1964 requires that, if the Commission determines that there is reasonable cause to believe that violations have occurred, it shall endeavor to eliminate the alleged unlawful employment practices by informal methods of conference, conciliation, and persuasion. Having determined that there is reason to believe that violations have occurred, the Commission now invites Respondent to join with it in an effort toward a just resolution of this matter. Enclosed is a letter outlining the proposed terms of conciliation.

Disclosure of information obtained by the Commission during the conciliation process may only be made in accordance with Title VII of the Civil Rights Act of 1964 and the Commission's Procedural Regulations. The confidentiality provisions of Sections 706 and 709 of Title VII and Commission Regulations apply to information obtained during conciliation.

If Respondent declines to enter into conciliation discussions, or when the Commission's representative is unable to secure an acceptable conciliation agreement, the Director shall so inform the parties, advising them of the court enforcement alternatives available to aggrieved persons and the Commission.

With respect to the allegations where cause was not found, the Charging Party may only pursue this matter by filing suit against the Respondent within 90 days of receipt of this letter. Otherwise, the Charging Party's right to sue will be lost.


On behalf of the Commission:


John E. Thompson Jr., Director                    JAN 2 9 2015
Buffalo Local Office                              _____
                                                  Date

NEW YORK STATE POLICE _____ ALBANY, NEW YORK

IN THE MATTER OF THE
AMENDED CHARGES AND SPECIFICATIONS AGAINST
INVESTIGATOR JEAN C. OLIVER
NEW YORK STATE POLICE, TROOP A, BATAVIA, NEW YORK

TO:   **INVESTIGATOR JEAN C. OLIVER**
      New York State Police
      Troop A
      Batavia, New York

      **MEREDITH H. SAVITT, ESQ.**
      54 State Street
      Albany, New York 12207

I, Joseph A. D'Amico, Superintendent of the New York State Police, having made an independent appraisal of the Amended Charges and Specifications dated May 28, 2015, and having reviewed the Findings and Recommendations of the Hearing Board submitted after a hearing held on June 30 and July 1, 2015, and the transcript of such hearing being made available to me, do hereby make the following determination:

1.   The Findings and Recommendations of the hearing board are accepted.

2.   Investigator Jean C. Oliver is found guilty of all Charges.

3.   Investigator Jean c. Oliver is hereby DISMISSED from the Division of State Police effective immediately.

_____
Joseph A. D'Amico
Superintendent

Dated:  July 14, 2015

EXHIBIT 8



**Division of
Human Rights**

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

| |
|---|
| NEW YORK STATE DIVISION OF HUMAN RIGHTS on the Complaint of<br><br>JEAN C. OLIVER,<br>                              Complainant,<br><br>v.<br><br>NEW YORK STATE, DIVISION OF STATE POLICE,<br>                              Respondent. |

DETERMINATION AND
ORDER OF DISMISSAL FOR
ADMINISTRATIVE
CONVENIENCE

Case No.
10176304

Federal Charge No. 16GB503470

      On 7/16/2015, Jean C. Oliver filed a verified complaint with the New York State Division of Human Rights ("Division") charging the above-named respondent with an unlawful discriminatory practice relating to employment because of sex, opposed discrimination/retaliation, disability, military status in violation of N.Y. Exec Law, art. 15 ("Human Rights Law").

      Pursuant to Section 297.3 of the Human Rights Law, the Division finds that noticing the complaint for hearing would be undesirable and the complaint, therefore, is ordered dismissed on the grounds of administrative convenience for the following reason(s):

The Complainant intends to pursue federal remedies in court, in which forum all the issues concerning the question of discrimination charged can be resolved.

      Section 297.9 of the Human Rights Law provides that:

      ... where the Division has dismissed such complaint on the grounds of the
      administrative convenience, ... such person shall maintain all rights to bring suit
      as if no complaint had been filed.

      PLEASE TAKE NOTICE that any party to this proceeding may appeal this Determination to the New York State Supreme Court in the County wherein the alleged unlawful discriminatory practice took place by filing directly with such court a Notice of Petition and Petition within sixty (60) days after service of this Determination.  A copy of this Notice and

Petition must also be served on all parties including General Counsel, State Division of Human Rights, One Fordham Plaza, 4th Floor, Bronx, New York 10458.  DO NOT FILE THE ORIGINAL NOTICE AND PETITION WITH THE STATE DIVISION OF HUMAN RIGHTS.

　　　　Your charge was also filed under Title VII of the Civil Rights Act of 1964.  Your charge was also filed under the Americans with Disabilities Act (ADA).  Enforcement of the aforementioned law(s) is the responsibility of the U.S. Equal Employment Opportunity Commission (EEOC).  You have the right to request a review by EEOC of this action.  To secure review, you must request it in writing, within 15 days of your receipt of this letter, by writing to EEOC, New York District Office, 33 Whitehall Street, 5th Floor, New York, New York 10004-2112.  Otherwise, EEOC will generally adopt our action in your case.

Dated:　　*September 23, 2015*
　　　　Buffalo, New York

STATE DIVISION OF HUMAN RIGHTS


By:　_____
　　　　Tasha E. Moore
　　　　Regional Director

- 2 -

EXHIBIT 9

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To:  Jean C. Oliver<br><br>      Elma, NY 14059 | From:  New York District Office<br>       33 Whitehall Street<br>       5th Floor<br>       New York, NY 10004 |

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16G-2015-03470 | Holly M. Woodyard,<br>State & Local Program Manager | (212) 336-3643 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ]  The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[X]  Other (briefly state)        Charging Party wishes to pursue matter in Federal District Court.

## - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or** the **Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

On behalf of the Commission

_Kevin J. Berry_                              October 23, 2015

Kevin J. Berry,
District Director

Enclosures(s)                                                                      (Date Mailed)

cc:

| | |
|---|---|
| NEW YORK STATE, DIVISION OF STATE POLICE<br>Attn: Jason Hughes, Asst. Counsel<br>1220 Washington Avenue<br>Albany, NY 12222 | Harvey P. Sanders, Esq.<br>Sanders & Sanders<br>401 Maryvale Drive<br>Cheektowaga, NY 14225 |