**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

JEAN OLIVER,

          Plaintiff,

- v -                Civ. No. 1:15-CV-0444
                      (BKS/DJS)

NEW YORK STATE POLICE, *et al.*,

          Defendants.

| APPEARANCES: | OF COUNSEL: |
|---|---|
| JEAN OLIVER<br>Plaintiff, *Pro Se*<br>2 South Shore Drive<br>Elma, NY 14059 | |
| HARRIS BEACH, PLLC<br>Attorney for State Police Defendants<br>99 Garnsey Road<br>Pittsford, NY 14534 | DANIEL J. MOORE, ESQ.<br>JOSHUA D. STEELE, ESQ. |
| GLEASON DUNN WALSH & O'SHEA<br>Attorney for Defendant McKee<br>40 Beaver Street<br>Albany, NY 12207 | LISA F. JOSLIN, ESQ.<br>DANIEL A. JACOBS, ESQ. |

**DANIEL J. STEWART
United States Magistrate Judge**

## DECISION AND ORDER

### I. INTRODUCTION

  This action was originally commenced nearly four years ago on April 14, 2015. Dkt. No. 1. The Court will assume the parties' familiarity with the lengthy procedural history of

this case, as it has been the subject of numerous previous decisions. Plaintiff was originally represented by counsel, and on May 15, 2018 that counsel informed the Court that discovery was ongoing, but nearing an end, and that only one final extension to August 31, 2018 was necessary to complete what needed to be done. Dkt. Nos. 97 & 99.  However, after that date Plaintiff's counsel moved to withdraw, the Court granted that Motion, and Plaintiff has since proceeded *pro se.* Dkt. Nos. 105 & 109.  During the following course of discovery, the Court has intervened on multiple occasions, issuing orders and subpoenas, reviewing documents *in camera*, and generally attempting to resolve numerous disputes. *See, e.g.,* Dkt. Nos. 116, 117, 121, 124, 132, 139, 140, 142, 145, 154, 155, 160, 162, 169, 170, 175, 180, 188, & 198; *see also* Text Minute Entries for October 19, 2018 and December 13, 2018.  Discovery in this matter closed on December 21, 2018, and the parties had been aware of this impending deadline since August 16, 2018.  Dkt. No. 117.  On December 20, 2018, after several of Plaintiff's Motions to Compel had been decided, Plaintiff filed a new request for various items, including "buy sheets," overtime comparison records, case management assignments, and grievances.  Dkt. Nos. 182 & 187.  The Court held a telephone conference with the parties, the result of which was that the Plaintiff's letter requests were granted in part, denied in part, and decision reserved in part.[1]  Dkt. No. 188.

     Some of the issues which are the subject of the Plaintiff's Present Motion to Compel were first raised on February 1, 2019, more than a month after discovery had closed.  Dkt.

---

[1] Matters outstanding from this Order have been addressed in a separate text order.  Dkt. No. 215.

No. 190. At that time Plaintiff indicated that Defendants had failed to produce certain documents (Bates numbers 2171 to 2344 and 7758 to 9733), and that there was an outstanding issue regarding telephone records that were produced by Verizon pursuant to a Court-ordered subpoena, and in particular, records relating to Plaintiff's department-issued cell phone with the last four digits of 7441. Dkt. No. 190. The Court then directed a response from the Defendants, which was timely supplied. Dkt. No. 193. Defendants noted that some of the documents not produced were portions of personnel files as to which, after *in camera* review, the Court had directed only partial disclosure. *Id*.

The Court then ordered that the parties attend an in-person discovery conference, but prior to that time the Court directed that the Plaintiff identify, in a concise manner, each and every discovery dispute she felt was presently still at issue. Dkt. No. 199. Plaintiff then submitted additional letter briefs, Dkt. Nos. 201 and 203, which consisted primarily of a listing of more than 500 Bates stamped numbers assigned to blank pages of discovery, with no indication as to exactly what those numbers represented. *Id.* Plaintiff also made reference to "attorney's eyes only" documents, and requested a list of all documents withheld as a result of the *in camera* review of the Court. *Id.* Finally, Plaintiff made reference to "forged, altered, sanitized and re-created documents." *Id.*

Defendants' counsel responded noting that the Bates numbers assigned to blank pages were generally the result of single-sided documents being scanned in a double-sided manner. Dkt. No. 202. Counsel noted once again that the documents relating to personnel files

submitted for *in camera* review were turned over as directed, and that the documents not produced were the ones the Court did not require to be produced. *Id.* Counsel advised Plaintiff of these facts prior to the present Motion to Compel. *Id.* With regard to Plaintiff's assertions about non-production of other records, Defendants noted that in fact they did produce Bates numbers 2171-2344 and 7759-9733 in accord with the Court's August 31, 2018 Order; Bates number 7758 was produced in response to Plaintiff's First Set of Document Demands. *Id.* With regard to the Verizon phone records, Defendants pointed out that they had provided Plaintiff copies of her phone records separate and apart from the subpoena at issue. *Id.*

The Court then held an in-person discovery conference on February 20, 2019, but it quickly became clear at the conference that items that the Plaintiff then wanted to discuss were not the same as those detailed in her letters. In an effort to stop the ever-changing nature of the Plaintiff's requests and objections, the Court gave her one final opportunity to present an exhaustive list of all issues by February 27, 2019, and provided Defendants until March 1, 2019 to respond. Dkt. No 204.[2]

At that conference the Court also resolved certain issues regarding the Verizon records subpoena. Plaintiff was provided a complete copy of her work-issued cell phone records for

---

[2] Because of the nature of the discovery disputes at issue in relation to police personnel files, I did authorize the parties to file their submissions directly with the Court, and not on the public docket. Those submissions have been filed under seal. After conducting the analysis mandated by *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006), and considering the privacy interests of non-party witnesses in their employment and disciplinary records, the Court has determined that the Letters and Exhibits submitted in support of, and in opposition to, the present Motion to Compel shall remain sealed.

the period in question that had been provided by Verizon in response to the subpoena. In addition, following that conference the Court resent the subpoena so as to obtain additional records for phone numbers ending in 9067 and 3431, which apparently had not been responded to in response to the Court's initial subpoena, at least in part due to a typographical error in the information served with the subpoena.[3] Verizon has now supplied those additional records. Accordingly, Plaintiff is directed to identify the dialed and/or received telephone numbers that Plaintiff believes to be relevant, limited to those two numbers, and the Court will review the newly provided records to see if those numbers appear. If they do, the Court will make arrangements to provide that portion of the billing record to the parties. Plaintiff shall identify the called or received telephone numbers at issue within seven days of this Order.

Plaintiff then filed her comprehensive Discovery Letter, with Exhibits, on February 23, 2019, as directed by the Court. That February 23, 2019 Letter (Dkt. No. 213, "Pl.'s Letter Motion") raised a host of issues, some new, some renewed, which are summarized as follows:

1. Plaintiff objects to the Defendants' apparent limitation of their discovery responses to only documents maintained on files for CNET West and/or Troop A. *Id.* at p. 1.

2. Plaintiff objects to what she perceives to be Defendants' failure to preserve evidence, and in particular to preserve the Plaintiff's division-issued cell phone. *Id.*

---

[3] An error identified by the Court, not the parties.

3. Plaintiff maintains that the Defendants have frustrated her ability to obtain documentary evidence. *Id.* She states that the Defendants refused to produce all documents provided to disciplinary hearing board members. *Id.* at p. 16. She notes that the Defendants refused to create and provide a pay disparity spreadsheet. *Id.* at pp. 14-15. She generally maintains that witnesses have lied under oath, and that the Court should take some action in that regard. *Id.* at pp. 3, 7, 13 & 14.

4. Plaintiff states that Defendants have withheld evidence, including internal communications, grievances, and personnel complaints. *Id.* at pp. 3, 12, 13, & 15. Defendants have also allegedly not provided EEOC documents which the Plaintiff maintains that she needs, and had to get directly from the EEOC. *Id.*

5. Plaintiff maintains that the Defendants have interfered with her ability to conduct depositions. *Id.* at p. 2. This issue is twofold. First she maintains that she was unable to depose non-party witness Kelly Remington, as Ms. Remington was not available for the date selected. *Id.* at pp. 15-16. Second, Plaintiff objects to the conduct at a deposition of defense counsel for Martin McKee, Daniel Jacobs Esq., and specifically to his objections at that deposition. *Id.* at pp. 15-16.

The State Police Defendants then responded to these issues in their own comprehensive letter. Dkt. No. 214, Defs.' Resp. That letter noted as follows:

1. Except as to personnel files, Defendants did not limit their discovery demands to the CNET and Troop A "shared drive folder." Rather, Defendants produced thousands of

pages of relevant documents from all sources. *Id.* at pp. 1-2.

2. Defendants maintain that they did not withhold or fail to preserve relevant documents, unless directed to do so by the Court. *Id.* at pp. 2-3. They note that in connection with Plaintiff's previous claim regarding the alleged failure to produce certain Bates numbered documents, that those documents were in fact produced. *Id.*; Dkt. No. 202. They further note that the blank pages with Bates stamp numbers was simply a function of how the single sided documents at issue were copied. *Id.* In connection with Plaintiff's arguments concerning documents contained in Exhibit C in her most recent letter, those documents were in fact produced by the Defendants, and any claim by Plaintiff to the contrary is simply false. *Id.* at p. 2. Finally, with regard to the department-issued Blackberry phone, the Defendants note that they have in fact preserved the Blackberry phone but simply cannot access it because they do not have the necessary passcode. *Id.* at p. 3.

3. As to the issue of personnel complaints, Defendants note again that they have provided to the Court for review all relevant personnel complaints. *Id.* at pp. 2, 3. In connection with this specific demand of the Plaintiff, as specifically stated in their response dated June 12, 2018, they did limit their production of personnel file complaints to Members of Troop A of the State Police, as they would have been the most similarly situated employees. *Id.* at p. 3 and Exhibit 1. They also note that they turned over all the EEOC documents in their possession relating to the Plaintiff's EEOC case. *Id*. at p. 3. After the Court reviewed the thousands of pages of personnel files, Defendants produced hundreds of

pages to Plaintiff, as ordered by the Court. *Id.* This included a complaint regarding Senior Investigator Davis. *Id.* at p. 3, Bates numbers 12341-12342. In the event the documents involving personnel files have not been turned over, it was because the Court did not order that such documents be turned over. *Id.* at pp. 2-3.

4. Defendants note that the few documents withheld on the basis of attorney-client privilege were accompanied by a privilege log, but that no communications involving Kevin Gagan were withheld on the basis of this privilege. *Id.* at pp. 3-4. With regard to the document attached to an email dated June 2, 2015 from Jill Bertrand to Scott Wilcox, that issue had already been decided by the Court and the Court did not direct the disclosure of that document. *See* Dkt. No. 163.

5. Defendants note that the Plaintiff made the choice to replace the scheduled deposition of non-party witness Kelly Remington with the deposition of another person when Ms. Remington was not able to attend during the scheduled time period, thus fulfilling the eleven witness deposition limit. Defs.' Resp. at p. 4. Defendants did provide Plaintiff with Ms. Remington's contact information. *Id.*

6. Defendants note that the Plaintiff's complaint with regard to the overtime earnings comparison chart was already addressed by the Court in its decision on January 14, 2019, and the Court did not require Defendants to generate such a chart. *Id.* at p. 4; Dkt No. 188. In addition, Defendants note that it appears Plaintiff was able to obtain the information she sought to create such a chart from records available in the public domain. Defs.' Resp. at p.

4.

7. Finally, Defendants point out that the Plaintiff's requests for records from the Erie County District Attorney's Office was already considered by the Court, which did not authorize such production. *Id.*

## II. RELEVANT LEGAL STANDARDS

### A. Motions for Reconsideration

"A court may justifiably *reconsider* its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent manifest injustice." *Delaney v. Selsky*, 899 F. Supp. 923, 925 (N.D.N.Y. 1995) (citing *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)). "The standard for granting a motion for reconsideration is strict[.]" *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided." *Id.* Furthermore, a motion for reconsideration is not to be used for "presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).

### B. Motions to Compel Discovery

"The party seeking the discovery must make a prima facie showing that the discovery sought is more than merely a fishing expedition." *Evans v. Calise,* 1994 WL 185696, at *1

(S.D.N.Y. May 12, 1994); *United States v. Int'l Bus. Mach. Corp.*, 66 F.R.D. 215, 218 (S.D.N.Y. 1974) (holding that burden is on moving party to establish relevance). "In a motion to compel, it is incumbent upon the moving party to provide the necessary linkage between the discovery sought and the claims brought and/or defenses asserted in the case." *Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.P.A.*, 2009 WL 3757054, at *2 (E.D.N.Y. Nov. 9, 2009); *Sec. & Exch. Comm'n v. McGinn*, 2011 WL 13136028, at *3 (N.D.N.Y. Jan. 5, 2011). Once the requesting party has made a prima facie showing of relevance, "it is up to the responding party to justify curtailing discovery." *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 48 (E.D.N.Y. 2018) (quoting *Fireman's Fund Ins. Co. v. Great American Ins. Co. of New York*, 284 F.R.D. 132, 134 (S.D.N.Y. 2012)).

The scope of discovery is set forth in Rule 26 of the Federal Rules of Civil Procedure. That Rule has been amended, on several occasions, to reflect evolving judgments as to the proper scope of discovery, and to create a balance between the need for evidence and the avoidance of undue burden or expense. *Hyatt v. Rock*, 2016 WL 6820378, at *2 (N.D.N.Y. Nov. 18, 2016). To be discoverable within the scope of FED. R. CIV. P. 26, information that is relevant to a party's claim or defense must also be

> proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Enveloping the interpretation of Rule 26 is the general standard set forth in Rule 1. That

-10-

Rule, as amended in December of 2015, requires that the Federal Rules of Civil Procedure "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1; *Hyatt v. Rock*, 2016 WL 6820378, at *2.

### III. ANALYSIS

#### A. Matters Previously Addressed by the Court

Most of the points raised by Plaintiff's letter have already been considered and rejected by this Court in its previous rulings. They include:

A. Plaintiff requests to have a new passcode created for her division-issued phone so that she can retrieve a four-year-old message of congratulations. *See* Dkt. No. 179, Order dated December 17, 2018 at pp. 4-5 ("The request for a subpoena to produce a voicemail that was saved back in 2015, however, is denied. Verizon, in connection with its production pursuant to another of Plaintiff's subpoenas, has indicated that it does not maintain messages or call detail for a period of time beyond twelve months. Therefore, any such subpoena would likely be fruitless. In addition, it does not appear to the Court that this alleged dispute - whether a third party admits that he left a thank you message on Plaintiff's phone - is proportionally relevant to anything in this case" and "[t]he Court also will not require Blackberry to create a new passcode for a phone, assuming it even has the ability to do so").

B. Plaintiff's request to do more than the eleven depositions previously allowed. *See* Dkt. Nos. 160 & 170 ("Plaintiff has already approached this Court and requested additional depositions, and the Court granted that request in only a limited fashion by increasing the number of depositions permitted past the presumptive limit and extending it to eleven. Those depositions have all now been completed. The individuals selected represent Plaintiff's choice as part of her litigation strategy. . .. The Court has already extended the presumed ten deposition limit once, and finds no reason to do so a second time based upon the present record.").

C. Plaintiff's request for a complete file from the Erie County District Attorney's Office regarding David Dees. *See* Dkt. No. 179 at p. 4 ("[T]he Court will not grant the subpoena for any and all records from the District Attorney's Office in the Western District of New York concerning the investigation and arrest of a nonparty. Plaintiff has not established that those records are proportionally relevant.").

D. Plaintiff's demand for all grievances and personnel files for all members of the State Police. *See* Dkt. No. 188 at p. 2 ("With regard to the request for all grievances for all members of the State Police from 2013 to 2015, including the dispositions of those grievances, the Defendants' objections are sustained as the request is overly broad, unduly burdensome, and not proportionally

> relevant to the needs of the present action.").

E. Plaintiff's request for documents attached to an email communication dated June 2, 2015 entitled "Findings of Fact and Recommendations Memo.pdf." *See* Dkt. No. 162 ("The initial email from State Police Counsel Capezza was dated May 29, 2012, but simply enclosed a prior memo prepared on June 1, 2009 by Counsel Darren S. O'Connor with the subject line: PREPARING RULE 3 FINDINGS OF FACT AND RECOMMENDATIONS. The document contains no reference to the facts of Jean Oliver's disciplinary proceeding, which in fact was not even in existence in 2009 or 2012. Thus, the Plaintiff's speculation and conclusions regarding the significance of the memorandum are simply misplaced, and the Defendants' objections to the production of these documents based on attorney-client privilege are sustained.").

Nothing in Plaintiff's most recent submission offers a ground for reconsidering these decisions. There is no assertion by Plaintiff, nor any evidence to support the contention, that there has been an intervening change in the controlling law or the discovery of new evidence. Nor has Plaintiff established the existence of a clear error of law or any manifest injustice that would justify reconsideration of these prior decisions. *See Delaney v. Selsky*, 899 F. Supp. at 925. In this regard, that portion of Plaintiff's Letter Motion - which is properly

construed as a Motion for Reconsideration - is denied.[4]

## B. Matters Presented for the First Time

Several of the issues raised in Plaintiff's current application have not been raised previously or at least not fully presented for the Court's consideration in prior applications for relief.

Plaintiff, arguably for the first time here, squarely presents the issue of whether she is entitled to personnel complaints for members of the State Police beyond those from Troop A that have thus far been provided. *See* Pl.'s Letter Motion at pp. 2, 12-13. As to the breadth of production of personnel complaints, the Court notes that there is no question that information concerning similarly situated male State Troopers may well be relevant to the Plaintiff's claim that she was treated more harshly because of her gender or because she filed a sex discrimination complaint. *See Lee v. City of Syracuse*, 446 Fed. Appx. 319 (2d Cir. 2011) (allowing evidence that male officers were allowed to watch pornography at work as relevant to Plaintiff's *Monell* claim that after she filed a complaint about pornography, she was disciplined for conduct that other officers were not); *Graham v. Long Island Rail Road*, 230 F.3d 34 (2d Cir. 2000). It does not follow, however, that Plaintiff is therefore entitled to each and every disciplinary file that she chooses, or is allowed to relitigate hundreds of other disciplinary cases as part of her own claim. Instead, it is up to the Court to make the

---

[4] The Court notes that any such Motion is also untimely under Local Rule 7.1(g) which requires motions for reconsideration be made within fourteen days of the entry of the challenged order. Given that the latest of the orders referenced above was January 14, 2019, Dkt. No. 188, this application, dated February 23, 2019 is clearly untimely.

*-14-*

difficult determination of proportional relevance so as to balance the needs of the case with the goal of a speedy and cost effective resolution. Defendants initially sought to limit the production of personnel files to those members of Troop A upon the grounds that they were most similarly situated to her. This limitation was noted on June 12, 2018 in the Defendants' Discovery Response, and at that time Plaintiff did not raise an objection. The Court agrees with this limitation on the grounds of proportional relevance because even with it, thousands of pages of personnel files have been submitted to the Court for its review. Of those files, the Court has taken an expansive view of relevance and provided numerous examples to Plaintiff of disciplinary issues and outcomes that she may be able to use to support her litigation position that she was more harshly treated. This included records of approximately twenty-nine other State Troopers who were investigated for infractions involving, *inter alia*, false records; assault; alcohol; sexual misconduct; and loss of equipment. These comparators may allow the Plaintiff to argue that her discipline was unwarranted and disproportionate. While the Court does not have an exact figure, the documents produced in this procedure likely exceeded one thousand pages.[5]

To some extent the objections now raised by Plaintiff appear to be based not on what she has been provided, but on what she apparently believes should have been in those files and now believes was not because she was not provided it in discovery. The Court did not

---

[5] With regard to other EEO proceedings of similarly situated troopers, the Court did not direct the disclosure of those documents, and instead limited the disclosure to what was relevant from the personnel files, including the charge and the penalty. The Court did order production of EEO documents related to Plaintiff as to which Plaintiff has now raised issues as to authenticity. Those issues will be the subject of a separate opinion.

direct Defendants to provide every aspect of the personnel files that it found to be relevant, but generally limited the production to the summary of the charges and the penalty imposed. The Court has been careful to provide Plaintiff with proportionally relevant material from those files, while balancing and respecting the obvious privacy interests of State Troopers who are not a party to this litigation. The fact that the Court may not have ordered certain information produced to Plaintiff does not mean, as Plaintiff appears to suggest, that it was not in the file. It means simply that the Court found only certain information relevant. This type of *in camera* review is one that is generally accepted by the courts in this Circuit. *See*, *e.g. Thousand v. Corrigan*, 2017 WL 4480185, at *8 (N.D.N.Y. Oct. 6, 2017) (recognizing procedure for *in camera* review in making a determination concerning relevance and materiality). Having completed the procedure, this Court is convinced that the Plaintiff's request for all disciplinary records would be overly burdensome and unwieldy both for the parties and the Court, and is simply not warranted in this matter.

Plaintiff raises two issues regarding depositions in this case. First, she alleges that she "was denied the ability to depose Ms. Kelly Remington." Pl.'s Letter Motion at p. 15. The parties somewhat dispute the facts underlying the circumstances of the cancellation of this deposition and whether Plaintiff had contact information for Ms. Remington. *Id.* at pp. 15-16; Defs.' Resp. at p. 4. There is no dispute, however, that Plaintiff proceeded with the eleven depositions she was permitted under the Court's prior Order and never sought to reschedule the deposition. Nor did Plaintiff raise this issue with the Court during the process

of scheduling depositions. To the extent Plaintiff seeks leave to depose Ms. Remington, that request is denied in light of my ruling regarding any request to depose additional individuals. *See* Point III.A. *supra*.

Next, Plaintiff objects to the participation of attorney Christopher Silva in defending the interests of Defendant McKee in three depositions. Plaintiff notes that at the time of these depositions Mr. Silva had not appeared on the record as counsel for Defendant Martin McKee. Plaintiff did not, however, raise any objection to Mr. Silva's participation at the time of these depositions when the Court could have addressed the propriety of Mr. Silva's appearance. The records of the Northern District note that Mr. Silva is an attorney in good standing and admitted to practice before this Court. He is also associated with the law firm of Gleason, Dunn, Walsh & O'Shea, which is the law firm that represents Defendant McKee. The Court has reviewed those portions of the deposition transcript provided by Plaintiff and concludes that none of the objections raised by Mr. Silva were improper. While it perhaps would have been better practice for Mr. Silva to have filed a notice of appearance prior to the depositions, there is clearly no prejudice to Plaintiff from his failure to do so. *See Nalawagan v. Dang*, 2010 WL 11597161 (W.D. Tenn. Oct. 28, 2010). Accordingly, Plaintiff's request that Attorney Silva be sanctioned is denied. If Attorney Silva will continue to appear on behalf of Defendant McKee, however, he is directed to file a notice of appearance on the docket forthwith. N.D.N.Y. L.R. 83.2(a).

Finally, Plaintiff seeks sanctions, to include an adverse inference, against the

Defendants and their counsel because they "willfully and knowingly violated Rule 34" by failing to preserve her Division-issued cell phone and other documents. Pl.'s Letter Motion at pp. 1, 20-21. As noted above, the cell phone was in fact retained, but the Defendants simply do not have the passcode to access it. Defs'. Resp. at p. 3. Nevertheless, the Court already considered the relevance of the saved message on the phone, and did not conclude that it was proportionally relevant to the case. As an overall view, and having participated in conferences and viewed the conduct of defense counsel in their approach to the case and their dealings with Ms. Oliver, a *pro se* litigant, I see no basis whatsoever for the imposition of sanctions. With regard to the Plaintiff's repeated assertions that she has caught the Defendants lying in depositions and in their submissions, Pl.'s Letter Motion at pp. 12-14, this will no doubt be the subject of argument at any trial in this matter, and the trial jury is best left to decide who is credible and who is not. *United States v. Truman*, 688 F.3d 129, 143 (2d Cir. 2012) ("the credibility of witnesses is exclusively for the determination by the jury. . ."). That is not an issue for the presiding Magistrate Judge to rule on in a discovery dispute. Accordingly, this aspect of Plaintiff's Motion is also denied.

## IV. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED**, that within seven days of this decision, the Plaintiff shall provide the Court with a list of telephone numbers that she believes to be relevant to the newly disclosed Verizon telephone records, at which point the Court will review the records and determine

if those numbers are included in the billing records, and therefore are the subject of disclosure; and it is further

**ORDERED**, that the Plaintiff's Letter-Motion for Reconsideration and/or to Compel production of various documentation and to depose an additional witness, is **DENIED**; and it is further

**ORDERED**, that the Plaintiff's Letter-Motion for Sanctions against the Defendants is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this order upon the parties.

**SO ORDERED**.

Date: March 22, 2019
Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge