**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JEAN OLIVER,

                      Plaintiff,

      - v -                                    Civ. No. 1:15-CV-0444
                                                            (BKS/DJS)

NEW YORK STATE POLICE, *et al.*,

                      Defendants.

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| JEAN OLIVER<br>Plaintiff, *Pro Se*<br>2 South Shore Drive<br>Elma, NY 14059 | |
| HARRIS BEACH, PLLC<br>Attorney for State Police Defendants<br>99 Garnsey Road<br>Pittsford, NY 14534 | JOSHUA D. STEELE, ESQ. |
| GLEASON DUNN WALSH & O'SHEA<br>Attorney for Defendant McKee<br>40 Beaver Street<br>Albany, NY 12207 | LISA F. JOSLIN, ESQ. |

**DANIEL J. STEWART**
**United States Magistrate Judge**

## DECISION AND ORDER

### I. INTRODUCTION

    On March 11, 2019, Plaintiff wrote to the District Court requesting a discovery hearing and sanctions against Defendants and their counsel pursuant to Fed. R. Civ. Proc. 37.

Dkt. No. 209. In dispute were, among other things, two state police personnel investigative reports that Plaintiff claimed were falsified, forged, and "sanitized." Dkt. Nos. 209 & 216. The District Court directed this Court to resolve this discovery matter, and a discovery hearing was ordered and scheduled. Dkt. No. 219.

## II. THE HEARING[1]

The requested Rule 37 Discovery Hearing was held on April 23, 2019. During the course of the day-long Hearing, Plaintiff introduced various records which were admitted into evidence by the Court. Those Exhibits are as follows:

Exhibit 17.[2]   Complaint Against Personnel Investigative Report regarding PK,[3] dated January 17, 2014, referencing 39 attachments, 42 paragraphs plus a conclusion, and 38 pages in length, including the cover pages. (Bates Stamped).

Exhibit 18.   Complaint Against Personnel Investigative Report regarding PK, dated January 17, 2014, referencing 39 attachments, 42 paragraphs plus a conclusion, and 38 pages in length, including the cover pages. (Exhibit 1 to EEOC).

Exhibit 51.   Complaint Against Personnel Investigative Report regarding PK, dated January 17, 2014, referencing 33 attachments, 37 paragraphs in length plus a conclusion, and 31 pages in length, including the cover pages. (Marked as Exhibit 29 at the deposition of April 20, 2018).

Exhibit 52.   Email from defense counsel to Plaintiff's former counsel dated May 22, 2018, together with cover sheets of redacted Complaints of Personnel

---

[1] Certain limitations were placed on the hearing. Of particular note, the Court ordered that any issues regarding firearm records which Plaintiff also maintained were forged, were not part of the hearing and this issue would be deferred pending completion of expert disclosure and discovery relative to Plaintiff's handwriting expert. *See* Dkt. Nos. 228 & 233.

[2] Many of the Exhibits that were entered at the hearing were ultimately not relevant to the issue before the Court. Other Exhibits were pre-marked by Plaintiff, but never offered. This is the reason for the gap in the Exhibit numbers.

[3] Reference throughout this Decision to personnel complaint information involving non-parties is made by reference to the individual's initials.

| | |
|---|---|
| | Investigations. |
| Exhibit 54. | Email from Joshua Steele to Jean Oliver dated September 13, 2018, regarding selections of personnel files required to be disclosed pursuant to the August 3, 2018 Court Order. |
| Exhibit 55. | Selected cover sheets of Complaints of Personnel Investigations. |
| Exhibit 56. | Complaint of Personnel Investigation cover sheet. |
| Exhibit 57. | Complaint of Personnel Investigation cover sheet. |
| Exhibit 58. | Attorney email regarding discovery responses. |
| Exhibit 59. | Complaint Against Personnel Investigative Report regarding JP, dated January 10, 2014, referencing 19 enclosures, 21 paragraphs plus a conclusion, and 7 pages in length including the cover pages. (Marked as Exhibit 28 at the Deposition of April 20, 2018). |
| Exhibit 60. | Complaint Against Personnel Investigative Report regarding JP, dated January 10, 2014, referencing 21 enclosures, 23 paragraphs plus a conclusion, 7 pages in length including the cover pages. (EEOC Exhibit 2). |
| Exhibit 61. | Complaint Against Personnel Investigative Report regarding JP, dated January 10, 2014, referencing 21 enclosures, 23 paragraphs plus a conclusion, 7 pages in length. (Bates Stamped). |
| Exhibit 62. | Complaint of Personnel cover sheet regarding Jean Oliver with documents and attached Complaint Against Personnel Investigative Report, referencing 21 attachments, 23 paragraphs plus a conclusion, totaling 29 pages. (Bates Stamped). |
| Exhibit 63. | Complaint Against Personnel Investigative Report regarding Jean Oliver, referencing 21 enclosures, 23 paragraphs plus a conclusion, totaling 22 pages. (EEOC Exhibit 9). |
| Exhibit 64. | Complaint Against Personnel Investigative Report regarding Lt. McKee and others dated May 28, 2014, referencing 15 enclosures, 18 paragraphs and a conclusion. (EEOC Exhibit 6). |
| Exhibit 65. | NYSP Level I Investigation Form regarding Jean Oliver, dated October 21, 2014. (EEOC Exhibit 19). |
| Exhibit 67. | Complaint Against Personnel Investigative Report regarding Lt. McKee and others, dated May 18, 2014, referencing 15 enclosures, 18 paragraphs and a conclusion, totaling 25 pages. (Bates Stamped). |
| Exhibit 68. | Defendants' Privilege Log. |
| Exhibit 69. | Jill Bertrand email dated January 10, 2015. |
| Exhibit 70. | Jill Bertrand email dated June 2, 2015. |
| Exhibit 71. | Letter to EEOC Investigator Kielt, dated November 7, 2014, containing the State Police's response to Plaintiff's complaint of discrimination. |
| Exhibit 72. | Complaint of Personnel Investigation regarding MP. |

Exhibit 73. Memorandum dated October 8, 2014, regarding incident review involving Jean Oliver, with related items.
Exhibit 74. Special Order 2016, renaming the Office of Internal Affairs as the Professional Standards Bureau.
Exhibit 75. Complaint of Personnel Investigation cover sheet regarding Jean Oliver.
Exhibit 76. Complaint of Personnel Investigation cover sheet regarding TP.
Exhibit 77. Complaint of Personnel Investigation cover sheet regarding PK.
Exhibit 78. Complaint of Personnel Investigation cover sheet regarding Martin McKee.
Exhibit 79. Letter of Censure dated January 7, 2015.
Exhibit 80. Memorandum dated May 14, 2013 regarding TP.
Exhibit 81. Memorandum dated November 21, 2013, regarding DB.
Exhibit 82. Memorandum dated May 15, 2014, regarding Jean Oliver.
Exhibit 83. Complaint of Personnel Investigation cover sheet regarding KP.
Exhibit 84. Email dated March 11, 2014 regarding PK report.doc.
Exhibit 85. Email dated March 12, 2014 from Francis Christiansen to June Bradley.

In addition to the submission of Exhibits, Plaintiff *pro se* also called various witnesses to the stand to testify.

Plaintiff first called Lois Goland, who was Deputy Counsel to the New York State Police and a practicing attorney at the time Plaintiff made her discrimination complaint with the EEOC. She testified that she was in charge of the process of preparing the State Police's response, which ultimately was set forth in the letter to EEOC Investigator Kielt. *See* Exhibit 71. Ms. Goland testified that in addition to that letter, there was an ongoing and rolling disclosure process, and pursuant to that she forwarded to the EEOC various documents regarding relevant investigations that the State Police had conducted. Included within that disclosure were the Complaint Against Personnel Investigative Reports regarding JP, PK, and Plaintiff Jean Oliver. Attorney Goland testified that those reports provided to the EEOC by

her are accurately reflected in the Exhibits 18, 60, 63, and 65 that were provided to her at the discovery hearing. She has no knowledge of any report or record being forged, falsified, or sanitized. She noted that the reports that she provided to the EEOC were the most complete available, and to her knowledge were the final versions. She obtained them directly from the State Police's Internal Affairs Bureau ("IAB").

Next, Lt. Owens testified regarding his involvement in document creation or production in the Jean Oliver case and related investigations. In particular, in 2013 and 2014 he investigated and prepared the PK Investigative Report dated January 17, 2014, identified at the Hearing as Exhibit 51. He explained how he conducted the investigation and described that there may have been preliminary reports, but his version was completed, finalized, and submitted to his supervisors on January 17, 2014. His completed report is Exhibit 51, and was shown to Plaintiff Oliver at her deposition as Exhibit 29. Lt. Owens further explained that after he submitted his report, it is his understanding that his supervisors requested additional investigation be conducted. However, at that time Lt. Owens was away at training in Quantico, Virginia, and therefore that additional investigation was assigned to someone else, in particular Captain John Aquilina. Lt. Owens noted that the additional attachments and the additional paragraphs in the investigative report show conduct that occurred after January 17, 2014. *See* Exhibit 17 at p. 2 and ¶¶ 38-42. Accordingly, it is Lt. Owens' understanding that the version of the PK Investigative Report marked as Exhibit 17 and 18, is the final version that was completed *after* the required additional investigation was

conducted by others. To his knowledge Exhibits 17 and 18 are a true and accurate copy of that later report, just as Exhibit 51 is a true copy of his final report as of January 17, 2014. Lt. Owens notes that the cover sheets on Exhibits 17 and 18 still contain his name and still have the same date of the initial report, and he suspects that this simply was never updated when the Report was supplemented. He surmises that the same process occurred in connection with the JP Investigative Report, although he was not involved in that investigation.

Finally, Jason Hughes was called to the stand to testify regarding his production of discovery documentation during the course of the present federal action. He is Assistant Counsel to the State Police and has held that position since April of 2015. Attorney Hughes testified that he was not aware of any discovery document in the Oliver matter that had been falsified, forged or sanitized. He explained that initially when the Oliver Complaint came in, State Police Counsel's Office gathered a significant amount of documentation and provided it to defense counsel. However, as the case progressed, additional requests for documentation were made and additional disclosures were necessary. His normal practice would be to request that documentation from IAB. However, on other occasions he may have obtained information from a different source, such as the EEO file.

In her questioning, Ms. Oliver noted that in many instances dates were contained on the bottom of cover sheets for personnel complaints and that the dates did not correspond to the date of the event, or even the date of the resolution of the personnel complaint. Ms.

Oliver asserted that this meant that the documents were recreated. Mr. Hughes explained that he believed that when those documents were reprinted directly from the computer system, the computer system may have generated a new date at the bottom which corresponds to the most recent printing. In other words, the report auto-populated or automatically dated the form at the time when it was generated from the computer file. He denied any knowledge that the documents had been falsified or having any communications about discrepancies between the documents.

### III. RELEVANT LEGAL STANDARDS

Plaintiff has requested sanctions under Rule 37 for what she claimed was the production of falsified or altered documents by Defendants and their counsel. At the hearing, Plaintiff clarified that the sanction that she was seeking was an order preventing the Defendants from filing any motion for summary judgment, and that she wanted an immediate trial. The Court concludes that the allegations contained in Plaintiff's Motion fall under the general category of spoliation of evidence. "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). Where a party's misconduct violates a court order, Rule 37(b) allows a court to impose on that party sanctions of varying degrees of severity. In the present case, Plaintiff has not identified any court order that was violated, and thus Rule 37(b) is not applicable. However, "[e]ven in the absence of a discovery order, a court may impose

sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002); *see also* FED. R. CIV. P. 37(d). However, a court may not impose sanctions under its inherent power unless the party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Cretella v. Liriano*, 370 Fed. Appx. 157, 159 (2d Cir. 2010) (quoting *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998)). Moreover, pursuant to Rule 37(d) and 7.1(d) of the Local Rules of the Northern District of New York, a motion for sanctions must include a certification that the movant has in good faith conferred with the opposing party in an effort to obtain the answer or response without the need for court action.

A party seeking sanctions based on the destruction or falsification of evidence must establish: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d at 107 (quoting *Byrnie v. Town of Cromwell*, 243 F.3d 93, 107-12 (2d Cir. 2001)). "The party seeking sanctions bears the burden of establishing all elements of a claim for spoliation of evidence." *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 120 (S.D.N.Y. 2008).

## IV. ANALYSIS

The Plaintiff has not satisfied her burden to show that the discovery documents produced in this case were forged, altered, or "sanitized" by the Defendants or their counsel, or that she has been prejudiced in any manner. Despite the hyperbole in Plaintiff's correspondence to the Court which initiated this process, the evidence presented at the hearing simply does not prove her contention. Certainly, none of the testimony from those witnesses called at the hearing supported Plaintiff's claim that documents had been forged, re-created, or sanitized during the course of discovery. The Court found those witnesses to be very credible.

It is clear from the hearing that Plaintiff's arguments are based on two points: (1) that the PK and JP Investigative Reports were modified or altered, and (2) that the cover pages for the disciplinary sheets provided to Plaintiff during discovery are misdated and incorrect. Plaintiff surmises that, based upon these discrepancies, it follows that the Defendants and/or their counsel re-created all of these documents in order to prejudice her case.

Starting first with the PK and JP Investigative Reports, Plaintiff takes the position that the longer versions of those Reports (Exhibits 17, 18, 60, & 61) were created first, and that the shorter versions (Exhibits 51 & 59) were manufactured by the Defendants after the fact to use at her deposition so as to eliminate information that was helpful to her or problematic for them. The Court is not persuaded by this argument, as it is counter to the testimony of the witnesses, contradicts the Exhibits themselves, and runs afoul of common sense. The

testimony of Lt. Owens was that the version that he prepared of the PK Report was the one that is marked as Exhibit 51, (*i.e.* the shorter version) and shown to Plaintiff as Exhibit 29 during her April 20, 2018 deposition. Exhibit 51 is an accurate copy of his report. Therefore, based upon the Court's consideration of the testimony and its review of the records, it is clear to the Court that there was never any alteration of documents - Exhibit 51 was Lt. Owens' original Report of January 17, 2014, and Exhibits 17 and 18 are copies of the final PK Investigative Report (the longer version) generated after additional investigation was conducted. This is evident from the very fact that the longer version contains two additional paragraphs detailing the re-interview of Lt. McKee on February 11, 2014, and an interview of Senior Investigator Phelps on February 18, 2014. *See* Exhibits 17 &18 at ¶¶ 38 & 39. This buttresses Lt. Owens' explanation that his report was supplemented and merely kept the same cover page and date, despite that the fact that the new information was added *after* January 17, 2014. It is true that substantial confusion would have been avoided by labeling the later report, reproduced as Exhibits 17 & 18, as an amended or supplemental investigative report, but that point in no way establishes that the Defendants' counsel or their clients engaged in forgery or other acts of skulduggery, as Plaintiff continues to maintain.

With regard to the investigation regarding JP, that Investigative Report was prepared by Captain Joseph Scioli, Jr., on January 10, 2014, and reproduced as Exhibit 59 at the hearing. While Captain Scioli was not called to the hearing by Plaintiff, it is evident to the Court that a similar supplementation occurred to his Investigative Report as well. Exhibit

59, the initial report, references 19 enclosures and contains 21 paragraphs as well as a conclusion. Exhibits 60 and 62, on the other hand, are copies of an apparently supplemental or revised Investigative Report regarding JP, which contain all the information from the first report but details two additional investigative acts - a re-interview of Investigator Bonafede, and a re-interview of Investigator Baldwin, both conducted by Capt. Aquilina on January 29, 2014 and January 30, 2014, respectively. Those re-interviews occurred *after* the date of the initial report of January 10, 2014, so it once again appears that the cover page and the date of the amended or supplemented report was never changed. The fact that an additional Investigative Report was prepared after the submission of the first report, therefore, is simply a result of further investigation by the State Police and nothing more.

It is also important to note that despite the fact that there appears to be a second supplemental investigative report for both the PK and JP investigations, both reports contain the same finding in each case - that at least some of the complaints are "founded." Also significant is that Plaintiff herself had copies of all of these reports during the discovery process. Her counsel obtained the longer version of the PK and JP reports directly from the EEOC, and an additional Bates Stamped copy was provided by Defendants during the course of discovery. The fact that the shorter version was used at her deposition does not alone evidence impropriety.

The second issue Plaintiff relied upon relates to the complaint cover sheets that were produced during discovery. Generally, those "Complaint of Personnel Investigation" cover

sheets have an "incident date" and "report due" date box at the top of the cover sheet, and also have a separate date stamp on the bottom left. Plaintiff contends that this discrepancy in dates indicates that the documents were recreated or falsified. Counsel for the Defendants believe that, generally, such a date stamp may be automatically populated at the time the report is printed out of the computer system. For example, Exhibit 52 is an email from defense counsel Steele to Plaintiff's then-counsel, David DeChellis, dated May 22, 2018. Attached to Exhibit 52 are redacted copies of such Complaint of Personnel Investigation cover sheets. It appears to the Court, based upon the transmitting email, that what was produced by Defense Counsel was the result of a computer search by the State Police for disciplinary reports related to founded claims for "Disobeying Directive/Order/Instruction" or for "Neglect of Duty" for Troop A personnel. Each of the Complaint of Personnel Investigation cover sheets has a date on the bottom of May 16, 2018, even though the incident dates and the report due dates for the cover sheets range anywhere from 2010 to 2015. *See* Exhibit 52. This supports Defendants' assertions regarding the auto-dating on the bottom left of the form.

Similarly, all the Complaint of Personnel Investigation cover sheets contained in Exhibit 55 are marked at the bottom left with the date of August 24, 2018, even though the complaints themselves cover a wide range of dates from years prior to 2018. The date of August 24, 2018, is therefore more likely reflective of the time of their printing or production from the file, rather than the time of their creation. In another example, the cover sheet for

the Complaint of Personal Investigation # 20140436 was produced twice at the hearing by Plaintiff - as part of Exhibit 52 and again as part of Exhibit 55. This identical cover sheet is dated August 24, 2018 at the bottom of one copy, and May 16, 2018 on the other. *Id*. Thus the Court concludes that the best evidence indicates that the date issue is caused by a computer function, and not by any misconduct of the Defendants or counsel.

This is not to say that there were not some cover sheets produced at the hearing that had date time stamps that were closer in time to the actual date of the Complaint of Personnel Investigation, rather than its production. For example, Exhibits 72, 75, 76, and 77 have dates on the bottom that date as far back to 2009. It may be that a Complaint of Personnel Investigation cover sheet was printed out at that time, placed in a personnel file or other file, and then simply photocopied. This would explain the fact that the date did not change. None of that, however, speaks to any type of intentional misconduct by the Defendants or their counsel, which Plaintiff is asserting in this Motion. While Plaintiff clearly disputed this explanation during the hearing, she offered no direct evidence whatsoever supporting her assertion that Defendants engaged in a large scale re-creation of State Police records.

Also absent from Plaintiff's presentation is any indication regarding harm to her case as a result of the changing dates of these cover sheets. As explained at length in the previous Court Orders, the Court has reviewed personnel complaints regarding other State Troopers, and has directed the production of hundreds of pages of relevant information concerning those complaints, many times including the summary of the investigation that was conducted

and the discipline that was imposed. When asked at the hearing if Plaintiff had any evidence that the Defendants had not turned over the documents which the Court had directed that they turn over, Plaintiff simply responded that she did not know. Plaintiff has therefore failed to meet her burden of proof.[4]

Having concluded that, based upon the record produced at the hearing, there has been no showing of intentional falsification of evidence, forgery, or the sanitization of documents as Plaintiff claimed, I must then decide whether to impose monetary sanctions upon Plaintiff for bringing this discovery Motion. Pursuant to Rule 37(a)(5)(B), where a discovery motion is denied the Court must "require the movant . . . to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust."

In the present case there are many factors which counsel toward the imposition of sanctions against Plaintiff Oliver in addition to the lack of proof outlined above. Initially, Plaintiff has an obligation under both the Local Rules and the Federal Rules to attempt to resolve any issues involving discovery by speaking with the other side and exercising good faith and due diligence. There is no evidence that Plaintiff did that in this case, despite the fact that she knew about the differences in the reports for a substantial period of time prior

---

[4] The Court has considered and rejected the other arguments advanced by Plaintiff at the hearing. Whatever perceived discrepancies might be pointed to in a few of the thousand of pages of discovery provided in this case does not satisfy Plaintiff's burden.

to the discovery cut off. She never asked for an informal conference with the Court regarding these concerns. Had she requested an explanation regarding the two versions of the PK and JP Investigative Reports from defense counsel, the Court is confident that such an explanation would have been provided that would have obviated the need for this Motion. Rather than doing that, Plaintiff filed the present Motion which necessitated a full day hearing.

It is also concerning to the Court that while Plaintiff deposed non-party Lt. Owens over a period of two days, she never asked him any questions concerning the supplementation of his report, or in particular, how it came to be that the two additional interviews were conducted *after* January 17, 2014 and then added to his report. He certainly had that information, as his April 23, 2019 hearing testimony demonstrates. At its own request, the Court was provided a copy of the Owens deposition transcript prior to the discovery hearing, and the Court was frankly dismayed about the types of questions that were asked of that witness by Plaintiff, with the vast majority being highly objectionable. Indeed, the Court admires the restraint of defense counsel in this regard, as they would have been justified in calling the Court for intervention at almost every stage of that deposition. Plaintiff simply never asked the direct type of question that could have easily resolved the issues presented at this Hearing, and instead was focused on accusing the witness of committing perjury.

In addition, this *pro se* Plaintiff has a history with this Court of making unsupported allegations against the Defendants and their counsel. In particular, she accused the State

Police Counsel's Office of misconduct in connection with her disciplinary proceeding by asserting that they supplied the hearing officers with the conclusions of the investigation *before* the hearing had even been held. Dkt. No. 156. An *in camera* review of the correspondence at issue, an attachment to an email dated June 2, 2015 from Jill Bertrand to Scott Wilcox, disclosed that the attachment contained merely a form for their use which had nothing to do with the facts of Plaintiff's discipline; in fact the form had been generated years prior to that hearing. Dkt. No. 162. Undeterred by the prior baseless allegations, Plaintiff has made the present unsupported claim of forgery.

Having considered the matter at length, however, the Court will not impose sanctions at this time. Plaintiff is proceeding *pro se*, and has previously expressed financial difficulties related to the litigation of this matter. Moreover, the Court's limitation regarding the scope of the hearing means that the merits of Plaintiff's claims regarding alleged forgery of firearms records have not yet been addressed. Under the circumstances, the Court finds that these factors would make an award of costs at this time unjust. The Court would note, however, that its patience with Plaintiff's conduct in this case is running thin, and she is specifically warned with regard to engaging in similar conduct in the future, either in this case, or in the related case which she has pending before this Court, *Oliver v. New York State Police*, et. *al*, 19-CV-233. Such conduct will likely result in significant sanctions.

## V. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED**, that Plaintiff's Motion for Sanctions against Defendants for alleged spoliation or falsification of evidence (Dkt. No. 209) is **DENIED**; and it is further

**ORDERED**, that no costs or attorney's fees are assessed in connection with the Motion; and it is further

**ORDERED**, that the Court's stay of the deadline to file dispositive motions (Dkt. No. 212) is hereby lifted, and any such motion shall be filed by May 17, 2019; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the parties.

**SO ORDERED**.

Date: April 30, 2019
       Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge