**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

JEAN OLIVER,

                                Plaintiff,             1:15-CV-00444 (BKS/DJS)

v.

NEW YORK STATE POLICE; JOSEPH D'AMICO, in his individual and official capacity; FRANCIS CHRISTENSEN, in his individual and official capacity; MICHAEL CERRETTO, in his individual and official capacity; WAYNE OLSON, in his individual and official capacity; STEVEN NIGRELLI, in his individual and official capacity; MARTIN MCKEE, in his individual and official capacity; TIMOTHY OWENS, in his individual and official capacity; PAUL KELLY, in his individual and official capacity; TIMOTHY BOUR, in his individual and official capacity; GARY KOPACZ, in his individual and official capacity,

                                Defendants.

---

**Appearances:**

*Plaintiff pro se:*
Jean Oliver
Fort Belvoir, VA 22060

*For Defendants New York State Police,
D'Amico, Christensen, Cerretto, Olson,
Nigrelli, Owens, Kelly, Bour, and Kopacz:*
Daniel J. Moore
Joshua D. Steele
Harris Beach PLLC
99 Garnsey Road
Pittsford, NY 14535

*For Defendant McKee:*
Lisa F. Joslin
Daniel A. Jacobs
Gleason, Dunn, Walsh & O'Shea
40 Beaver Street
Albany, NY 12207

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Jean Oliver brings this employment discrimination action against Defendant New York State Police ("NYSP"), and ten NYSP employees, including the Superintendent of the NYSP and several of her former supervisors. (Dkt. No. 37). Presently before the Court are: Defendants' motions to seal certain documents filed in connection with the pending summary judgment motions, (Dkt. Nos. 257, 260, 305), and Plaintiff's response, (Dkt. No. 306); Plaintiff's letter motion seeking removal of personal identifiers, (Dkt. No. 304); and a motion by all Defendants, except Defendant Martin McKee, to strike portions of Plaintiff's affirmation in opposition to their motion to seal, (Dkt. No. 307), and Plaintiff's response, (Dkt. No. 309). For the reasons that follow, Defendants' motions to seal are granted in part and denied in part, Plaintiff's motion is denied as moot, and Defendants' motion to strike is denied.

### II. MOTIONS TO SEAL

#### A. Legal Standard

"The notion that the public should have access to the proceedings and documents of courts is integral to our system of government." *United States v. Erie County*, 763 F.3d 235, 238–39 (2d Cir. 2014). "Indeed, the common law right of public access to judicial documents is said to predate even the Constitution itself." *Id.* at 239. The First Amendment to the U.S. Constitution "also protects the public's right to have access to judicial documents." *Id.* A party seeking to seal documents submitted to a court bears the burden of showing that sealing is proper. *See DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997).

### 1. Common Law Right of Access

The Second Circuit has articulated a three-step process for determining whether documents should be sealed in light of the common law right of access. "Before any such common law right can attach . . . a court must first conclude that the documents at issue are indeed 'judicial documents.'" *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). To constitute a judicial document, "the item filed must be relevant to the performance of the judicial function and useful in the judicial process." *United States v. Amodeo* (*Amodeo I*), 44 F.3d 141, 145 (2d Cir. 1995).

Second, after determining that the documents are judicial documents and that the "common law presumption of access attaches," the court must "determine the weight of that presumption." *Lugosch*, 435 F.3d at 119. According to the Second Circuit,

> the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance.

*United States v. Amodeo* (*Amodeo II*), 71 F.3d 1044, 1049 (2d Cir. 1995). When a document plays a role in a court's adjudication of litigants' substantive rights—a function that is "at the heart of Article III"—the presumption is strong, but "[a]s one moves along the continuum, the weight of the presumption declines." *Id.* When "documents are usually filed with the court and are generally available, the weight of the presumption is stronger than where filing with the court is unusual or is generally under seal." *Id.* at 1050.

Third, the court must balance any "competing considerations" against the weight of the presumption of access. *Lugosch*, 435 F.3d at 120. "Such countervailing factors include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy

3

interests of those resisting disclosure.'" *Id.* (quoting *Amodeo II*, 71 F.3d at 1050); *accord Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 143 (2d Cir. 2016). When weighing privacy interests, courts should consider "the degree to which the subject matter is traditionally considered private rather than public." *Amodeo II*, 71 F.3d at 1051. Courts should also assess the "nature and degree of injury," paying heed to "the sensitivity of the information and the subject" but also to "how the person seeking access intends to use the information." *Id.* at 1051 (explaining that "[c]ommercial competitors seeking an advantage over rivals need not be indulged in the name of monitoring the courts").

### 2. First Amendment Right of Access

The First Amendment right of access stems from the qualified right of the public and the press "to attend judicial proceedings and to access certain judicial documents." *Lugosch*, 435 F.3d at 120 (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004)). Once a court concludes that there is a qualified First Amendment right of access to the judicial documents at issue, it may only seal the documents "if specific, on the record findings are made demonstrating the closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* (quoting *In re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)). "Broad and general findings by the trial court . . . are not sufficient to justify closure." *Id.* (quoting *In re N.Y. Times Co.*, 828 F.2d at 116). Examples of "higher values" may include law enforcement interests, the privacy of innocent third parties, *Amodeo II*, 71 F.3d at 1050, and the attorney-client privilege, *Lugosch*, 435 F.3d at 125.

### B. Application

The documents requested to be sealed in this case were submitted by the parties in support of and in opposition to Defendants' motions for summary judgment. "[I]t is well-settled that 'documents submitted to a court for its consideration in a summary judgment motion are—as

4

a matter of law—judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment.'" *Brown v. Maxwell*, 929 F.3d 41, 47 (2d Cir. 2019) (quoting *Lugosch*, 435 F.3d at 121). As they are summary judgment submissions "used to determine litigants' substantive legal rights" they are subject to the "highest" presumption of access, and "should, absent exceptional circumstances, be subject to public scrutiny." *Lugosch*, 435 F.3d at 121, 123, 124 (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)).

1. **Defendant McKee's Motion to Seal**

Defendant McKee seeks to seal 12 exhibits submitted in connection with his motion for summary judgment. (Dkt. No. 260). Exhibits C, D, E, F, G, and H (Dkt. Nos. 259-4, 259-5, 259-6, 259-7, 259-8, 259-9) contain excerpts of the transcripts from the depositions of Plaintiff, Defendant McKee, and Defendant Timothy Owen. Exhibit I (Dkt. No. 259-10) contains excerpts from Plaintiff's responses to interrogatories. Exhibit K (Dkt. No. 259-12) contains the May 28, 2014 Investigative Report by the NYSP Internal Affairs Bureau ("IAB") regarding Plaintiff's complaints against Defendant McKee, Defendant Timothy Bour, and Charles Torres. Exhibits M and O (Dkt. Nos. 259-14, 259-16) contain Plaintiff's answers to the disciplinary charges filed against her, Exhibit P (Dkt. No. 259-17) contains excerpts from Plaintiff's disciplinary hearing, Exhibit Q (Dkt. No. 259-18) contains the Findings and Recommendations of the State Police Hearing Board on the charges against Plaintiff. Defendant McKee asserts that these exhibits contain information that is "inextricably intertwined with specific references to employment-related complaints and accusations made against current State Police officers and other non-parties" and asserts that such information is protected by New York Civil Rights Law § 50-a. (Dkt. No. 290, at 3). As discussed below, however, Defendant McKee has failed to provide a specific basis for the wholesale sealing of the documents and has failed to show that his requests are narrowly tailored.

Section 50-a provides "[a]ll personnel records used to evaluate performance toward continued employment or promotion, under the control of any police agency or department of the state . . . shall be considered confidential and not subject to inspection or review without the express written consent of such police officer . . . except as may be mandated by lawful court order." N.Y. Civ. Rights Law § 50-a(1). The Court of Appeals of New York has held that "[d]ocuments pertaining to misconduct or rules violations . . . are the very sort of record which, the legislative history [of § 50-a] reveals, was intended to be kept confidential." *Daily Gazette Co. v. City of Schenectady*, 93 N.Y.2d 145, 159 (1999) (quoting *Prisoners' Legal Servs. of New York v. New York State Dep't of Corr. Servs.*, 73 N.Y.2d 26, 31 (1988)) (emphasis omitted). However, "New York state law does not govern discoverability and confidentiality in federal civil rights actions." *King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y. 1988). While"[s]tate rules may illustrate important privacy interests, and a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy," "[s]imple direct application of the state rule would be undesirable and improper [and] would often frustrate the important federal interests in broad discovery and truth-seeking and the interest in vindicating important federal substantive policy such as that embodied in section 1983." *Coleman v. Cty. of Suffolk*, 174 F. Supp. 3d 747, 757 (E.D.N.Y. 2016) (quoting *King*, 121 F.R.D. at 187), *aff'd*, 685 F. App'x 69 (2d Cir. 2017). "The police must make a substantial threshold showing that there are specific harms likely to accrue from disclosure of specific materials," and "through competent declarations, show[] the court what interests [of law enforcement or privacy] would be harmed, how disclosure . . . would cause the harm, [and] how much harm there would be." *Id.* at 758 (quoting *King*, 121 F.R.D. at 189) (emphasis omitted). The declaration or affidavit

6

submitted must (1) be under oath and penalty of perjury; (2) from a responsible official within the agency who has personal knowledge of the principal matters to be attested to; and (3) upon personal review of the documents." *Dorsett v. Cty. of Nassau*, 762 F. Supp. 2d 500, 532 (E.D.N.Y. 2011).

Defendant McKee asserts disclosure would implicate "the privacy interests of non-party witnesses in their employment and disciplinary records," but has not provided specific examples or identified whose privacy interests he seeks to protect. Nor has Defendant McKee specified which parts of the above exhibits implicate New York Civil Rights Law § 50-a, submitted an affidavit from an official with personal knowledge of the matter, or attempted to narrowly tailor his sealing request. *See E.E.O.C. v. Kelley Drye & Warren LLP*, No. 10 Civ. 655, 2012 WL 691545, at *3, 2012 U.S. Dist. LEXIS 28724, at *8 (S.D.N.Y. Mar. 2, 2012) ("[B]road allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test [for sealing judicial documents]." (internal quotation marks omitted)). Accordingly, Defendant McKee's motion to seal is denied without prejudice.

### 2. Defendants NYSP, D'Amico, Christensen, Cerretto, Olson, Nigrelli, Owens, Kelly, Bour, and Kopacz's Motion to Seal

Defendants seek wholesale sealing of their Exhibit 26 (Dkt. No. 256-2, at 1230), Plaintiff's Exhibits 23, 30, 31, and 36 (Dkt. Nos. 289-24, 289-31, 289-32, 290-3), as well as the video of an undercover operation and "Narco Manual" contained on the compact disc Plaintiff submitted (Dkt. No. 294). In addition, Defendants have proposed redactions to Plaintiff's Exhibits 10, 11, 13, 16, 24, 29, 35, 41, 42, 43, 46, 47, 49, 50, 51, 55, 56, 58, 61, 64, and 65, (Dkt. Nos. 289-11, 289-12, 289-14, 289-17, 289-25, 289-30, 294, 290-8, 290-9, 290-10, 294,[1] 290-14,

---

[1] Docket Number 294 is a compact disc with numerous documents, a video, and an audio recording.

7

290-14, 290-16, 290-17, 290-18, 290-22, 290-32, 290-24, 290-27, 293-3), as well as Docket Numbers 293-4, 293-5, 293-6, 293-7, and 293-8. Defendants contend that these exhibits should be sealed as they contain: (1) identifying information related to third-party privacy interests; (2) confidential information used to evaluate an officer's performance as defined in New York Civil Rights Law § 50-a, or (3) highly sensitive information regarding undercover investigations and confidential informants. (Dkt. No. 305-1, at 5). Plaintiff objects to the sealing of Exhibits 23, 30, 31, 35, 36, and 43, and the video of an undercover operation.

### a. Proposed Redactions

As the proposed redactions to Plaintiff's Exhibits 10, 11, 13, 16, 24, 29, 41, 42, 46, 47, 49, 50, 51, 55, 56, 58, 61, 64, and 65, (Dkt. Nos. 289-11, 289-12, 289-14, 289-17, 289-25, 289-30, 294, 290-8, 290-9, 290-10, 290-14, 290-14, 290-16, 290-17, 290-18, 290-22, 290-32, 290-24, 290-27, 293-3), and Docket Numbers 293-4, 293-5, 293-6, 293-7, and 293-8, are narrowly tailored to protect third-parties whose privacy interests are implicated and the identities of confidential informants or targets of investigations, *Lugosch*, 435 F.3d at 124, Defendants' request to file the redacted versions is granted. Accordingly, the Court turns to the exhibits Defendants maintain should be sealed in their entirety.

### b. Wholesale Sealing

#### i. Investigative Reports

Plaintiff's Exhibit 23 (Dkt. No. 289-24) contains 4 investigative reports from 2010, 2011, and 2014 with information about narcotics investigations in which Plaintiff and another CNET investigator were involved. Prior to filing Exhibit 23, Plaintiff redacted suspects' names and addresses.[2] Defendants maintain this exhibit should nonetheless "be redacted in full because it

---

[2] Plaintiff's Exhibit 23 (Dkt. No. 289-24) still appears to contain date of birth information that must be redacted in accordance with Local Rule 8.1(a)(3).

includes classified information regarding CNET criminal, confidential investigations" that "were explicitly designated confidential." (Dkt. No. 307-1, ¶ 10). Blanket assertions of confidentiality are not enough. *See Bernstein*, 814 F.3d at 144–45 (stating that "conclusory" assertions are "insufficient to justify deprivation of public access to the record" (internal quotation marks omitted)). Moreover, to the extent Defendants have relied on the protective order's, (Dkt. No. 92), classification of confidential materials, "the mere existence of a confidentiality order says nothing about whether complete reliance on the order to avoid disclosure was reasonable." *Lugosch*, 435 F.3d at 126. Accordingly, Defendants have failed to show the asserted confidentiality interest is sufficiently strong to overcome the presumption of access. Their motion to seal Plaintiff's Exhibit 23 (Dkt. No. 289-24) in its entirety is denied.

ii. Internal Investigation Materials

Defendants' Exhibit 26 (Dkt. No. 256-2, at 1230), and Plaintiff's Exhibits 30, 31, 35 (Dkt. Nos. 289-31, 289-32, 305-12, at 41–60) contain the IAB's "Report of Personnel Investigation" based on Plaintiff's complaint that an investigator with whom she worked had sexually harassed her, memoranda submitted as part of the investigation, the transcripts of IAB's interrogations of the subject of the investigation and others, a letter of censure, and an email regarding Plaintiff. Defendants conclusorily assert that these exhibits must be sealed in their entirety because "IAB Investigation files are confidential" under § 50-a of the New York State Civil Rights Law and the subject is not a party to this case and is currently employed with the NYPS. (Dkt. No. 307-1, ¶ 11). As discussed, to sustain their burden, Defendants must "through competent declarations, show[] the court what interests [of law enforcement or privacy] would be harmed, how disclosure . . . would cause the harm, [and] how much harm there would be." *Coleman*, 174 F.3d at 758 (quoting *King*, 121 F.R.D. at 189). They have not done so here. Nor have they addressed whether narrowly tailored redactions would be sufficient. Finally,

9

Defendants offer no explanation for sealing the email dated May 16, 2014, more than four months after the investigation ended and which implicates no third-party privacy interests. (Dkt. No. 289-31, at 22). Accordingly, Defendants' motion to seal Defendants' Exhibit 26 (Dkt. No. 256-2, at 1230), and Plaintiff's Exhibits 30, 31, 35 (Dkt. Nos. 289-31, 289-32, 305-12, at 41–60) is denied.

### iii. Buy Sheets

Plaintiff's Exhibit 36 (Dkt. No. 290-3), contains buy sheets documenting narcotics transactions by undercover investigators in 2013 and 2014. Target names have been redacted already from Plaintiff's Exhibit 36. Defendants have offered no explanation for the wholesale sealing of these documents, even after Plaintiff noted that Defendants had no objection to the filing of similarly redacted documents. (Dkt. No. 306-1, at 26; *see e.g.*, Dkt. No. 289-12). Accordingly, Defendants' motion to seal Plaintiff's Exhibit 36 (Dkt. No. 290-3) is denied.

### iv. Video of Undercover Investigation

The video at issue is listed as part of Plaintiff's Exhibit 43, (Dkt. No. 290-10) and is contained on the compact disc Plaintiff submitted. (Dkt. No. 294). Defendants assert that "the video should be sealed in its entirety inasmuch as it records undercover police operations and the target of a narcotics investigation." (Dkt. No. 305, ¶ 12). A more specific showing is required. "[T]he party asserting the law enforcement privilege bears the burden of showing that the privilege applies" by demonstrating that the evidence at issue contains "information that the law enforcement privilege is intended to protect." *In re City of New York*, 607 F.3d 923, 944 (2d Cir. 2010). "Such protected information includes information pertaining to 'law enforcement techniques and procedures,' . . . information that would endanger 'witness and law enforcement personnel [or] the privacy of individuals involved in an investigation,' and information that would 'otherwise . . .interfere[ ] with an investigation.'" *Id.* (quoting *In re Dep't of Investigation*

*of City of New York*, 856 F.2d 481, 484 (2d Cir. 1988)). Though "[a]n investigation . . . need not be ongoing for the law enforcement privilege to apply as the ability of a law enforcement agency to conduct future investigations may be seriously impaired if certain information is revealed to the public," *id.*, Defendants fail to show that disclosure of the video would endanger witnesses or law enforcement or impair the NYSP's ability to conduct future investigations. Accordingly, Defendants' motion to seal the video is denied.

### v. Narco Manual

Defendants seek to seal "The Narco Manual" in its entirety. (Dkt. No. 305, ¶ 13). This document is contained on the compact disc Plaintiff submitted to the Court. (Dkt. No. 294). Plaintiff, however, has not listed it on her Exhibit List, (*see generally* Dkt. No. 289-2), accordingly, the Court strikes it from the record.

### III. MOTION TO REMOVE PERSONAL IDENTIFIERS

Plaintiff has moved for an order directing Defendants to redact their exhibits to remove her Social Security number and date of birth in accordance with Local Rule 8.1(a)(1), (3). (Dkt. No. 304). Defendants have agreed and resubmitted those documents with appropriate redactions. (Dkt. No. 305, ¶ 15). Accordingly, Plaintiff's motion is denied as moot.

### IV. MOTION TO STRIKE

Defendants move to strike paragraphs 4–74 of Plaintiff's affirmation in response to their motion to seal, (Dkt. No. 306-1), on the basis that those paragraphs are "untimely arguments in opposition to Defendants' Motion for Summary Judgment." (Dkt. No. 307-2, at 5). Defendants' motion is denied. The Court finds their argument without merit as much of Plaintiff's affirmation directly addresses the propriety of sealing the documents at issue. To the extent Plaintiff has made further arguments regarding the pending summary judgment motions, such arguments will be disregarded.

## V. CONCLUSION

For these reasons, it is

**ORDERED** that Defendant McKee's motion to seal (Dkt. No. 260) is **DENIED without prejudice** and, if Defendant McKee has not submitted a supplemental affidavit in support of this motion by March 19, 2020, the Clerk shall file on the public docket the unredacted versions of Defendant McKee's Exhibits C, D, E, F, G, H, I, K, M, O, P, Q, replacing the placeholders at Dkt. Nos. 259-4, -5, -6, -7, -8, -9, -10, -12, -14, -16, -17, -18; and it is further

**ORDERED** that Defendants' motions to seal (Dkt. No. 257, 305) are **GRANTED** with respect to the proposed redactions to Plaintiff's Exhibits 10, 11, 13, 16, 24, 29, 41, 42, 46, 47, 49, 50, 51, 55, 56, 58, 61, 64, and 65, and Dkt. Nos. 293-4, 293-5, 293-6, 293-7, and 293-8, and the Clerk shall file on the public docket the redacted versions of these documents (*see* Dkt. No. 305); and it is further

**ORDERED** that Defendants' motion to seal (Dkt. Nos. 257, 305) are otherwise **DENIED without prejudice**, with the exception of the Narco Manual in the compact disc Plaintiff submitted to the Court in Dkt. No. 294, which is stricken from the record; and it is further

**ORDERED** that Plaintiff's motion to remove personal identifiers, (Dkt. No. 304), is **DENIED as moot**, and Defendants are directed to email, **by March 19, 2020**, to the Court's Courtroom Deputy, complete copies of Dkt. No. 256-2, with pages 961, 963, 1196 replaced and Dkt. No. 256-3, with pages 234, 240, 299, 1497, 1503 replaced; and it is further

**ORDERED** that Defendants' motion to strike (Dkt. No. 307) Plaintiff's affirmation is **DENIED**; and it is further

**ORDERED** that, with respect to the items for which sealing has been denied, Defendants may submit a supplemental affidavit and letter brief in support of their motions to seal **no later than March 19, 2020,** to which the Plaintiff may respond by March 26, 2020; and it is further

**ORDERED** that, on **March 20, 2020**, the Clerk of Court shall publicly file those items for which sealing has been denied unless covered by Defendants' timely submissions.

**IT IS SO ORDERED.**

Dated:  March 13, 2020

*Brenda K. Sannes*
Brenda K. Sannes
U.S. District Judge