```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------x
JEAN OLIVER,

                              Plaintiff,

vs.                                   15-CV-444

NEW YORK STATE POLICE, et al.,

                              Defendants.
------------------------------------------------x
```

*Telephone Conference* - May 21, 2020

James Hanley Federal Building, Syracuse, New York

HONORABLE BRENDA K. SANNES

United States District Judge, Presiding

<u>APPEARANCES</u> (by telephone)

```
For Plaintiff:      JEAN OLIVER, Pro Se
                    9124 Richmond Highway
                    Apt. 543
                    Fort Belvoir, VA 22060

For Defendants:     HARRIS, BEACH LAW FIRM
                    Attorneys at Law
                    99 Garnsey Road
                    Pittsford, NY 14534
                      BY:  DANIEL J. MOORE, ESQ.
                           JOSHUA D. STEELE, ESQ.

For Defendant:      GLEASON DUNN WALSH & O'SHEA
(McKee)             Attorneys at Law
                    40 Beaver Street
                    Albany, NY 12207
                      BY:  LISA JOSLIN, ESQ.
```

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

1              THE CLERK:  Good morning.  We're here with Judge
2    Sannes in the case Oliver versus The New York State Police,
3    15-cv-444.  Miss Oliver, are you on the line?
4              MS. OLIVER:  Yes, I am.
5              THE CLERK:  Can I get the appearance for the
6    defendants, please?
7              MR. MOORE:  Dan Moore and Josh Steele from Harris,
8    Beach, PLLC, representing all the defendants with the
9    exception of Lieutenant McKee.
10             MS. JOSLIN:  Lisa Joslin, from Gleason, Dunn, Walsh
11   & O'Shea, on behalf of defendant Martin McKee.
12             THE COURT:  Good morning to everyone.  Thank you
13   for calling in for this telephonic conference call.  And we
14   do have a court reporter on the line, so if you could
15   identify yourselves before you speak and speak slowly, that
16   would be helpful so that we can get this all down.
17             Generally at this time we would be looking to
18   discuss whether Miss Oliver will have counsel for trial and
19   to set a trial date.  Unfortunately, with the COVID-19, it's
20   made jury trials impractical at this point in time.  We are
21   hopeful that will change, but at this point in time I could
22   not set a trial date in the near future.  So we'll discuss in
23   a little bit whether counsel would seek to set a trial date
24   maybe for sometime in 2021 or hold off on that when we have a
25   better outlook.

1         Let's start with the issue of counsel.  Miss
2    Oliver, now that the Court has ruled on the summary judgment
3    motion and the causes of action that are remaining have been
4    limited, have you attempted to obtain counsel for trial?
5         MS. OLIVER:  Um, yes, ma'am, I have.
6    Unfortunately, I think it's been difficult ever since my
7    attorney left just because for an attorney to step in to a
8    case that's at these stages, at this stage of the
9    proceedings, I just, I can't find anyone that's willing to
10   get involved in this.
11        THE COURT:  And the Court -- the summary judgment
12   ruling was April 27.  Have you made any attempt to obtain
13   counsel for trial following the summary judgment ruling?
14        MS. OLIVER:  Yes.  I mean, I've never stopped
15   trying to find legal counsel since my attorney left.
16   Unfortunately, you know, I've talked with, spoken with a few
17   attorneys, but I haven't had any luck in getting anyone to
18   move forward to assist me in this.  Although I will continue
19   to try to find someone to help me with this.
20        THE COURT:  Okay.  Have you made -- let me just
21   make very clear, have you made any efforts after April 27,
22   2020 to obtain counsel for trial?
23        MS. OLIVER:  Yes, I have.
24        THE COURT:  Okay.  So you're seeking to have
25   counsel for trial?

1  MS. OLIVER:  I would like someone, yes.  Yes,
2  ma'am.
3  THE COURT:  Okay.  What I would propose is that I
4  give you some amount of time, maybe thirty days, to make --
5  now that you have a summary judgment ruling, which does, it
6  does limit what's left in the case, so it may be more helpful
7  in obtaining counsel since that describes kind of what's left
8  in the case, to give you some time to try to find counsel for
9  trial.  And then if you could let the court know within
10 thirty days what efforts you've made to try to find counsel
11 and whether you are seeking to have counsel for trial.
12 MS. OLIVER:  Um, I can do that, ma'am, if that's
13 what you would like me to do.  I mean, I have spoken, like I
14 said, with a couple of attorneys.  It seems a little bit of a
15 problem in that the response I'm getting is, okay, I need
16 $30,000 up front.  And, I mean, I don't have that kind of
17 money to hand someone again.  I've already paid over $50,000.
18 So I just -- I mean, I don't have that type of money to hand
19 to someone.
20 So, I mean, I will obviously keep checking, but I'm
21 prepared to proceed pro se, and I am still obviously seeking
22 the Court's reconsideration on some of those claims that were
23 dismissed.
24 THE COURT:  Well, let's stick with the counsel
25 issue.  I'll give you thirty days.  So by June 19 if you

1   could let the court know what efforts you've made since the
2   summary judgment ruling to try to obtain counsel and whether
3   you have the resources to obtain counsel, the Court could
4   consider appointing counsel to represent you at trial.
5                MS. OLIVER:  Yes, ma'am.
6                THE COURT:  So if you could submit a letter by
7   June 19th.
8                And do counsel have any opinion now, and I don't
9   need an opinion now, but on whether you would prefer to set a
10  trial date in 2021?
11               MR. MOORE:  Your Honor, Dan Moore, representing the
12  defendants with the exception of Martin McKee.
13               From our perspective, Judge, I think that it may be
14  wise to have a date locked in place so that we have something
15  to work with, but again, I think we're open either way.
16               THE COURT:  Okay.
17               MS. JOSLIN:  I agree with Mr. Moore.
18               THE COURT:  Okay.  So what then I'll ask counsel to
19  do with Miss Oliver, who I understand also can communicate by
20  e-mail, is to work with my courtroom deputy in setting a
21  trial date that will likely be in 2021.
22               Miss Oliver, you mentioned a motion for
23  reconsideration.  A motion for reconsideration under our
24  Local Rules are due no later than 14 days from the date of
25  the decision, that's Local Rule 7.1(g).  I did look at the

1   letter that you sent, which was after the due date, and we
2   did consider that and denied your request to reconsider the
3   ruling.
4              MS. OLIVER:  Okay.  Because the -- I mean, I wasn't
5   prepared to start arguing the case out of fear of being
6   sanctioned for going forward with outlining those issues, so
7   I was drawing that on your past rulings cautioning me not to
8   argue matters that have already been decided, so I just
9   wanted to get an approval from you before I did that.
10             THE COURT:  And under our Local Rules the time for
11  reconsideration has passed.  What is it that you seek to
12  point out to the Court?
13             MS. OLIVER:  Well, I just -- my concern is, and
14  perhaps in the affirmation and the opposing papers that I
15  submitted, may have been overly lengthy so that it caused the
16  Court to overlook things, but some of the statements that --
17  some of the rulings that were made in the decision, they're
18  inaccurate.  So when I plan for a trial, I don't know how to
19  plan to argue if we're going back and looking at the Court's
20  ruling, some of those things are just, they're inaccurate.  I
21  don't know how I would say, you know, because the Court
22  decided this, I have to go in this direction.
23             But the decision is not accurate based on the
24  evidence in the case and based on the information that I've
25  submitted in my opposing papers.

1       THE COURT:  What is one example of what you're
2  talking about?
3       MS. OLIVER:  Well, for instance, Judge, I know --
4  and I've kind of bulletized things, I don't have it all right
5  in front of me right now, but I know in one portion you had
6  mentioned that the retaliation could be the fact that I was
7  transferred from a unit from CNET West, which was basically a
8  unit where you're outside, you're in the field, you're doing
9  all of these things, versus my forced transfer into Troop A
10 CTIU as an information sharing unit where my duties were
11 mainly behind a desk.
12      The problem with that is that it's not true.
13 Steven Nigrelli assigned me the same assignments, the same
14 duties I performed in CNET.  I was executing raids.  I was
15 working with the same drug agencies I worked with when I was
16 in CNET.  And I gave the court those documents.  I gave them
17 all of the operational duties.  I was at the raids with the
18 FBI, the DEA, Buffalo PD, Lackawanna PD, Amherst PD.  Those
19 are the assignments Steven Nigrelli personally gave me.
20      And Michael Cerretto was there at these raids.  He
21 spoke at these raids.  So he certainly knew I was there.  He
22 knew I was transporting prisoners, that I was interviewing
23 defendants who were arrested that were involved in narcotics
24 trafficking rings and gang-related violence.  And yet when
25 Steven Nigrelli gave his sworn testimony during my hearing,

1  and I also provided the court with that, he testified that I
2  was strictly assigned to an information sharing unit that had
3  no operational duties.  That wasn't true.
4          THE COURT:  However, Miss Oliver, let me stop you
5  here.
6          MS. OLIVER:  Yes, ma'am.
7          THE COURT:  I think one of the problems that you
8  have in this case is that I've tried to explain very clearly,
9  orally and also in the written decisions, what the law is,
10 and the law is that you cannot challenge the facts that were
11 determined by the hearing board and that were found to have
12 been substantially supported by the New York Court of
13 Appeals.  I'm bound by that law and you're bound by that law.
14         MS. OLIVER:  I'm sorry, ma'am.  Just again, it's in
15 my opposing papers, but during discovery, during Richard
16 Allen's sworn deposition, he confirmed that he never wrote
17 the hearing board's findings.  The hearing board's findings
18 were written by Lois Goland.  There was no decision by the
19 hearing board because the hearing board never made a
20 decision, it was done by --
21         THE COURT:  Miss Oliver, I'm going to stop you
22 here, because I think you haven't read the decision and the
23 law.  It doesn't matter who wrote those facts.
24         So I am going to deny your letter motion, your most
25 recent letter motion, which is docket 331.  I have already

1  ruled on your request for reconsideration and I've denied
2  that, and that's denied for the same reason.
3           So what we need to do now is I will set a trial
4  date coordinating with counsel and with you, and we will --
5  if you could work on finding counsel for trial, and I will
6  consider your letter, which is due by June 19, and I will
7  consider whether if you are not able to find counsel for
8  trial, if you're not able, if you don't have the resources to
9  obtain counsel for trial, I will consider the possibility of
10 appointing counsel to represent you at trial.
11          MS. OLIVER:  Okay.
12          THE COURT:  And then let me ask counsel, Mr. Moore
13 and Ms. Joslin, anything further?
14          MR. MOORE:  Judge, I believe this is a closed
15 issue, but I do note that in one of the decisions by
16 Magistrate Judge Stewart he left open the possibility of
17 expert disclosure after the decision on summary judgment was
18 issued, and in reading the Court's decision, I see no reason
19 for any expert disclosure at this point.  However, I just
20 want to make sure the parties are clear on that point because
21 we want to avoid a situation where that may come up at trial
22 and there has not been disclosure.
23          And so I only bring it up for that purpose because
24 Miss Oliver is pro se and, you know, I'm sure she understands
25 her obligations with respect to expert disclosure, but that

1   is additional discovery that would need to be conducted if
2   she believes there is still an issue there.
3           THE COURT:  Okay, thank you.  That's something I
4   had forgotten about and thank you for bringing that up,
5   Mr. Moore.  Miss Oliver?
6           MS. OLIVER:  Yes, ma'am.
7           THE COURT:  Any response?
8           MS. OLIVER:  Well, yes, I intend on raising this
9   issue.  Throughout this entire case I've argued that there
10  has been fraudulent documents produced.  The documents
11  related to the firearms transfer records are forged.  I never
12  sold a firearm to Red Barn Firearms.  And I know who forged
13  it.  I spoke with the firearms store owner.  I mean, I know
14  what happened here.  And so, yes, I fully intend on raising
15  this issue during trial.
16          THE COURT:  Well, what Mr. Moore has pointed out is
17  that there is a time for discovery and that time has closed,
18  but there apparently was some discussion about leaving the
19  expert disclosure issue for after a summary judgment ruling.
20          So there are no issues for discovery left other
21  than that issue.  The way this works is the discovery has
22  happened, the Court's ruled on summary judgment, there was
23  one discovery issue outstanding, and that's what Mr. Moore
24  has brought up.
25          What exactly are you seeking at this point with

1  respect to that expert disclosure issue?
2             MS. OLIVER:  Well, I mean, my expert has already
3  come forward and submitted a report with his findings based
4  on the limited documents that we received from the
5  defendants, so I don't know what Mr. Moore would want to do
6  in addition to that.  But, yes, I mean, I definitely want
7  there to be full disclosure of this, and if there is an issue
8  remaining, discovery related to that, then I would like it
9  resolved.
10            THE COURT:  How are the firearms transfer records
11 relevant to what's remaining at trial?
12            MS. OLIVER:  Well, they're relevant because it
13 shows the intent of the defendants to falsify documents,
14 forge documents, anything that they could do, and it matches
15 with the SJS investigative report that a subordinate was
16 directed to also falsify, so it's all very much related.
17            THE COURT:  Who do you believe falsified the
18 records?
19            MS. OLIVER:  The transfer records or the SJS
20 investigative report?
21            THE COURT:  Let's start with the transfer records.
22            MS. OLIVER:  Well, the transfer records, at least
23 one of them was forged by Walter Macnee (phonetic), who was a
24 supervisor in CNET West, and the other one was done by
25 Timothy Moore -- I'm sorry, Timothy Bour, who was also a

1  former supervisor in CNET West.

2          The investigative report, the SJS entry, someone
3  directed Investigator Michael Sims to falsify that because,
4  probably because people were angry that this was done to me,
5  the illegal search and seizure of my home.  So when that
6  happened he was directed to write a SJS entry which falsely
7  reported that the search or the confusion was due to errors
8  made on the transfer records by me.  But I have copies of all
9  the transfer records and there were no errors on those.  So
10 that's what they were using to try to justify the illegal
11 search and seizure that I was subjected to.

12         THE COURT:  Okay.  Let me ask Mr. Moore, what
13 discovery issue do you believe is outstanding?

14         MR. MOORE:  Your Honor, I don't believe there is
15 any discovery issue outstanding.  I think what I just wanted
16 to bring up was the fact that given the limitations of what
17 is left in the case, which includes specific claims with
18 respect to hostile work environment and retaliation, there is
19 no relevant discovery that is required any further.

20         To this point, Miss Oliver, when the case was being
21 litigated, she initially indicated she was going to have an
22 expert look at records but she did not comply with the expert
23 disclosure rules, and at the time with Magistrate Judge
24 Stewart's help we decided that instead of getting into that
25 issue, we would wait and put it off to see if it was still

1   necessary once a summary judgment decision was issued.  And
2   it is my belief that it is not necessary because this case is
3   now limited to specific retaliation and hostile work
4   environment claims that have nothing to do with what Miss
5   Oliver is referring to, that that will not be a part of the
6   case.
7              MS. OLIVER:  Yes, I completely disagree.
8              THE COURT:  Let me just ask Mr. Moore.  So did
9   Miss Oliver actually identify an expert who submitted a
10  report with his findings?
11             MR. MOORE:  She did not comply with the rules of --
12  the civil procedure rules that require disclosure by the
13  expert.  What she did do was she had -- she did identify an
14  expert to review certain documents, but we don't have what
15  disclosure requires.  And when we discussed that, we all
16  agreed to put that off until after summary judgment.
17             And again, the hope was that it may not -- you
18  know, the time, effort, and cost involved with that would be
19  unnecessary in the event that summary judgment would somehow
20  take care of this issue, and in my view it has.
21             THE COURT:  Right.  And so I think I probably need
22  a little bit more information to make a final ruling.  How
23  would you frame the question that Miss Oliver should address
24  with respect to sending a written submission to the court?
25             MR. MOORE:  My suggestion, Your Honor, would be,

1  the issue would be whether or not a handwriting expert is
2  relevant given the issues that remain in the case.
3             MS. OLIVER:  So, if my claim is retaliation and
4  part of that retaliation are these falsified documents, these
5  forged documents, these things done to cover this
6  retaliation, we're going to pretend that that's not relevant?
7  I just totally disagree.
8             And the only reason I agreed to hold off -- I mean,
9  my expert prepared a written report, so he examined
10 documents, the state police brought the documents to his
11 workshop where we examined the documents, he completed a full
12 report, he submitted it to the court.  I only agreed to hold
13 off because I didn't want to necessarily delay the case and
14 incur additional expenses.  I agreed to hold off until after
15 summary motions were heard, but never to say, well, down the
16 road after all of this is dismissed, we'll just pretend that
17 that's not relevant to this either.  That's not at all true.
18            THE COURT:  Miss Oliver, if you could submit a
19 letter to the court concisely describing how the handwriting
20 expert is relevant to the issues remaining.  You've indicated
21 to me that the people who forged these documents I don't
22 believe are any of the defendants that are still left in the
23 case, so if you could submit a letter and include your expert
24 analysis, the expert's report as an attached exhibit.
25            And I'm looking for something that's concise.  I

1  want to just focus on at this point given the issues that are
2  left in the case, and as Mr. Moore indicated, the issues that
3  are left are relatively limited, so the issues, there are
4  retaliation issues but they're fairly limited to certain acts
5  of retaliation.  So how this is relevant to the case.  And
6  then I'll let Mr. Moore and Ms. Joslin respond, and then I'll
7  make a ruling.
8             MS. OLIVER:  Okay.  Well, Martin McKee specifically
9  received these firearms transfer records because they were
10 all submitted to him, so it is very relevant to this case,
11 and I fully intend on raising this during trial.  But I will
12 submit the letter to the Court with proof that this is
13 relevant to the retaliation.
14            THE COURT:  Okay.  And how much time do you need to
15 submit that letter?
16            MR. MOORE:  I guess I would like to have at least
17 two weeks because I am also working on the other, submitting
18 the documentation for the other aspect of this.
19            THE COURT:  Okay.  So two weeks would be June 4th.
20 So if you could submit a letter on that issue by June 4th, I
21 think no more than ten pages because I want it focused on if
22 you could look at the Court's decision and see what's left in
23 the case, how this is relevant.
24            And with respect to trial, at trial the Court will
25 permit anything, obviously, that's relevant and admissible,

1   but things that you want to raise that are not relevant are
2   not going to be part of the trial.
3              MS. OLIVER:  Okay.  Is there -- okay.  Okay.
4              THE COURT:  And I'll give counsel an opportunity to
5   respond by June 18.  Any response is due by June 18.
6              MR. MOORE:  Thank you, Your Honor.
7              MS. JOSLIN:  Thank you, Your Honor.
8              THE COURT:  Anything else from Miss Oliver or
9   counsel?
10             MS. OLIVER:  Um, yes, Judge.  Just with regard to
11  your decision to deny my requests to submit the evidence in
12  support of upholding these claims, do I have any recourse?
13  Am I permitted to file an appeal?  Am I permitted to go to
14  any avenue whatsoever to try to have my case heard?
15             THE COURT:  You can always appeal to the Second
16  Circuit.  The Second Circuit generally, and I can't give you
17  legal advice, but they generally don't take interlocutory
18  appeals, appeals of rulings at a stage before final judgment.
19             MS. OLIVER:  Okay.
20             THE COURT:  And, Miss Oliver, as I mentioned, there
21  are Local Rules that even pro se litigants have to follow,
22  and our Local Rule is 14 days for a motion for
23  reconsideration.
24             MS. OLIVER:  Yes, I understand that, ma'am, but I
25  did submit my intent to seek a reconsideration.  I wasn't

1  going to just start blasting all of the evidence out there
2  under fear of being sanctioned.  So I understand that, but I
3  think I did meet the 14 days.  But I will file an appeal with
4  the Second Circuit.
5            THE COURT:  Anything further from anyone?
6            So, Miss Oliver, your letter to the court regarding
7  your work in obtaining counsel is due by June 19th.  And then
8  your letter with respect to the relevance of the handwriting
9  expert is due by June 4th.
10           MS. OLIVER:  Okay.
11           THE COURT:  Anything further from anyone?
12           MS. JOSLIN:  Not me, Your Honor.  Thank you.
13           MR. MOORE:  No, Your Honor.
14           THE COURT:  Okay.  Thank you all.  Stay safe.
15           MR. MOORE:  Thank you, Your Honor.
16
17                    *         *         *

C E R T I F I C A T I O N

     I, EILEEN MCDONOUGH, RPR, CRR, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

                           s/Eileen McDonough

                           _____
                           EILEEN MCDONOUGH, RPR, CRR
                           Federal Official Court Reporter