UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JEAN OLIVER,

                              Plaintiff,              1:15-cv-00444 (BKS/DJS)

v.

NEW YORK STATE POLICE; WAYNE OLSON, in his
individual and official capacity; MARTIN MCKEE, in his
individual and official capacity; PAUL KELLY, in his
individual and official capacity,

                              Defendants.
_____

**Appearances:**

*Plaintiff pro se:*
Jean Oliver
Fort Belvoir, VA 22060

*For Defendants New York State Police,*
*Olson, and Kelly:*
Daniel J. Moore
Joshua D. Steele
Harris Beach PLLC
99 Garnsey Road
Pittsford, NY 14534

*For Defendant McKee:*
Lisa F. Joslin
Daniel A. Jacobs
Gleason, Dunn, Walsh & O'Shea
40 Beaver Street
Albany, NY 12207

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.     INTRODUCTION**

Plaintiff Jean Oliver brings this employment discrimination action against Defendant New York State Police ("NYSP") and three NYSP employees. (Dkt. No. 37). Following summary judgment, the remaining claims include, inter alia, a claim under 42 U.S.C. § 1983 against Defendant Paul Kelly for violating her rights under the Fourteenth Amendment's Equal Protection Clause, arising out of an alleged hostile work environment, and retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq. *Oliver v. New York State Police*, No. 15-cv-00444, 2020 WL 1989180, at *53, 2020 U.S. Dist. LEXIS 73284, at *168–70 (N.D.N.Y. Apr. 27, 2020). Presently before the Court is Plaintiff's request for the appointment of trial counsel. (Dkt. No. 344). Plaintiff's request for appointment of counsel is denied, but if Plaintiff has not retained counsel by the time of trial the Court will appoint standby counsel to be present at trial for the purpose of assisting Plaintiff in the orderly presentation of her case at trial.

**II.    BACKGROUND**

On April 14, 2015, Plaintiff filed this action pro se. (Dkt. No. 1). On October 16, 2015, counsel appeared on Plaintiff's behalf. (Dkt. No. 20). On July 3, 2018, following filing of amended pleadings, (Dkt. Nos. 29, 37), litigation of a dismissal motion, (Dkt. Nos. 41, 57, 63), commencement of discovery, (Dkt. No. 84), and completion of mandatory mediation, (Dkt. No. 94), Plaintiff's counsel moved to withdraw as counsel for Plaintiff. (Dkt. No. 105). After considering the submissions from Plaintiff and her counsel, and holding an in-person hearing on the motion, United States Magistrate Judge Daniel J. Stewart granted Plaintiff's counsels' motion to withdraw. (Dkt. No. 109). This action was stayed for thirty days to allow Plaintiff to retain new counsel or determine whether to proceed pro se. (Dkt. No. 110). On July 9, 2018, Plaintiff

2

filed a letter indicating that she had paid former counsel $47,000 prior to their withdrawal, and that she had "contacted dozens of law firms and advocacy centers over the past month . . . trying to secure legal representatives," but had been unsuccessful. (Dkt. No. 111, at 1). Plaintiff requested that the Court appoint her "an experienced employment attorney," who she was "more than willing" to pay $1,000 per month to handle her case. (*Id.* at 3).

After analyzing the factors set forth in *Hodge v. Police Officers*, 802 F.2d 58, 61–62 (2d Cir. 1986), and presuming the merit of Plaintiff's claims, Magistrate Judge Stewart denied Plaintiff's request for counsel without prejudice, noting, among other things, "her ability to analyze and communicate legal issues." (Dkt. No. 112, at 2). On August 16, 2018, Plaintiff advised Magistrate Judge Stewart that she was continuing in her efforts to retain counsel but was prepared to proceed pro se. (Text Minute Entry, Aug. 16, 2018). To date, Plaintiff has ably handled the extensive litigation in this case, including the completion of discovery and responding to Defendants' motions for summary judgment. (Dkt. Nos. 256, 259).

During a telephone conference on May 21, 2020, the Court raised the issue of trial counsel with Plaintiff, who advised that she has "never stopped trying to find legal counsel since her attorney withdrew from the case." (Dkt. No. 340, at 3). The Court directed Plaintiff to continue to look and to file a status report regarding her efforts, and advised Plaintiff that it could consider appointing trial counsel. (*Id.* at 5).

On June 22, 2020, Plaintiff filed a status report outlining her efforts to obtain counsel and the difficulties she has encountered: "To date, I have contacted more than 50 law firms who were either unwilling to take over a case . . . or wanted a minimum of $10,000 down, which I simply do not have the money to pay." (Dkt. No. 344, at 1). In addition, her efforts to "negotiate

3

payment arrangements with various law firms," have been unsuccessful. (*Id.*). Plaintiff has therefore requested that the Court consider granting her legal counsel for trial. (*Id.*).

On August 5, 2020, the Court had a telephone conference with Plaintiff concerning her application for appointment of counsel. At this conference, Plaintiff stated that she had spoken with several law firms following the Court's issuance of the summary judgment ruling but that "[n]obody wants to touch this case . . . at this stage in these proceedings." She recounted that she has paid "close to $70,000, $80,000 in legal fees" to prior counsel. She further stated that one attorney that she spoke to wanted $30,000 "up front" but that she does not have that money. The Court explored Plaintiff's ability to pay for an attorney: Plaintiff indicated that she is currently employed full-time, though transitioning from Virginia, where she works, to the Buffalo area to care for her mother, who lives in Plaintiff's house in Buffalo. Plaintiff "fully support[s]" her mother and pays for all house expenses. Plaintiff also pays for an apartment in Virginia. Plaintiff has a small retail and commercial business, but it "is not profitable and it tends to fluctuate . . . especially during this COVID-19" pandemic.

Following the telephone conference, Plaintiff filed a letter in further support of her request for appointment of counsel. (Dkt. No. 351).

## III.    LEGAL STANDARD

The decision of whether to appoint counsel to a pro se litigant in a Title VII action is governed by 42 U.S.C. § 2000e–5(f)(1), which provides that "[u]pon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney." The Second Circuit has instructed that in determining whether to appoint counsel, "[a] court should assess a plaintiff's ability to afford a private attorney, although the litigant need not be destitute before an appointment is made." *Jenkins v. Chem. Bank*, 721 F.2d 876, 880 (2d Cir. 1983). "In addition, consideration should be given to the efforts taken by the plaintiff to obtain a

lawyer" and "[a]t a minimum, there must be evidence of a 'reasonably diligent effort under the circumstances.'" *Id.* (quoting *Bradshaw v. Zoological Soc. of San Diego*, 662 F.2d 1301, 1319 (9th Cir. 1981)). "The court might look at the availability of counsel in its geographical area and the plaintiff's possible skill or lack of skill at obtaining such help as well as at the number of contacts with potential counsel." *Id.*

The Second Circuit has observed that "[d]istrict courts exercise substantial discretion in deciding whether to appoint counsel, subject to the principles we have set forth in *Hodge v. Police Officers*," including whether the plaintiff's "position seems likely to be of substance," the plaintiff's "ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented," the plaintiff's "ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination." *Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 203–04 (2d Cir. 2003) (quoting *Hodge*, 802 F.2d at 61–62). In deciding whether to appoint counsel, courts must be mindful that "[v]olunteer lawyer time is a precious commodity" that "should not be allocated arbitrarily." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir.1989).

**IV.   DISCUSSION**

Unlike the majority of cases where the Court appoints counsel, Plaintiff is not, and does not claim to be, indigent. Indeed, she represents that she is able and willing to pay counsel, if not a lump sum, on a monthly basis. But in this Title VII case, a plaintiff's ability to pay is not the only consideration. *Jenkins*, 721 F.2d at 880. The maturity and voluminous nature of this case appear to have been a deterrent to attorneys' willingness to agree to represent Plaintiff in this matter. Indeed, Plaintiff indicates she has contacted more than fifty attorneys and that either they

5

refused to take her case or she could not pay the retainer. (Dkt. No. 344, at 1). The April 27, 2020 summary judgment ruling, however, significantly narrowed the issues in this case. Although Plaintiff continued to seek counsel following the Court's summary judgment ruling, she has been unsuccessful.

Turning to the factors set forth in *Hodge*, the Court observes that Plaintiff's position seems likely to be of substance. Not only did the EEOC issue a finding of probable cause as to retaliation, but two of Plaintiff's Title VII retaliation claims survived summary judgment and will proceed to trial. *See Candelaria v. Coughlin*, No. 96-2794, 133 F.3d 906, 1997 WL 796148, at *3, 1997 U.S. App. LEXIS 36430, at *9  (2d Cir. Dec. 31, 1997) (unpublished table opinion) ("Considering that Candelaria's action survived defendants' motion for summary judgment and proceeded to trial, it may be argued that the issues he raised met the standard of 'likely merit' to warrant appointment of counsel."). Further, at least one of Plaintiff's claims—the § 1983 hostile work environment claim against Defendant Paul Kelly—will involve factual issues that turn on credibility, and Plaintiff's case would benefit from an effective cross-examination. The Court is also mindful that the remaining claims, against four Defendants, are somewhat complex for a layperson, and that between them, Defendants are represented by two well-respected law firms and four attorneys. At the same time, Plaintiff has shown herself to be articulate and smart, and an able investigator and litigator. And the Court has concerns as to whether, in light of Plaintiff's history with counsel, she would be amenable to following the advice of pro bono counsel appointed by the Court. (*See* Dkt. Nos. 105-3, 109).[1]

---

[1] The Court notes that Plaintiff states that she would "fully abide with the guidance and direction" of appointed legal counsel, (Dkt. No. 351, at 2).

While this case is somewhat complex, effective cross-examination would be helpful, and Plaintiff faces formidable defense counsel, the Court notes that Plaintiff is not without financial resources and she has successfully litigated this case to date. After considering all of the competing factors, the Court denies Plaintiff's request for appointment of counsel, but concludes that appointment of standby counsel to be present to assist Plaintiff at trial is "more likely to lead to a just determination." *Ferrelli*, 323 F.3d at 204. Therefore, if Plaintiff does not have trial counsel by the time of trial, the Court will appoint standby counsel to be present at trial to assist Plaintiff in the orderly presentation of this case. Plaintiff will, however, still be representing herself, with the entire responsibility for her representation.

The Court encourages Plaintiff to continue to seek counsel to represent her at trial. The Court notes that the Onondaga County Bar Association has a lawyer referral service that may be of assistance to Plaintiff. *See* www.onbar.org/find-a-lawyer/request-lawyer-referral. However, if Plaintiff, is unsuccessful in finding an attorney to represent her at trial, the Court will appoint standby counsel to be present at trial to assist Plaintiff in the orderly presentation of her case during trial.

## V.     CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's request for appointment of counsel (Dkt. No. 344) to represent her at trial is **DENIED;** and it is further

**ORDERED** that if Plaintiff has not retained counsel to represent her at trial, the Court will appoint standby trial counsel to be present at trial to assist Plaintiff in the orderly presentation of her case at trial. The Court will appoint standby counsel after the completion of pre-trial submissions and after the final pre-trial conference and shortly before trial. This

appointment will be limited as standby counsel will not be Plaintiff's representative in this case: Plaintiff will continue to be responsible for the presentation of her case. The role of standby counsel will be to provide guidance to assist Plaintiff in the orderly presentation of her case at trial. This ruling does not preclude Plaintiff from hiring her own counsel to represent her in this matter; the Court encourages Plaintiff to continue to seek counsel to represent her at trial;[2] and it is further

    **ORDERED** that the Clerk serve this Order in accordance with the Local Rules.

    **IT IS SO ORDERED.**

Dated: September 9, 2020
       Syracuse, New York

*Brenda K. Sannes*
Brenda K. Sannes
U.S. District Judge

---

[2] The appointment will be limited to standby counsel for trial. Any appeal shall remain Plaintiff's responsibility alone unless a motion for appointment of counsel for an appeal is granted.