**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JEAN OLIVER,

                                        Plaintiff,                    1:15-cv-00444 (BKS/DJS)

v.

NEW YORK STATE POLICE; WAYNE OLSON, in his
individual and official capacity; MARTIN MCKEE, in his
individual and official capacity; PAUL KELLY, in his
individual and official capacity,

                                        Defendants.

**Appearances:**

*Plaintiff pro se:*
Jean Oliver
Elma, NY 14059

*For Defendants New York State Police,*
*Olson, and Kelly:*
Daniel J. Moore
Joshua D. Steele
Daniel Palermo
Harris Beach PLLC
99 Garnsey Road
Pittsford, NY 14534

*For Defendant McKee:*
Lisa F. Joslin
Gleason, Dunn, Walsh & O'Shea
40 Beaver Street
Albany, NY 12207

Hon. Brenda K. Sannes, United States District Judge:

ORDER

## I.     INTRODUCTION

Plaintiff Jean Oliver brings this employment discrimination action against Defendant New York State Police ("NYSP") and three NYSP employees. (Dkt. No. 37). A jury trial is scheduled to begin on April 18, 2021. (Dkt. No. 369 (Trial Order)). The Verified Second Amended Complaint named eleven defendants and contained twenty causes of action, (Dkt. No. 37); and this case has been litigated extensively, (*see, e.g.*, Dkt. Nos. 41 (motion to dismiss), 57 (motion to dismiss), 223 (motion for preliminary injunction), 256 (motion for summary judgment), 259 (motion for summary judgment), 327 (motion for reconsideration)). Accordingly, in preparation for trial, the Court directed the parties to identify the claims they contend remain for trial. (Dkt. No. 370). Not surprisingly, there is some disagreement. At a telephone conference, counsel for the remaining Defendants stated they believed four claims remained for trial: (1) Section 1983 hostile work environment claim against Paul Kelly; (2) Title VII retaliation claim against NYSP regarding the removal of Plaintiff's undercover duties and her transfer to CTIU; (3) NYSHRL retaliation claim against Wayne Olson regarding Plaintiff's transfer to Timothy Bour's team and the removal of her undercover duties; and (4) NYSHRL retaliation claims against Martin McKee regarding Plaintiff's transfer to Timothy Bour's team and her transfer to CTIU. (Dkt. No. 372, at 3–4; *see also* Dkt. Nos. 377, 378). Plaintiff responded that she believed there were additional claims remaining and the Court instructed Plaintiff to file a letter brief outlining those claims. (Dkt. No. 372, at 7).

In her letter, Plaintiff asserts that in addition to the four claims Defendants identified, there are (1) "claims" remaining "related to the illegal [and retaliatory] search and seizure" following her termination and the "forged firearms transfer records manufactured in response to

2

the illegal search and seizure," and (2) disability discrimination claims under the Rehabilitation Act concerning the "ongoing disability discrimination" she experienced during her employment and continuing until her termination. (Dkt. No. 376, at 1–2). Defendants have responded. (Dkt. Nos. 377, 378). For the reasons that follow, the Court finds that the four claims Defendants identified are the only claims that remain for trial.[1]

## II.   DISCUSSION

### A.   Search and Seizure Claim and Forged Firearms Transfer Records Claim

The 293-paragraph Second Amended Complaint contains one paragraph discussing a search of Plaintiff's house—it alleges:

> Following Plaintiff's termination, the State Police unlawfully caused a search to be done of Plaintiff's house for supposed pistols she no longer had a permit for as a result of her termination. The State Police, without a warrant, surrounded Plaintiff's home, in the presence of her neighbors, and conducted a search of her house. However, Plaintiff was in possession of no such pistols, which the State Police had reason to know even before the search.

(Dkt. No. 37, ¶ 118). There are no allegations of forged firearms transfer records.

The Court concludes that an unconstitutional search and seizure claim has never been pressed in this case and declines to read such a claim into the Second Amended Complaint at this late date. Plaintiff did not identify any Defendant who participated in any manner in the post-termination search of her house in the Second Amended Complaint, allege any facts concerning an illegal seizure of any item or forged firearm transfer records, or include, among the twenty causes of action, a claim of illegal search and seizure in violation of the Fourth Amendment. At neither the dismissal stage nor the summary judgment stage did Defendants, or the Court, read

---

[1] This Order is limited to ruling on what claims remain for trial. The Court does not here consider any evidentiary issues.

the Second Amended Complaint as asserting a retaliation claim or an illegal search and seizure

claim based on these facts. (*See generally* Dkt. Nos. 41-2, 57-2, 63). Indeed, in their

memorandum of law in support of their motion for summary judgment, Defendants mentioned

these allegations only in passing and in an apparent abundance of caution. (Dkt. No. 256-5, at 27

("To the extent that Oliver argues that her post-termination search of her home to recover

firearms was retaliatory, such a claim is wholly unrelated to her employment with NYSP. To the

extent she is alleging that it otherwise violated her constitutional rights, such claims are not

properly brought under the equal protection clause, and are, in any event, without merit

inasmuch as she consented to the search.")).

However, because the retaliation claims, (unlike the search and seizure claim), have been

a part of this case in the beginning, and because the Court has had great difficulty parsing the

dense record in this case and Plaintiff is now pro se, the Court has considered whether Plaintiff

has raised a material issue of fact with respect to a post-employment retaliation claim in

connection with the search of her house.[2] While "Title VII does—in certain instances—protect

against post-employment retaliation," *Mira v. Kingston*, 218 F. Supp. 3d 229, 235 (S.D.N.Y.

2016), there is no such post-employment retaliation alleged here. *See id.* at 235–36 (finding

alleged harassment outside the scope of post-employment retaliation because it was not related

"to her new job or to any inability to procure employment"). Moreover, for all the reasons

discussed in connection with the dismissal of Plaintiff's retaliatory termination claim, (Dkt. No.

323, at 94–96), and because there is no evidence that any named Defendant had any part in the

---

[2] In her 149-page affidavit in opposition to Defendants' motion for summary judgment, Plaintiff provided additional details regarding the post-termination search and the alleged seizure of personal items and attached an exhibit with the allegedly forged 2012 and 2013 firearm transfer records. (Dkt. No. 289, at 141–46; *see also* Dkt. No. 290-27 (firearms transfer records)).

search of Plaintiff's house,[3] the Court concludes that there is no post-employment retaliation claim viable for trial.

Plaintiff also contends her claims concerning "the forged firearms transfer records manufactured in response to the illegal search and seizure" should be heard at trial. (Dkt. No. 376, at 1). The Second Amended Complaint contains no allegations regarding forged firearms transfer records and thus states no plausible claim for relief concerning these records.

### B.      Rehabilitation Act Claim

Plaintiff argues that "the only [Rehabilitation Act] claim dismissed by the Court following summary judgment, was a single claim related to the removal of [her] undercover duties" but that she has always claimed that the disability discrimination was "ongoing" and included her "illegal and wrongful termination." (Dkt. No. 376, at 2). The NYSP contends that all Rehabilitation Act claims were dismissed. (Dkt. Nos. 377). Having reviewed the record, the Court agrees.

In its initial motion to dismiss the Rehabilitation Act claim, the NYSP read the Second Amended Complaint as asserting one adverse action based on disability discrimination: removal of undercover duties. (Dkt. No. 41-2, at 10–12). In response Plaintiff argued that she pled that she suffered "multiple adverse actions," including, in addition to removal of undercover duties, denial of promotion, having "disciplinary allegations made against her," and forced transfer. (Dkt. No. 42, at 10 (response to NYSP's motion to dismiss); *see also* Dkt. No. 58, at 24–25 (response to individual Defendants' motion to dismiss)). However, the Second Amended

---

[3] In her affidavit, Plaintiff states that Michael Cerretto directed Plaintiff "to be subject to an illegal search and seizure" and directed an individual to "take Plaintiff's personal property while he is inside Plaintiff's home." (Dkt. No. 298, at 141). Although Cerretto was named as a defendant in the Second Amended Complaint, (Dkt. No. 37, at 1), the Second Amended Complaint does not contain any allegations regarding Cerretto's involving in a search of her home and this allegation in opposition to the motion for summary judgment is wholly conclusory.

Complaint's only other allegation of adverse action in connection with disability discrimination was the following: "Senior Investigator Bour . . . told Major Olson and other supervisors that Plaintiff was going to commit suicide in order to have her removed from CNET."[4] (Dkt. No. 37, ¶ 76). Not only was this allegation vague, but the allegations concerning Plaintiff's transfer out of CNET did not identify either Senior Investigator Bour or Major Olson as playing a part in the transfer or allow an inference that concerns of PTSD or suicide had any bearing on the transfer. (*Id.* ¶ 83 ("On May 15, 2014, Plaintiff was notified that she had been accused of stealing files by Lieutenant McKee, and that unless she agreed to immediately transfer out of CNET West, a Personnel Complaint would be filed against her.")). Indeed, the only adverse action the Court discussed in denying the motion to dismiss Plaintiff's Rehabilitation Act claim was the removal of undercover duties; this was an implicit recognition that this was the sole adverse action for which Plaintiff sought relief under the Rehabilitation Act. (Dkt. No. 63, at 11–14). Because Plaintiff's claim that Defendants removed her undercover duties because of her perceived disability was dismissed at the summary judgment stage, (Dkt. No. 322, at 96–97), there are no disability discrimination claims remaining for trial.

## III. CONCLUSION

Accordingly, it is

**ORDERED** that the following claims remain for trial:

(1) Section 1983 hostile work environment claim against Paul Kelly;

(2) Title VII retaliation claim against NYSP regarding the removal of Plaintiff's undercover duties and her transfer to CTIU;

---

[4] The Court does not read the Second Amended Complaint, or the litigation between the parties as suggesting any other adverse action—including failure to promote or termination—based on disability discrimination.

(3)     NYSHRL retaliation claim against Wayne Olson regarding Plaintiff's transfer to Timothy Bour's team and the removal of her undercover duties; and

(4)     NYSHRL retaliation claims against Martin McKee regarding Plaintiff's transfer to Timothy Bour's team and her transfer to CTIU.

It is further **ORDERED** that the parties are directed to exchange witness lists and exhibit lists, identifying witnesses and exhibits **relevant to these four claims**, by January 5, 2022, in order to complete the joint pretrial stipulation which is due by January 24, 2022. (Trial Order, Dkt. No. 369).

**IT IS SO ORDERED.**

**Dated:** November 23, 2021

Brenda K. Sannes
U.S. District Judge