UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JEAN OLIVER,

                                Plaintiff,                1:15-cv-00444 (BKS/DJS)

v.

NEW YORK STATE POLICE; WAYNE OLSON, in his individual and official capacity; MARTIN MCKEE, in his individual and official capacity; PAUL KELLY, in his individual and official capacity,

                                Defendants.

---

**Appearances:**

*Plaintiff pro se:*
Jean Oliver
Elma, NY 14059

*For Defendants New York State Police, Olson, and Kelly:*
Daniel J. Moore
Joshua D. Steele
Daniel J. Palermo
Harris Beach PLLC
99 Garnsey Road
Pittsford, NY 14534

*For Defendant McKee:*
Lisa F. Joslin
Gleason, Dunn, Walsh & O'Shea
40 Beaver Street
Albany, NY 12207

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.  INTRODUCTION**

Plaintiff Jean Oliver brings this employment discrimination action against Defendant New York State Police ("NYSP") and three NYSP employees. (Dkt. No. 37). A jury trial is scheduled to begin on April 18, 2021. (Dkt. No. 369 (Trial Order)). The following claims remain for trial: (1) a hostile work environment claim against Paul Kelly under 42 U.S.C. § 1983; (2) a Title VII retaliation claim against NYSP regarding the removal of Plaintiff's undercover duties and her transfer to CTIU; (3) a NYSHRL retaliation claim against Wayne Olson regarding Plaintiff's transfer to Timothy Bour's team and the removal of her undercover duties; and (4) NYSHRL retaliation claims against Martin McKee regarding Plaintiff's transfer to Timothy Bour's team and her transfer to CTIU. (Dkt. No. 380). Presently before the Court are Defendants' motion in limine to exclude: (1) the findings of the United States Equal Employment Opportunity Commission ("EEOC"); (2) the testimony of Plaintiff's expert and evidence relating to the recovery of Plaintiff's firearms after her July 2015 termination; (3) and evidence that is unrelated to Plaintiff's remaining claims. (Dkt. No. 387). Plaintiff opposes Defendants' motion. (Dkt. No. 400). The Court heard oral argument on the Defendants' motion over the course of telephone and video conferences on February 25, 2022, March 15, 2022, and March 22, 2022. For the reasons that follow, Defendants' motion is granted in part and denied in part.

**II.  DISCUSSION**

    **A.  EEOC Determination and EEOC Director John Thompson**

Plaintiff seeks: (1) to introduce the EEOC Final Determination (Pl.'s Ex. 46); and (2) requests the issuance of a subpoena to secure the presence of John Thompson, the Director of the

Buffalo EEOC Office as a witness at trial. Defendants argue for exclusion of the EEOC determination on the ground that any minimal probative value is substantially outweighed by the danger of confusing the issues and unfair prejudice. (Dkt. No. 387-2, at 5–9). Defendants further argue that Director Thompson has no "personal knowledge relating to the facts and circumstances of Plaintiff's claims" and as Plaintiff seeks to call Director Thompson to "provide his opinion on the ultimate issue to be decided at trial," admission of his testimony would be "unduly prejudicial." (Dkt. No. 426, at 4).

As relevant here, Plaintiff's Charge of Discrimination alleged sexual harassment by Defendant Paul Kelly and that the NYSP retaliated against her for complaining of sexual harassment by transferring her to Investigator Timothy Bour's team, removing her undercover duties and transferring her to the CTIU. (Pl.'s Ex. 46). On January 29, 2015, Director Thompson issued a Determination finding that the NYSP "did initially retaliate" against Plaintiff by transferring her "to a different unit" and that there "is reasonable cause to believe that Respondent has discriminated against [Plaintiff] on account of her gender and in retaliation for engaging in a protective activity by filing her initial internal complaint of gender discrimination." (*Id.*). The Determination states, in relevant part:

> The [EEOC]'s investigation reveals that Respondent did initially retaliate against Charging Party. After Charging Party filed her internal complaint she was immediately retaliated against by being transferred to a different unit. Respondent admitted that it transferred Charging Party as a direct result of her filing a covered complaint. This is clearly retaliatory as it is a direct result of Charging Party exercising her rights under Title VII.
> . . .
>
> Based on the above, Respondent's asserted defense does not withstand scrutiny and the Commission has determined that there is reasonable cause to believe that Respondent has discriminated against Charging Party on account of her gender and in retaliation for engaging in a protected activity of filing her initial internal

> complaint of gender discrimination. Additional allegations were not supported by the evidence available, occurred with different supervisors and decision makers, and appear to be legitimate concerns with the Charging Party's performance.

(*Id.*).

"While it is well settled that administrative agency determinations may be admitted as substantive proof on the merits of plaintiff's discrimination or retaliation claims, whether to admit an agency's findings is left to the district court's discretion." *Puglisi v. Town of Hempstead Sanitary Dist. No. 2*, No. 11-cv-445, 2014 WL 12843521, at *5, 2014 U.S. Dist. LEXIS 206028, at *14 (E.D.N.Y. Jan. 27, 2014) (citing *Paolitto v. John Brown E & C, Inc.*, 151 F.3d 60, 65 (2d Cir. 1998)). In *Paolitto*, the Second Circuit rejected the argument that "findings of the EEOC or equivalent state agencies must, as a matter of law, be admitted" at trial, 151 F.3d at 64, and instead left "the question of whether to admit EEOC or state-agency findings to the sound discretion of the district court," *id.* at 65. It explained that "employment-agency determinations 'are not homogeneous products; they vary greatly in quality and factual detail,'" *id.* (quoting *Johnson v. Yellow Freight Sys., Inc.*, 734 F.2d 1304, 1309 (8th Cir. 1984)), and that "the district court is in the best position to consider the quality of the report, its potential impact on the jury, and the likelihood that the trial will deteriorate into a protracted and unproductive struggle over how the evidence admitted at trial compared to the evidence considered by the agency." *Id.* Applying these principles, the Second Circuit affirmed the district court's decision to exclude the state agency determination, noting, inter alia, that the party seeking to admit the report "had a full opportunity to present to the jury all the evidence it had submitted to the state agency." *Id.*

The Court finds little probative value in the Determination. As relevant here, it recounts, without factual detail, Plaintiff's claims of sexual harassment and retaliation for complaining

4

about gender discrimination and sexual harassment as well as the NYSP's denial and contention that any adverse employment action was taken for a legitimate business purpose. (Pl.'s Ex. 46). The Determination finds the NYSP's transfer of Plaintiff to a different unit was "clearly retaliatory" and that there was "reasonable cause to believe" that the NYSP discriminated against Plaintiff based on gender and retaliated against her for engaging in protected conduct. (*Id.*). Plaintiff may present to the jury the evidence she submitted to the EEOC and may testify about the sexual harassment and retaliation she allegedly experienced during the relevant time period—providing the factual details the Determination lacks. Thus, the Determination offers no information that could not be covered by Plaintiff's testimony and documentary evidence. *See Paolitto*, 151 F.3d at 65 (finding a party's "full opportunity to present to the jury all the evidence it had submitted to the agency" was a "legitimate[] reason[] to exclude" an agency determination (citing *Hall v. Western Prod. Co.*, 988 F.2d 1050, 1058 (10th Cir. 1993)). Indeed, the only non-cumulative aspect of the Determination is its finding that there was "reasonable cause to believe" that the NYSP engaged in gender discrimination and retaliation. This finding, however, poses a danger of unfair prejudice to Defendants because it suggests "to the jury that it should reach the same conclusion as the agency." *Dollman v. Mast Indus., Inc.*, No. 08-cv-10184, 2011 WL 3911035, at *1, 2011 U.S. Dist. LEXIS 99802, at *3 (S.D.N.Y. Sept. 6, 2011) (quoting *Paolitto*, 151 F.3d at 65); *see Hall*, 988 F.2d at 1058 (concluding district court did not abuse discretion in excluding state agency report where "all the evidentiary matter before the [state agency] could be presented to the jury" and, thus, sole purpose of admitting report "would be to suggest to the jury that it should reach the same conclusion" as agency). Moreover, as the Second Circuit has observed, when such findings are admitted, Defendants, as "the party against whom such a determination is admitted must attempt to expose the weaknesses of the report, an effort that may

5

well confuse or mislead the jury and result in an undue waste of time." *Paolitto*, 151 F.3d at 65 (internal citation omitted) (citing Fed. R. Evid. 403). Accordingly, on balance, the Court finds any probative value in the EEOC Determination is substantially outweighed by the danger of unfair prejudice and confusing the issues. Fed. R. Evid. 403; *see Dodson v. CBS Broad. Inc.*, 423 F. Supp. 2d 331 334–35 (S.D.N.Y. 2006) (excluding EEOC determination "[g]iven the low probative value [of the document] compared to the risk that the jury will be unduly influenced," and the "'likelihood that the trial will deteriorate into a protracted and unproductive struggle over how the evidence admitted at trial compared to the evidence considered by the agency'" (quoting *Paolitto*, 151 F.3d at 65)).

For many of the same reasons, the Court finds the proposed testimony of EEOC Director John Thompson inadmissible and therefore declines Plaintiff's request for the issuance of a subpoena. In her proffer, Plaintiff asserts that Director Thompson "has direct knowledge regarding what constitutes a protected class of citizens," "a protected activity under Title VII," and "an act of retaliation under Title VII." (Dkt. No. 420, at 4). These are issues of law reserved for the Court and the Court will instruct the jury on the law at trial. It is the "[c]ourt's exclusive duty and province 'to say what the law is.'" *In re Initial Pub. Offering Secs. Litig.*, 174 F. Supp. 2d 61, 69 (S.D.N.Y. 2001) (quoting *Marbury v. Madison*, 5 U.S. 137, 177 (1803)). To the extent Plaintiff seeks to adduce testimony from Director Thompson concerning his conclusions that Plaintiff was part of a protected class, that Plaintiff's activities were protected activities,[1] and that the NYSP retaliated against Plaintiff, such testimony includes legal conclusions based on many of the same facts that will be presented to the jury and therefore "impermissibly invades the jury's province to apply the applicable law to the facts of the case and reach ultimate legal

---

[1] It does not appear that either of these facts are disputed.

6

conclusions." *Rieger v. Orlor, Inc.*, 427 F. Supp. 2d 99, 103 (D. Conn. 2006). Director Thompson's testimony that he concluded the NYSP retaliated against Plaintiff "would 'not aid the jury in making a decision," about whether she was retaliated against but would be offered for the purpose of suggesting that the jury should reach the same conclusion. *See, e.g.*, *id.* (precluding expert's opinion "that defendants could have accommodated plaintiff's disability without significant impact, but instead retaliated against plaintiff by moving her to a less desirable position" because it included "two legal conclusions . . . and therefore impermissibly invades the jury's province to apply the applicable law to the facts of the case and reach ultimate legal conclusions"). Any probative value in Director Thompson's testimony regarding his conclusion is substantially outweighed by the danger of unfair prejudice and confusing the issues. Fed. R. Evid. 403.

      Plaintiff further proffers that Director Thompson will testify (1) about his "direct knowledge of Plaintiff's EEO charge," (2) the "timeliness of Plaintiff's EEO charge," (3) the documents NYSP attorneys presented to the EEOC in opposition to Plaintiff's charge, (4) that NYSP had "full knowledge of Plaintiff's EEO charge and retaliation reports," and (5) that the EEOC received copies of "multiple informal EEO complaints investigated within the NYSP during the same time Francis Christensen and Daniel Penny falsely testified that these informal processes did not exist." (Dkt. No. 420, at 4). However, because Plaintiff may testify about her filing of the EEOC charge, the timeliness of the filing of the charge is no longer at issue, Plaintiff has provided no information regarding the relevance of the documents NYSP attorneys submitted to the EEOC, and Defendants do not dispute knowledge of Plaintiff's protected activity, Director Thompson's proposed testimony on these issues would be duplicative or irrelevant. As to the informal EEO complaints, because Plaintiff offers no specifics regarding

Director Thompson's personal knowledge on this issue, and has not identified the informal EEO complaints Director Thompson received, the Court has no basis on which to determine whether such testimony is relevant. Further, none of the remaining issues on which Plaintiff seeks to elicit testimony from Director Thompson, appear to implicate relevant, admissible evidence. Accordingly, Plaintiff's request for a subpoena is denied.

### B.     Expert Testimony – Robert Baier

Defendants move to preclude Plaintiff's proposed handwriting expert, Robert Baier, from testifying on the ground that the "evidence examined by the expert is entirely unrelated to any of the remaining claims." (Dkt. No. 387-2, at 9). According to Baier's expert disclosure, he reviewed three documents concerning the "Acquisition or Disposition of a Firearm by a Division Member" dated 2012 and 2013 and a NYSP receipt, "to determine . . . whether there were any additions, deletions, cut-and-pastes, alterations and/or abnormalities." (Dkt. No. 353, at 3). As the Court stated previously, "[t]he Second Amended Complaint contains no allegations regarding forged firearms transfer records and thus states no plausible claim for relief concerning these records." (Dkt. No. 380, at 5). As Baier's testimony solely concerns alleged forged firearms transfers, the Court finds it irrelevant and inadmissible.[2] For the same reason, any other documentary evidence relating to firearms transfers is inadmissible. Accordingly, Defendants' motion to preclude Baier's testimony is granted.

---

[2] As discussed during the pretrial conferences, although "extrinsic evidence," i.e., the firearms transfer records, are "not admissible, the Court may, on cross-examination, allow Plaintiff to inquire into the alleged fraudulent firearms transfer records, if "they are probative of the character for truthfulness or untruthfulness of . . . the witness." Fed. R. Evid. 608(b).

8

C.     **Non-Party Personnel Complaint Files**

Defendants argue that, except for the files relating to Defendant Paul Kelly and Plaintiff's retaliation allegations, the personnel complaints identified on Plaintiff's Exhibit List should be excluded as irrelevant to the remaining issues. (Dkt. No. 387-2, at 11). Plaintiff's Exhibits 66 to 75 are personnel complaints regarding multiple NYSP employees who, as Plaintiff explained during the pretrial conferences, allegedly received minimal punishment in comparison to the punishment Plaintiff received, i.e., termination. Plaintiff further argues "that she has direct knowledge of the intentional mishandling and misrepresentation of the Personnel Complaints identified in her Exhibit list, which Plaintiff requires to establish Plaintiff's hostile work environment claim and the retaliation claims against the NYSP." (Dkt. No. 400, at 12). The documents contained in these exhibits vary widely, and include letters of censure, including at least one letter of censure from 2002, memoranda, charges, and determinations concerning NYSP employees from other units in different parts of New York State, and a disciplinary document from 1990. While there appear to be documents from on or about the relevant time period that refer to Plaintiff, (*see, e.g.*, "Personnel Complaint Tracking" dated June 2, 2014, concerning Plaintiff's allegations against Investigator Toney Palmer), these documents bear no obvious relation to the remaining issues for trial. As Plaintiff's termination is no longer a part of this case and the proposed exhibits do not appear to contain any information relevant to the remaining claims or Defendants, Defendants' motion to preclude these personnel complaints is granted.

### D. Evidence Relating to Plaintiff's Termination

Defendants argue that because the claims "surrounding Plaintiff's termination . . . are no longer at issue in this case," Plaintiff "should not be permitted to continue relitigating her termination claims" and "any evidence relating to Plaintiff's termination proceeding . . . should be excluded." (Dkt. No. 387-2, at 12). Specifically, Defendants seek to preclude Plaintiff's Exhibits 77 and 78, the NYSP "Hearing Board's Findings and Recommendations against Jean Oliver" and the "Notice of Termination signed by Joseph D'Amico." (Dkt. No. 397, at 4). In addition to containing the Hearing Board's Findings and Recommendations, Plaintiff's Exhibit 77 contains emails regarding the writing and revision of the Findings and Recommendation. During the pretrial conferences, the Court advised the parties of the general parameters of the remaining issues for trial and directed Plaintiff to file an amended exhibit list, revised to conform to the remaining claims, which do not include any claims relating to Plaintiff's termination. In addition, Plaintiff is precluded from relitigating facts confirmed by the Appellate Division, Fourth Department in the Article 78 proceeding. *See Oliver v. New York State Police*, No. 15-444, 2020 WL 1989180, at *27, 2020 U.S. Dist. LEXIS 73284 (N.D.N.Y. April 27, 2020). Accordingly, the Court denies Defendants' motion without prejudice to renewal after Plaintiff has filed an amended exhibit list.

### E. Plaintiff's Witness List

Defendants request that the "Court prohibit Plaintiff from calling any witnesses not included in the Defendants' witness list unless she can demonstrate that the witness will provide relevant testimony." (Dkt. No. 387-2, at 13). The matter of Plaintiff's witness list has been briefed and discussed extensively at the pretrial telephone and video conferences, (Dkt. Nos. 398, 403, 405, 408, 409, 410, 411, 412, 415, 420, 421, 422, 424, 425, 426, 427), and subpoenas

have been issued as to those witnesses for whom Plaintiff has appeared to proffer relevant testimony, (Dkt. Nos. 415, 423, 428). The Court need make no further determination at this time.

### III. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion in limine (Dkt. No. 387) is **GRANTED in part** and **DENIED in part**.

**IT IS SO ORDERED.**

Dated: March 29, 2022
       Syracuse, New York

Brenda K. Sannes
U.S. District Judge