UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JEAN OLIVER,

                               Plaintiff,                  1:15-cv-00444 (BKS/DJS)

v.

NEW YORK STATE POLICE; WAYNE OLSON, in his
individual and official capacity; MARTIN MCKEE, in his
individual and official capacity; PAUL KELLY, in his
individual and official capacity,

                               Defendants.
_____

**Appearances:**

*Plaintiff pro se:*
Jean Oliver
Elma, NY 14059

*For Defendants New York State Police,*
*Wayne Olson, and Paul Kelly:*
Daniel J. Moore
Joshua D. Steele
Daniel J. Palermo
Harris Beach PLLC
99 Garnsey Road
Pittsford, NY 14534

*For Defendant Martin McKee:*
Lisa F. Joslin
Gleason, Dunn, Walsh & O'Shea
40 Beaver Street
Albany, NY 12207

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

I. INTRODUCTION

Plaintiff Jean Oliver brings this employment discrimination action against Defendant New York State Police ("NYSP") and three NYSP employees. (Dkt. No. 37). A jury trial is scheduled to begin on April 18, 2022. (Dkt. No. 369 (Trial Order)). The following claims remain for trial: (1) a hostile work environment claim against Paul Kelly under 42 U.S.C. § 1983; (2) a Title VII retaliation claim against the NYSP regarding the removal of Plaintiff's undercover duties and her transfer to CTIU; (3) a NYSHRL retaliation claim against Wayne Olson regarding Plaintiff's transfer to Timothy Bour's team and the removal of her undercover duties; and (4) NYSHRL retaliation claims against Martin McKee regarding Plaintiff's transfer to Timothy Bour's team and her transfer to CTIU. (Dkt. No. 380).

Two weeks before trial, on April 4, 2022, Defendants filed a motion for sanctions. (Dkt. No. 437). Defendants argue that Plaintiff "has repeatedly failed to comply with the Pretrial Order, even after being given numerous opportunities to correct her noncompliance," that she provided "over 10,000 pages of unorganized documents that Plaintiff claimed to be her trial exhibits," "with the trial set to start in two weeks, Plaintiff has yet to provide exhibits that comply with the Court's instructions and orders," that throughout this litigation she has "defied Court directives that she does not agree with," that she "has been warned on multiple occasions for failing to comply with Court orders and engaging in sanctionable conduct," and that "she has tremendously burdened the parties and the Court with her conduct." (Dkt. Nos. 437-1, at 3; Dkt. No. 437-2, at 4–5, 7–8). Citing Plaintiff's "confrontational and defiant conduct in this case," and their concern about whether Plaintiff "will be able to present her claims in an orderly manner at trial," Defendants seek: (1) dismissal of this action under Federal Rule of Civil Procedure 41 for

2

failing to comply with the Court's orders; or, in the alternative, (2) an order under Rule 37 precluding Plaintiff from introducing any exhibits other than "those that have been marked by Defendants." (Dkt. No. 437). Plaintiff opposes Defendants' motion. (Dkt. Nos. 439, 445). The Court heard oral argument on Defendants' motion at a pretrial videoconference on April 6, 2022, and granted Plaintiff's request for an extension of time to submit a supplemental response opposing the motion. Plaintiff filed her supplemental response on April 10, 2022. (Dkt. No. 445). For the reasons that follow, Defendants' motion is denied without prejudice.

**II.    BACKGROUND**

Before addressing the recent conduct that led to the instant motion, it is helpful to review the history of Plaintiff's litigation of this action over the last seven years. This action is, according to Defendants, one of two Plaintiff filed in United States District Court, and is in addition to the at least eleven actions Plaintiff filed in the New York Court of Claims, Small Claims Court, and Supreme Court and nine complaints Plaintiff filed with various administrative agencies—all of which appear to stem from her employment with the NYSP. (Dkt. No. 437-1, at 11–12).

**A.    Conduct Before the Magistrate Judge**

Following the withdrawal of Plaintiff's counsel from this action,[1] solicitous of Plaintiff's pro se status, the Court has permitted Plaintiff to litigate each issue and concern exhaustively before United States Magistrate Judge Daniel J. Stewart and the undersigned, and has often

---

[1] Plaintiff was represented by counsel when she filed this action on April 14, 2015. (Dkt. No. 1). Her counsel moved to withdraw on June 12, 2018. (Dkt. No. 105). Magistrate Judge Stewart granted that motion on July 3, 2018, after holding a hearing with Plaintiff and her counsel. (Dkt. No. 109). Plaintiff then appeared pro se until she obtained counsel on January 28, 2021. (Dkt. No. 360). Plaintiff's second counsel moved to withdraw on April 6, 2021. (Dkt. No. 362). Magistrate Judge Stewart granted that motion on June 1, 2021, after holding a hearing with Plaintiff and her counsel. (Dkt. No. 368). Plaintiff has appeared pro se since June 1, 2021. The Court has appointed, as stand by counsel for Plaintiff, a partner from the labor and employment practice of a prominent Syracuse law firm, to assist Plaintiff with the orderly presentation of her case at trial. (Dkt. No. 440).

3

provided Plaintiff explicit instructions and extensive leeway in litigating this case. (*See, e.g.*, Dkt. No. 218, at 4 (Magistrate Judge Stewart explaining that although Plaintiff had continued to raise discovery issues more than a month after discovery closed, he had not only considered those issues, directed a response from Defendants, and conducted an in-person discovery conference, but that when, at the conference, "it . . . became clear . . . that items that the Plaintiff then wanted to discuss were not the same as those detailed in her letters" he allowed Plaintiff "one final opportunity to present an exhaustive list of all issues" (citing Dkt. No. 204)). During the discovery process, Plaintiff filed at least twenty letter requests/briefs, a motion to compel, and a motion for sanctions, (Dkt. Nos. 113, 118, 119, 123, 127, 128, 129, 149, 153, 156, 164, 165, 172, 173, 178, 187, 208, 209, 216, 241, 356, 358), and United States Magistrate Judge Daniel J. Stewart conducted at least nine discovery conferences, allowed the parties to conduct two days of depositions at the courthouse, issued at least twenty-five Text Orders, some of which were extensive and contained explicit instructions, (Dkt. Nos. 116, 124, 130–35, 137, 141, 144, 148, 157, 160, 166, 174, 176, 177, 181, 199, 204, 215, 219, 228, 243, 348; *see, e.g.*, Dkt. No. 219 (text order granting evidentiary hearing on Plaintiff's claim that documents provided in discovery were altered or falsified and instructing Plaintiff regarding what to file, the scope of the hearing, and the relevant issues)), issued at least eight orders addressing discovery issues, (Dkt. Nos. 121, 139, 162, 175, 188, 218, 244, 359), and conducted a six-hour evidentiary hearing in connection with Plaintiff's motion for Rule 37 sanctions and her contention that certain documents provided during discovery were altered or falsified, (*see* Text Minute Entry Apr. 23, 2019).[2]

---

[2] Three days after the evidentiary hearing, at which Plaintiff was permitted to question witnesses and present evidence, Plaintiff filed an unsolicited eight-page, single-spaced letter as well as a CD with *new* documentary evidence in further support of her claims of forgery and falsification. (Dkt. No. 241). Magistrate Judge Stewart issued a Text Order finding the letter was "not authorized," declined to consider new arguments raised in the letter or any of the new documents

4

Notably, Magistrate Judge Stewart entered a Decision and Order denying Plaintiff's motion for sanctions, finding that Plaintiff failed to satisfy her burden of showing that the discovery documents at issue were "forged, altered, or 'sanitized' by the Defendants or their counsel," (Dkt. No. 244, at 9), and in considering whether to impose sanctions against Plaintiff for bringing the motion, observed that Plaintiff "has a history with this Court of making unsupported allegations against the Defendants and their counsel," but that she had been "[u]ndeterred by the prior baseless allegations" in making "the present unsupported claim of forgery," (*id.* at 15–16). However, Magistrate Judge Stewart declined to impose sanctions on Plaintiff noting her pro se status and that she had expressed financial difficulties. (*Id.* at 16). Plaintiff appealed and this Court affirmed Magistrate Judge Stewart's Decision and Order, including the denial of Defendants' request for costs. (Dkt. No. 311). In its Memorandum Decision and Order, the Court explicitly affirmed Magistrate Judge Stewart's sanctions warning:

> While the Court does not impose sanctions, the Court affirms Magistrate Judge Stewart's sanctions warning. Plaintiff has now been warned twice by this Court that she has engaged in conduct that is sanctionable, and that sanctions will be imposed if she continues to engage in this conduct. Plaintiff may not continue to file documents or briefs after briefing on a motion has closed, and she must follow the Court's instructions and the Court's Local Rules. The Court will not overlook any future sanctionable conduct.

(*Id.* at 7).

In addition, Defendants have cited Plaintiff's conduct during depositions as a source of concern about Plaintiff's potential behavior at trial. Defendants are not alone in their concern about Plaintiff's conduct when examining witnesses. Magistrate Judge Stewart was "frankly dismayed about the types of questions that were asked of that witness by Plaintiff, with the vast

---

on the CD, and found the remaining arguments were "ones that were already made during the discovery hearing." (*Id.*).

majority being highly objectionable" and noted that defense counsel "would have been justified in calling the Court for intervention at almost every stage of that deposition." (Dkt. No. 244, at 15). In their motion Defendants provided the following excerpt from Plaintiff's deposition of New York State Police Deputy Superintendent in Charge of Employee Relations, Colonel Francis Christensen:

> Q. You know you're lying. You're sitting there under oath lying. You have no integrity, you have no morals and you have no right to carry that retirement shield that you walk around in.
>
> MR. STEELE: Objection to form.
>
> Q. You're a disgrace.
>
> MR. STEELE: Ms. Oliver, control yourself.
>
> Q. You're sitting here lying under oath and you know you are. It's a good old boys club and you're the reason why these things have happened.
>
> MR. SILVA: Move to strike.
>
> Q. You're sitting here lying. Tell me the truth, did you have a conversation with Jack Moretti, where you pulled his nephew's file? You certainly did, because he told me all about it. You're that Jack Moretti's a liar now?
>
> MR. STEELE: Objection to form.
>
> MR. SILVA.: Objection to the form.
>
> Q. He's not lying, is he? You told him all about that file. You had no problem pulling it, because that's your buddy, Jack. You're gonna hook him up. He'll take care of you, won't he? It's a good old boys club, we do all kinds of favors all day long.
>
> MR. SILVA: Objection to form.
>
> Q. You were put in charge of the human resources program because your role was to discredit people that actually held that agency to the honor and the integrity that it's supposed to maintain. You wanted nothing to do with that. You had the biggest scam going and

6

>you know it. You used division counsel, you could hide behind them and nothing would ever be released.
>
>MR. SILVA: Move to strike.
>
>Q. And these people, these people that were falsely charged, false accusations, false charges, falsely, wrongly removed from this agency. Do you take any responsibility for what you have done?
>
>Q. I have been without my family for three-and-a-half years. Are you aware of that?
>
>MR. STEELE: Objection to form.
>
>MR. SILVA: Objection to form.
>
>A. No, I'm not.
>
>Q. No, you're not. And you can care less. Because your big, fat ass pension is coming in just fine, isn't it?
>
>MR. STEELE: Objection to form.
>
>MR. SILVA: Objection to the form.
>
>Q. You think you're a trooper? You think you're a member of the State Police. No, you're not. You're a disgrace.

(Dkt. No. 437-1, at 7–9).

### B. Conduct Before the District Judge

Like discovery, Plaintiff's dispositive motion practice reflects numerous (and voluminous) filings, the repetition of rejected arguments and claims, and the filing of unauthorized submissions often rearguing decided issues, which consumed significant resources of the Court and defense counsel. (*See, e.g.*, Dkt. Nos. 327, 331, 338, 381). For this reason, and mindful of Plaintiff's pro se status as well as the scope of discovery in this case, on June 22, 2021, over nine months before the April 18, 2022 trial date, the Court issued a Trial Order providing specific instructions as to witness and exhibit lists, requiring the filing of a joint

7

pretrial stipulation, and setting deadlines in January and early February for motions in limine and exhibits, and scheduling two pretrial conferences. (Dkt. No. 369).

On August 12, 2021, the Court held a telephone conference, alerting the parties in a text order the day before that they "should be prepared to identify the claims they contend remain for trial." (Dkt. No. 370). At the conference, Defendants identified the four claims they believed to remain, *see supra* Section I, and Plaintiff requested additional time to respond, which the Court granted. After considering Plaintiff's letter brief, (Dkt. No. 376), Defendants' responses, (Dkt. Nos. 377, 378), and Plaintiff's unauthorized reply, (Dkt. No. 379), the Court issued an Order concluding that the following claims remain for trial: (1) Section 1983 hostile work environment claim against Paul Kelly; (2) Title VII retaliation claim against NYSP regarding the removal of Plaintiff's undercover duties and her transfer to CTIU; (3) NYSHRL retaliation claim against Wayne Olson regarding Plaintiff's transfer to Timothy Bour's team and the removal of her undercover duties; and (4) NYSHRL retaliation claims against Martin McKee regarding Plaintiff's transfer to Timothy Bour's team and her transfer to CTIU. (Dkt. No. 380). Plaintiff requested reconsideration, (Dkt. No. 381), which the Court denied, (Dkt. No. 382).

The June 2021 Trial Order directed that the parties' witness list contain a "brief summary of the testimony to be offered by each witness"; that exhibits be provided to the Court and opposing counsel by February 7, 2022; that the exhibit list be presented in a specific format attached to the Court's Order; and that the parties file a joint pretrial stipulation by January 24, 2022 containing, inter alia, a list of exhibits that can be stipulated into evidence. (*See generally* Dkt. No. 369).[3]

---

[3] The Trial Order also instructed that the Witness List include:

> The name and, if not previously provided, the address (city only) of each witness, separately identifying those whom the party expects to present and those whom the party may call if the need arises.

8

On January 10, 2022, Plaintiff filed a single-spaced list of names of her proposed witnesses, with no description of any expected testimony, and a single-spaced list of exhibits with little or no description and no individual designations, (*see, e.g.*, Dkt. No. 383, at 2 ("Plaintiff's Exhibits A-1 – A-100," "Defendants Exhibits 001-136 w/supplemental documents produced by Defendants during Discovery")); in a cover letter with this submission Plaintiff requested "the Court's guidance on the process of obtaining the subpoenas needed to secure the attendance" of witnesses. (*Id.* at 1). Plaintiff's witness list included forty witnesses, which she supplemented with four additional witnesses; her exhibit list was likewise extensive. (Dkt. Nos. 383–84). Unlike the fifteen individuals on Defendants' witness list, which included the individual Defendants and individuals whose names had arisen during dispositive motion practice, many of approximately forty witnesses on Plaintiff's witness list were unfamiliar to the Court, having not been mentioned during dispositive motion practice.

On January 19, 2022, the Court issued a Text Order reciting the four claims that remained for trial, and explaining that "[in] order to obtain trial subpoenas for witnesses Plaintiff must submit a proffer of the testimony Plaintiff expects to elicit from each witness that would be relevant to one of the remaining claims for trial," and such proffer must include "sufficient details of each witness's proposed testimony to allow the Court to determine whether the testimony is relevant to the remaining claims." (Dkt. No. 386). The Court also instructed Plaintiff to "identify the exhibits separately, as the exhibits are identified in the Defendants' Exhibit List, so the relevance and admissibility of each exhibit can be determined." (*Id.*).

---

(Dkt. No. 369, at 6). Exhibits were to be "properly marked at the lower right corner for identification purposes," and the Court provided a specific example of how the exhibit list must be formatted. (*Id.* at 15–16).

9

Plaintiff filed a second exhibit list on January 26, 2022, (Dkt. No. 397), and while it more closely followed the prescribed format, many of the individual exhibits were comprised of hundreds of pages of separate documents, grouped by subject, and included exhibits with no relevance to the four remaining claims. (*See, e.g.*, *id.* at 4 ("P79 Emails/ records/ reports relative to the search and seizure of Jean Oliver and her Son.")). Plaintiff also filed a second witness list, which included "Anticipated Subject of Testimony," with boilerplate language that did not provide details that would allow the Court to determine whether the proposed witnesses possessed admissible, relevant testimony. (*See, e.g.*, Dkt. No. 398 (listing 43 witnesses whose anticipated testimony was "facts pertaining to: Plaintiff's hostile work environment and retaliation claims; NYSP rules and regulations; NYSP policies and procedures")).

On February 11, 2022, the Court issued a Text Order noting that "Plaintiff failed to provide sufficient details of each witness's proposed testimony to allow the Court to determine whether the witness has testimony that is relevant to the remaining claims, as the Court directed in its January 19, 2022 text order," that it would "only issue subpoenas for witnesses who have testimony that is relevant to the remaining claims for trial," and directed that "[a]ny request to issue subpoenas for witnesses must comply with this Court's January 19, 2022 text order and must be filed by February 17, 2022." (Dkt. No. 403). On January 16, 2022, Plaintiff filed a third witness list. (Dkt. No. 405). The third witness list did not add factual detail that would assist the Court in determining whether most of the proposed witness possessed relevant testimony. (*See, e.g.*, *id.* (identifying 38 witnesses whose anticipated subjects of testimony was "facts pertaining to: Plaintiff's general employment history with NYSP; Plaintiff's hostile work environment claims, including her forced transfers to Timothy Bour and CTIU; Plaintiff's removal of her undercover duties; and NYSP policies and procedures")).

The Court held three pretrial conferences regarding Plaintiff's request for subpoenas. At the February 25, 2022 telephonic pretrial conference, the Court instructed Plaintiff that additional factual details were necessary before the Court could issue judicial subpoenas and to eliminate from her witness list those individuals whose testimony solely concerned claims that had been dismissed, e.g., Plaintiff's termination claim and evidence regarding the search of Plaintiff's house after her termination. The Court also instructed Plaintiff that her exhibit list did not comply with the Court's directives as it did not separately identify documents, but listed them as groups by subject area, without individually identifying the documents. The Court further explained that the exhibits themselves were not marked properly and must be divided and marked, advising Plaintiff to utilize the current exhibit numbers but add subdivisions, e.g., Plaintiff's Exhibit 76 would become P76A, P76 B, P76C. The Court provided Plaintiff with another opportunity to submit a witness list and an exhibit list that complied with the Court's directions. The Court noted that if Plaintiff did not comply with the Court's directions the Court would not be able to go forward with trial on April 18, 2022.

On March 2, 2022, Plaintiff submitted a fourth witness list; it, in most cases, identified the witness's position, and proffered the knowledge the witness possessed about the issues in the case. (*See, e.g.*, Dkt. No. 408, at 4 ("Sharon Kelsey Plaintiff's former Battalion commander who has direct knowledge pertaining to: Plaintiff's decorated military service during times relevant to the claims in this case.")). On March 7, 2022, Plaintiff filed a six-page single-spaced letter renewing her request for judicial subpoenas and asserting her proposed witnesses possessed relevant information, renewing arguments she made during the February 25, 2022 pretrial conference, and objecting to other rulings the Court made during the pretrial conference concerning evidentiary issues. (Dkt. No. 410).

11

The Court held a video pretrial conference on March 15, 2022 to discuss Plaintiff's witness and exhibits lists, and directed Plaintiff to file an amended exhibit list and to provide the Court and counsel with her exhibits by March 29, 2022. At this conference the Court again warned Plaintiff that the Court would not be able to proceed with trial on April 18, 2022 if Plaintiff failed to comply with the Court's directions.

On March 17, 2022, the Court issued a Text Order granting Plaintiff's request for judicial subpoenas for two of her proposed witnesses, and allowing Defendants to respond to Plaintiff's assertion that the witnesses on her fourth witness list had personal knowledge relevant to the remaining issues. (Dkt. No. 422). The Court indicated it would address Plaintiff's remaining requests for subpoenas at a video pretrial conference on March 22, 2022, and directed Plaintiff to file an amended exhibit list by March 29, 2022. (*Id.*).

On March 18, 2022, Plaintiff filed a "letter in response" to the Court's March 17, 2022 Text Order, requesting permission to reply to any response Defendants filed, and detailing the facts of her transfer to the CTIU, one of the claims remaining for trial, and the personnel complaint that led to her termination, which is no longer part of this action. (Dkt. No. 425). Plaintiff objected to any response Defendants might file to her witness list on the ground that "Defendants are in no position to provide this Court with the relevancy witnesses, who only I can personally attest to." (*Id.* at 2).

Following the March 22, 2022, pretrial conference, the Court issued a number of additional judicial subpoenas and denied Plaintiff's request "as to the remaining individuals listed in her subpoena requests on the ground that Plaintiff failed to identify any relevant admissible testimony these individuals might possess that would not be cumulative." (Dkt. No. 427).

On March 29, 2022, the Court issued an Order granting Defendants' motion in limine to exclude the EEOC determination and any testimony by EEOC Director John Thompson, expert testimony by Plaintiff's proposed handwriting expert Robert Baier concerning whether certain firearm records dated 2012 and 2013 were fraudulent, and non-party personnel complaint files. (Dkt. No. 430, at 2–9). Noting that it had advised the parties of the "general parameters of the remaining issues for trial," and that Plaintiff was "precluded from relitigating facts confirmed by the Appellate Division, Fourth Department in the Article 78 proceeding," and that Plaintiff was expected to file an amended exhibit list, the Court denied, without prejudice to renewal, Defendants' motion to exclude any of Plaintiff's exhibits concerning her termination. (*Id.* at 10).

On March 30, 2022, Plaintiff filed a five-page single-spaced letter objecting to the Court's rulings in the Order it had issued the day before, rehashing arguments Plaintiff has raised at every stage of this case, including the assertion that counsel for the NYSP lied to the EEOC during the EEOC's investigation of Plaintiff's charge of discrimination, and falsified personnel complaint investigative reports, (Dkt. No. 431), much of which Magistrate Judge Stewart addressed during the six-hour evidentiary ruling and in the Decision denying Plaintiff's motion for sanctions, (*see* Dkt. No. 244). Plaintiff also assigned blame to the Court for the difficulties she was encountering securing witnesses at trial, which she attributed to the Court's "refus[al] to issue subpoenas," noting that she "repeatedly requested the Court sign [her] subpoena requests in advance to ensure [she] would have enough time" to serve and secure witnesses but that the Court did not endorse her "subpoenas until approximately one month before the commencement of the jury trial in this case." (Dkt. No. 431, at 4).

On March 30, 2022 and April 3, 2022, Plaintiff filed updated exhibit lists—her third and fourth exhibit lists. (Dkt. Nos. 432, 434). In a status report on April 4, 2022, defense counsel

13

reported that Plaintiff provided over 10,000 pages of exhibits, "her exhibits are still not individually identified," she included "documents the Court explicitly instructed Plaintiff to remove," and that her proposed exhibits "remain a mess." (Dkt. No. 436). Defendants filed their motion for sanctions that day. (Dkt. No. 437).

On April 5, 2022, the Court issued a Text Order finding "that Plaintiff has still failed to comply with the Court's repeated orders to provide an exhibit list with individually-identified exhibits. While Plaintiff appears to have provided the Court with at least some exhibits that are individually-identified (i.e. 54a, 54b), Plaintiff has not provided a matching exhibit list with individually-identified exhibits." (Dkt. No. 441). The Court therefore directed Plaintiff to file, by noon on April 7, 2022, an exhibit list with individually-identified exhibits matching her digital version of exhibits." (*Id.*). The Court warned Plaintiff that "failure to comply with the Court's orders regarding exhibits will result in exhibits not being admissible at trial." (*Id.*).

In a pretrial conference on April 6, 2022, the Court noted that Plaintiff's failure to comply with the Court's orders has been a very serious problem in this case and has imposed an immense burden on the Court and defense counsel. The Court had not yet been able to consider the admissibility of Plaintiff's exhibits because neither the Court nor the parties had an exhibit list matching Plaintiff's proposed trial exhibits. Defense counsel has noted that there are more than 10,000 pages of exhibits, many of which are not Bates-stamped, and therefore do not enable Defendants to authenticate them. The Court noted that while it had to consider whether sanctions less drastic that dismissal would be appropriate here, Plaintiff's continued failure to comply with this Court's Orders would result in the dismissal of her case. Recognizing defense counsel's argument, in their motion for sanctions, that a continuance of the trial would pose an additional

14

and unfair burden on them at this point, having already subpoenaed their witnesses for trial, the Court did not continue the April 18, 2022 trial date.

On April 7, 2022, Plaintiff filed a fifth exhibit list, which was largely identical to the third exhibit list. (Dkt. No. 442). Finally, on April 8, 2022, Plaintiff filed a sixth exhibit list; this exhibit list appears to individually identify most exhibits. (Dkt. No. 443). The Court has spent hours with Plaintiff and defense counsel, in conferences on April 13, 2022, April 14, 2022, and April 15, 2022, attempting to consider and rule on the admissibility of Plaintiffs' proposed exhibits, and this process is not yet complete; the Court has had to postpone the arrival of prospective jurors on the morning of trial to enable the Court to continue its consideration of Plaintiff's proposed exhibits.

### III.  DISCUSSION

Defendants move for dismissal of Plaintiff's remaining claims under Rule 41(b), or preclusion of Plaintiff's exhibits under Rule 37 based on Plaintiff's noncompliance with the Court's orders and Local Rules, arguing that "given the Plaintiff's confrontational and defiant conduct in this case, it is unlikely that she will be able to present her claims in an orderly manner at trial." (Dkt. No. 437-2, at 12). Plaintiff opposes Defendants' motion. (Dkt. No. 439, 445).

Under Rule 41(b) of the Federal Rules of Civil Procedure, "[i]f the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order," a court may dismiss the action. Fed. R. Civ. P. 41(b); *Link v. Wabash R. Co.*, 370 U.S. 626, 629–30 (1962); *see also Colozzi v. St. Joseph's Hosp. Ctr.*, No. 08-cv-1220, 2010 WL 3433997, at *2, 2010 U.S. Dist. LEXIS 88685, at *4–5 (N.D.N.Y. July 20, 2010) ("[A] party to an action pending in a federal district court . . . is required to comply with legitimate court directives and to participate in scheduled proceedings, including status conferences . . . The failure of a party to fulfill this obligation provides a basis for the striking of the offending party's pleadings and the entry of

15

appropriate corresponding relief."), *report-recommendation adopted*, 2010 WL 3464155, 2010 U.S. Dist. LEXIS 88736 (N.D.N.Y. Aug. 27, 2010). Moreover, the Second Circuit has stated that:

> [T]he involuntary dismissal is an important tool for preventing undue delays and avoiding docket congestion. But it is also one of the harshest sanctions at a trial court's disposal, since it usually extinguishes the plaintiff's cause of action and denies plaintiff his day in court. As a result, it is reserved for use only in the most extreme circumstances.

*U.S. ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 250–51 (2d Cir. 2004) (internal citation omitted). The Second Circuit has further stated that courts "should be especially hesitant to dismiss for procedural deficiencies where the failure is by a *pro se* litigant." *Hunter v. N.Y. State Dep't of Corr. Servs.*, 515 F. App'x 40, 42 (2d Cir. 2013) (quoting *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996)) (internal punctuation omitted).

Rule 37 provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). "[I]nstead of this sanction, the court, on motion and after giving an opportunity to be heard . . . may impose other appropriate sanctions." Fed. R. Civ. P. 37(c)(1)(C).

Ultimately, preclusion under Rule 37 "is a drastic remedy and should only be applied in those rare cases where a party's conduct represents flagrant bad faith and callous disregard of the Federal Rules of Civil Procedure." *Hinton v. Patnaude*, 162 F.R.D. 435, 439 (N.D.N.Y. 1995). "Before the extreme sanction of preclusion may be used by the district court, a judge should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." *Outley v. New York*, 837 F.2d 587, 591 (2d Cir. 1988).

When determining whether dismissal under Rule 41(b), courts must consider the following factors: (1) the duration of noncompliance; (2) "whether plaintiff was on notice that failure to comply would result in dismissal"; (3) likely prejudice to defendant from delay resulting from noncompliance; (4) "balancing of the court's interest in managing its docket with plaintiff's interest in receiving fair chance to be heard"; and (5) the adequacy of lesser sanctions. *Lucas*, 84 F.3d at 535 (2d Cir. 1996). When determining sanctions under Rule 37, court consider similar factors, including: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) (internal quotation marks omitted). None of these factors is dispositive. *Lopez v. Smurfit-Stone Container Enter., Inc.*, 289 F.R.D. 103, 104–05 (W.D.N.Y. 2013).

Plaintiff's failure to comply with the Court's orders in connection with the filing of her witness and exhibit lists is well-documented and occurred over a period of two to three months. (*Compare* Dkt. Nos. 369 (June 22, 2021 Trial Order detailing requirements of witness and exhibit lists), 386 (January 19, 2022 Text Order detailing requirements of witness and exhibit lists), 403 (February 11, 2022 Text Order reiterating requirements of witness list); *with* Dkt. Nos. 383 (January 10, 2022, first deficient witness and exhibit lists), 397 (January 26, 2022, second deficient exhibit list), 398 (January 26, 2022, second deficient witness list), 405 (February 16, 2022, third deficient witness list), 432, 434 (March 30 and April 3, 2022, third and fourth deficient exhibit lists), 442 (fifth deficient exhibit list)). Defendants report that Plaintiff has willfully refused to work with Defendants in formulating a joint pretrial stipulation, in violation of the Trial Order, asserting that she disagrees with everything in Defendants' proposed joint

17

pretrial stipulation, (Dkt. No. 388, at 16–25), including such basic and undisputed matters such as the basis for the Court's jurisdiction over this matter, the date of Plaintiff's hiring, and location of her service with the NYSP, and refusing to agree to any joint pretrial stipulation that did not include Plaintiff's 194-paragraph statement of facts, (Dkt. No. 388, at 28–52). (*See id.* at 56 (emailing defense counsel: "To be very clear to all the parties in this case. I do NOT agree with anything in your proposed joint pretrial stipulation. I will complete my proposed joint pretrial stipulation by Sunday. If you do not agree, we can send it to the Judge. I will simply use it in support of my appeal following the trial in this case.")). No joint pretrial stipulation was filed in this case. Plaintiff maintains she is making every effort to follow the Court's orders. (Dkt. No. 439). Plaintiff, however, has not provided any valid reason for failing to follow the Court's explicit directions concerning witness lists, exhibit lists, and the joint pretrial stipulation.

Further, the Court has given Plaintiff explicit notice, on at least two occasions, that she "must follow the Court's instructions and the Court's Local Rules," and that further misconduct in this case will likely result in sanctions. (Dkt. No. 244, at 16; Dkt. No. 311, at 7). Prior to April 6, 2022, however, the Court had not informed Plaintiff that failure to comply with the Court's orders may result in dismissal of the remaining claims.

The Court recognizes the significant prejudice to Defendants. (*See* Dkt. No. 450, at 5 (explaining that "Defendants have been required to spend an inordinate amount of time sifting through Ms. Oliver's exhibits . . . simply to try and match them with what is on her exhibit list only to find that Ms. Oliver has repeatedly failed to comply with this Court's pre-trial Order and its clear instructions relating to the issues remaining in this case")). Although Plaintiff argues there can be no prejudice or surprise as many of the exhibits were provided by Defendant, given the sheer number of documents and their unclear relevance, the need for a well-ordered exhibit

list and exhibits, in compliance with the Trial Order and the Court's repeated directions, was paramount. Thus, Plaintiff's argument is without merit. However, balancing all of the factors, including the Court's interest in managing its calendar and docket against Plaintiff's interest in receiving a fair trial, the Court finds Plaintiff's interest in receiving a trial on the merits on her remaining claims, which are of great importance to Plaintiff, outweighs the Court's interest in managing its docket.

Finally, the Court concludes that lesser sanctions will adequately address Plaintiff's noncompliance. Although Defendants have sought preclusion of all exhibits other than those on their exhibit list, the Court declines such a severe sanction, electing instead to allow Plaintiff a brief opportunity to proffer the relevance of the proposed exhibits that she provided to the Court and defense counsel on March 29, 2022. This arduous process has, however, revealed a number of discrepancies. (*See, e.g.*, Dkt. No. 443 (listing P39P through P39 AA as exhibits on the exhibit list but failing to include such exhibits on the exhibits provided to the Court and defense counsel)). To the extent at this stage of the case that Plaintiff has failed to provide exhibits or failed to provide a matching exhibit list that can reasonably be used to assess the admissibility of her proposed exhibits, the problem is solely attributable to Plaintiff's conduct and the Court finds that the sanction of exclusion of any such exhibits is warranted.

Accordingly, having weighed the relevant factors the Court finds the sanctions of dismissal and wholesale preclusion of the Plaintiff's exhibits too harsh, even if they may be warranted. Indeed, at least one court, in somewhat similar circumstances, dismissed the pro se action for repeated failure to comply with the court's trial orders. *See O'Neal v. Ewald*, No. 16-cv-4318, 2021 WL 4316754, at *3, 2021 U.S. Dist. LEXIS 182320, at *6 (E.D.N.Y. Sept. 23, 2021) (dismissing action for pro se plaintiff's failure to comply with court's orders, noting the

"the litany of non-compliance by O'Neal, as well as the Herculean—if ultimately fruitless—efforts by judges of this Court, as well as defendants' counsel, to obtain cooperation from O'Neal in the reasoned litigation of this matter" and the plaintiff's regular "barrage" of "motions and applications that were entirely inappropriate, irrelevant and immaterial" and the Court and counsel's "unsuccessful[] endeavor[] to obtain his participation in submitting a pre-trial order, such that the matter could be set down for trial").

With respect to Plaintiff's conduct in questioning Francis Christensen during his deposition, the Court cautions Plaintiff that this conduct will not be permitted during trial and advises Plaintiff that failure to follow the Court's instructions at trial in any manner, including in her conduct toward witnesses, presentation of evidence, counsel, Court staff, or the Court may result in the sanctions of preclusion of evidence, witnesses, monetary sanctions, or dismissal of this action.

## IV. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion for sanctions (Dkt. No. 437) is **DENIED without prejudice** to renewal at trial.

**IT IS SO ORDERED.**

Dated: April 15, 2022
Syracuse, New York

Brenda K. Sannes
U.S. District Judge