UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JEAN OLIVER,

                                  Plaintiff,                1:15-cv-00444 (BKS/DJS)

v.

NEW YORK STATE POLICE; WAYNE OLSON, in his
individual capacity; MARTIN MCKEE, in his individual
capacity; PAUL KELLY, in his individual capacity,

                                Defendants.
_____

**Appearances:**

*Plaintiff pro se:*
Jean Oliver
Elma, NY 14059

*For Defendants New York State Police,
Olson, and Kelly:*
Daniel J. Moore
Joshua D. Steele
Daniel J. Palermo
Harris Beach PLLC
99 Garnsey Road
Pittsford, NY 14534

*For Defendant McKee:*
Lisa F. Joslin
Gleason, Dunn, Walsh & O'Shea
40 Beaver Street
Albany, NY 12207

**Hon. Brenda K. Sannes, Chief United States District Judge:**

MEMORANDUM-DECISION AND ORDER

I.      INTRODUCTION

      Plaintiff pro se Jean Oliver brought this employment discrimination and retaliation action

against her former employer, the New York State Police ("NYSP"), and three of her former

supervisors, Paul Kelly, Wayne Olson, and Martin McKee. Following a nine-day trial, at which Plaintiff was assisted by stand-by counsel,[1] the jury returned a verdict finding that Plaintiff had failed to prove her claims by a preponderance of the evidence. (Dkt. No. 459). The Court entered judgment in accordance with that verdict. (Dkt. No. 460). Presently before the Court is: (1) Plaintiff's motion for a new trial under Federal Rule of Civil Procedure 59(a),[2] (Dkt. No. 462), which is fully briefed, (Dkt. Nos. 471, 472 (Defendants' oppositions); Dkt. Nos. 473, 474, 475, 476, 477 (Plaintiff's reply affirmation and exhibits)); (2) Defendants' motion to strike Plaintiff's reply affirmation and exhibits, (Dkt. No. 483), and Plaintiff's opposition, (Dkt. Nos. 484 to 495); and (3) Defendants' motion for a bill of costs, (Dkt. No. 478), and Plaintiff's opposition and cross-motion for a stay pending appeal, (Dkt. No. 479). For the following reasons, the Court denies Plaintiff's motion for a new trial and Defendants' motion to strike and grants Defendants' motion for a bill of costs.

## II. RULE 59 MOTION

### A. Standard of Review

Under Rule 59(a), a court may "grant a new trial . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court," Fed. R. Civ. P. 59(a)(1)(A), "including if the verdict is against the weight of the evidence." *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 417 (2d Cir. 2012). The Second Circuit has explained that "a decision is

---

[1] The Court appointed, as stand by counsel for Plaintiff, a partner from the labor and employment practice of a prominent Syracuse law firm, to assist Plaintiff with the orderly presentation of her case at trial. (Dkt. No. 440).

[2] Plaintiff does not specify the legal basis on which she seeks relief. However, as her post-trial motion objects to the Court's "mishandling of the jury trial," (Dkt. No. 461, at 1), and Plaintiff made no motion at trial for judgment as a matter of law under Rule 50(a), a prerequisite to a post-trial motion under Rule 50(b), *see Holmes v. United States*, 85 F.3d 956, 962 (2d Cir. 1996) ("A Rule 50(b) motion can be made after the jury verdict, but only if a Rule 50(a) motion was made prior to the close of the evidence."), the Court, like Defendants, has construed Plaintiff's motion as one for a new trial under Rule 59(a), (*see* Dkt. No. 471-1, at 5 (noting in memorandum of law that "Plaintiff has not offered a legal basis for the relief she requests, but she appears to be seeking relief pursuant to FRCP Rule 59")).

against the weight of the evidence . . . if and only if the verdict is [1] seriously erroneous or [2] a miscarriage of justice." *Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 635 (2d Cir. 2002). On a Rule 59 motion for a new trial, the court "is free to weigh the evidence . . . and need not view it in the light most favorable to the verdict winner." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998). "A court considering a Rule 59 motion for a new trial must bear in mind, however, that the court should only grant such a motion when the jury's verdict is 'egregious.'" *Id*. (quoting *Dunlap-McCuller v. Riese Org.*, 980 F.2d 153, 158 (2d Cir. 1992)). Although a court "may weigh the evidence and the credibility of witnesses" when considering a Rule 59 motion, "a judge should rarely disturb a jury's evaluation of a witness's credibility and may not freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury." *Raedle*, 670 F.3d at 418 (citation and internal quotation marks omitted).

      **B.**    **Motion to Strike**

Before considering the merits of Plaintiff's motion for a new trial, the Court must address Defendants' motion to strike, (Dkt. No. 483), the reply Plaintiff filed in connection with her motion for a new trial, (Dkt. No. 473). Defendants assert that Plaintiff, by her own admission, mistakenly filed these submissions with this Court, instead of with the Second Circuit, where her appeal and motion to vacate this Court's judgment are pending. (Dkt. No. 483-1, ¶ 8); *see Oliver v. NYSP, et al.*, No. 22-979 (2d Cir.), ECF Nos. 1 (Notice of Civil Appeal filed May 2, 2022), 10 (Motion to Vacate Judgment filed May 5, 2022). Defendants further assert that Plaintiff's fifty-three page reply affirmation and exhibits, which total more than 700 pages of documents, go "far beyond the scope of both Plaintiff's original, three-page motion, and the Defendants' response." (Dkt. No. 483-1, ¶ 11). Plaintiff opposes Defendants' motion to strike, and although she has filed

more than 1,000 pages in support of her opposition, (Dkt. Nos. 484, 485, 486, 487, 488, 489, 490, 491, 492, 493, 494, 495), she has not responded to either of Defendants' arguments.

Defendants' first assertion—that Plaintiff did not intend her submissions to constitute her reply papers to her motion for a new trial, but to constitute her reply papers to the motion to vacate she filed in the Second Circuit—appears to be correct. Plaintiff represented as much to the Second Circuit Court of Appeals in a letter dated May 25, 2022, stating she "mistakenly filed [her] original Reply to the Defendants' Response [to her motion to vacate] on May 20, 2022, in the District Court, as [she] was unsure whether the Reply needed to be filed with the District Court or the Court of Appeals" and "sincerely apologiz[ing] for any confusion this may have caused." (Dkt. No. 483-1, at 6). Defendants' second assertion is also correct; the matters Plaintiff addressed in her reply papers impermissibly exceed the scope of the issues Plaintiff raised in her three-page motion for a new trial. *See Morgan v. McElroy*, 981 F. Supp. 873, 876 n.3 (S.D.N.Y. 1997) ("It is well settled in the Second Circuit that a party may not raise an argument for the first time in [her] reply brief."). Indeed, Plaintiff's fifty-three-page affirmation recounts the "History of the Facts in this case," the discovery process and the issues that arose during that process, Plaintiff's motion for a preliminary injunction, the summary judgment stage, pre-trial conferences and motions, and trial, highlighting alleged errors at each stage of the litigation. (*See generally* Dkt. No. 473). Further, the exhibits Plaintiff filed in support of her reply include documents related to the expert she hired, the search of her residence, and discovery responses—none of which are relevant to the arguments Plaintiff made in her motion for a new trial. (*See generally* Dkt. Nos. 473-1 to 473-4). However, given her status as a pro se litigant—albeit one that is very adept at briefing and filing documents with the Court—the Court declines to strike Plaintiff's reply submissions in their entirety. Instead, the Court will limit its consideration of

Plaintiff's reply submissions to those aspects that concern the arguments Plaintiff raised in her initial motion for a new trial. Accordingly, Defendants' motion to strike is denied and the Court turns to the merits of Plaintiff's motion for a new trial.

    **C.**    **Discussion**

        **1.**    **Exhibits**

Plaintiff argues that she is entitled to a new trial because the Court erroneously "refused to allow [her] to present the evidence [she] needed in order to establish" her claims. (Dkt. No. 463, at 1). Plaintiff observes that the Court permitted "every exhibit the defendants submitted" to be "presented to the jury," but permitted her to present "only very select and very specific exhibits" to the jury. (*Id.*). Plaintiff does not identify any specific exhibit the Court found inadmissible, but points to the Court's treatment of Plaintiff's Exhibit 62-2 as an example of the Court's unfair treatment of her evidence. (*Id.*). Specifically, Plaintiff represents that during the April 15, 2022 pretrial conference, the "Court insisted" that Plaintiff's Exhibit 62-2 was "not on the thumb drive [Plaintiff] provided to the parties in this case." (Dkt. No. 462, at 1). However, in working with one of Defendants' attorneys "to confirm several" exhibits during trial, Plaintiff "discovered" that the attorney "did in fact have Exhibit P62-2 on her thumb drive." (*Id.*). Plaintiff asserts that if she "had not observed this exhibit on Ms. Joslin's computer and pointed out to here that the exhibit was right there on her computer, a portion of these exhibits would have also never been admitted into evidence by this Court." (*Id.*).

The history of the difficulty the Court and the parties experienced in attempting to parse Plaintiff's exhibits and locate documents, and reconcile the documents Plaintiff provided on thumb drives—which often lacked individual exhibit labels, contained multiple documents within a single exhibit, and reflected different numbers than those on Plaintiff's exhibit lists— with Plaintiff's exhibit lists, is laid out in the Court's Memorandum-Decision and Order denying

Defendants' motion for sanctions and is incorporated herein. (Dkt. No. 451). It is also reflected in the Court's extensive and time-consuming pretrial conferences during which the Court and the parties worked to review and determine the admissibility of Plaintiff's exhibits. (Text Minute Entry for first pretrial conference on February 25, 2022; Dkt. No. 464 (transcript of second pretrial conference on April 13, 2022); Dkt. No. 465 (transcript of third pretrial conference on April 14, 2022); Dkt. No. 466 (transcript of fourth pretrial conference on April 15, 2022)). Even after trial began, the Court permitted Plaintiff to continue to organize and label her exhibits, often directing the parties to meet and confer over breaks and in the evenings to work toward an agreement concerning Plaintiff's exhibits.

As the following description of Plaintiff's Exhibit 62-2, illustrates, it was not so much a question of whether Plaintiff had provided the documents that comprised that exhibit, it was a question of *locating* the documents within the thumb drives, and *reconciling* the numbering provided on the thumb drives, which often differed from the numbering on Plaintiff's exhibit lists. Plaintiff's Exhibit List, filed April 8, 2022, (Dkt. No. 443, at 12–13), divided P62 into P62-1 ("The removal of Plaintiff's undercover duties – Plaintiff") and P62-2 ("The Defendants file false statements to remove Plaintiff's undercover duties"), (*id.*). P62-1 was further divided into eighteen sub-exhibits denoted by letters P62-1A through P62-1R, (Dkt. No. 443, at 12–13), and P62-2 was further divided down into thirty-seven sub-exhibits denoted as P62-2A through P62-2HH, (*id.* at 13). However, the exhibits contained on the thumb drive Plaintiff provided to the Court were labeled "P-62(A)" through "P-62(NN)" and while the exhibits appeared to contain some of the documents listed on Plaintiff's April 8 Exhibit List, the documents were mislabeled. For example, the "Martin McKee memorandum to Mark Koss dated May 23, 2014" was labeled as "P-62NN" in the thumb drive, but listed as "P62-2GG" on Plaintiff's April 8 Exhibit List.

(Dkt. No. 443, at 13; *see also* Dkt. No. 466, at 5–22 (transcript of April 15, 2022 pretrial conference, including the lengthy discussion of P62 and P62-2 and the efforts made by all present to locate and reconcile them)). On day three of the trial, Plaintiff produced a hard copy of the exhibits comprising P62, including the P62-2 sub-exhibits. After the parties met and conferred, all but four of the thirty-seven exhibits within P62-2 were admitted into evidence, many on the stipulation of defense counsel. (Dkt. No. 454, at 65–74).[3] In all, more than 120 of Plaintiff's exhibits were admitted into evidence at trial. (Dkt. No. 454; Dkt. No. 454-1).

As further evidence of the Court's alleged unfairness and bias toward Plaintiff and her exhibits, Plaintiff cites the Court's admission of all of Defendants' proposed exhibits into evidence. (Dkt. No. 462, at 1). However, not only did Plaintiff fail to object to any of Defendants' exhibits, but Plaintiff *stipulated* to the admission into evidence of *all* of Defendants' thirty-nine exhibits. (Dkt. No. 455). Plaintiff's argument is therefore without merit.

The Court's handling of Plaintiff's exhibits and requirement that they be properly organized and labeled and that the copies each party, the Court, and the jury possessed were identical, served to ensure the orderly presentation of the evidence to the jury. *See Anderson v. Great Lakes Dredge & Dock Co.*, 509 F.2d 1119, 1131 (2d Cir. 1974) (explaining that a trial judge must "set the tone of the proceedings and exercise sufficient control to insure that the trial will be an orderly one in which the jury will have the evidence clearly presented"). To be sure, a significant amount of trial time focused on Plaintiff's exhibits and presentation of evidence, while comparatively little time was spent on Defendants' exhibits and witnesses, which were fewer in number, properly labeled and organized, and stipulated to by all parties. However,

---

[3] P62-2B, P62-2Z, P62-AA, and P62-2BB were not admitted into evidence and Plaintiff does not challenge the exclusion of these exhibits here.

because Plaintiff's exhibits were numerous, disorganized, and often mislabeled, such time was necessary to ensure all parties, including Plaintiff herself, a fair trial. Thus, "[w]hile a judge should strive to create an 'atmosphere of perfect impartiality,' the law assures litigants a fair trial, not a perfect one." *Luca v. Cnty. of Nassau*, 344 F. App'x 637, 639 (2d Cir. 2009) (first quoting *Shah v. Pan Am. World Servs., Inc.*, 148 F.3d 84, 98 (2d Cir. 1998); and then citing *Zinman v. Black & Decker (U.S.), Inc.*, 983 F.2d 431, 436 (2d Cir. 1993)). Accordingly, Plaintiff's motion for a new trial based on the Court's handling of her exhibits at trial is denied.

### 2. Witnesses

Plaintiff seeks a new trial on the ground that she was not permitted to call Timothy Bour, Michael Davis, Michael Bruggman, or Theresa Temple to testify as witnesses at trial. (Dkt. No. 462, at 2). Defendants oppose Plaintiff's motion. (Dkt. Nos. 471, 472).

On January 19, 2022, after reviewing Plaintiff's first witness list, which included a request for "guidance on the process for obtaining" trial subpoenas for her witnesses, (Dkt. No. 383, at 1), the Court issued a Text Order advising Plaintiff that she "must provide sufficient details of each witness's proposed testimony to allow the Court to determine whether the testimony is relevant to the remaining claims; the Court will only issue subpoenas for witnesses who have relevant testimony." (Dkt. No. 386). In addition, the Court directed Plaintiff "to coordinate with defense counsel to determine the witnesses for whom Plaintiff does not need to have subpoenas issued," as there were likely witnesses whom both Plaintiff and Defendants intended to call at trial. (Dkt. No. 386). In an email dated January 28, 2022, defense counsel notified Plaintiff that Defendants intended to issue subpoenas for, among others, Bour, Davis,

Bruggman, and Temple, thereby "obviating the need for you to issue your own subpoenas for their testimony."[4] (Dkt. No. 462-1, at 1).

On the sixth day of trial, Defendants notified the Court that they were planning to eliminate Bour, Davis, Bruggman, and Temple from their witness list in order to meet the trial schedule and because they no longer needed them given how the case was going. Plaintiff responded that, based on Defendants' representation that they would subpoena those witnesses, she had not requested the issuance of subpoenas for those witnesses and indicated that she was concerned that Davis, in particular, would not be called as a witness. Defense counsel acknowledged that the parties had spoken about "Davis some time ago," but noted that Plaintiff's recent witness lists had not included Davis. The Court then asked Plaintiff: "What relevant information do you seek to elicit from Mr. Davis?" Plaintiff provided a convoluted and wide-ranging response[5] that is best deciphered as indicating that Davis's testimony was relevant to her

---

[4] In all, Plaintiff filed seven witness lists. (Dkt. Nos. 383, 384 (filed January 10, 2022), Dkt. No. 398 (filed January 26, 2022), Dkt. No. 405 (filed February 16, 2022), Dkt. No. 408 (filed March 2, 2022); Dkt. No. 410 (filed March 7, 2022); Dkt. No. 420 (filed March 17, 2022); Dkt. No. 444 (filed April 8, 2022)). Plaintiff identified Davis as a witness on her first five witness lists, but not on her last two witness lists. Bour, Bruggman, and Temple never appeared on Plaintiff's witness lists.

[5] Although Plaintiff argued at length in response to the Court's inquiries as to the relevance of Davis's testimony, she only briefly addressed the testimony Davis might provide; much of Plaintiff's argument concerned an alleged ongoing pattern of cover-ups and false statements by her supervisors and others in the NYSP as part of a joint and ongoing effort to retaliate against her:

> THE COURT: . . . [Y]ou're talking a lot because you're talking about an undercover transaction that was supposed to take place May 13 . . . 2014, so you have a lot of complaints with how they describe what happened, but even assuming you were right on those complaints, what's the relevance to your claim that you were forced to transfer?
>
> MS. OLIVER: Ma'am, the relevance is if you look at every single incident, there are memorandas, there's documents being put together at the direction of these defendants, they have been falsified, they are false statements, there's false sworn testimony, and in every single time, I am the one who faces the consequences of that. It is one retaliatory act after another. And to not allow those documents in, if you look at the letter that Wayne Olson sent to Frank Koehler in May of 2014, that is three months, it's actually four months after Jeremy Peterson sexual harassment complaint is founded. Wayne Olson never discloses to Frank Koehler that in fact Jeremy Peterson was found to have sexually harassed me, because he

9

retaliatory transfer claim, i.e., that in May 2014, Defendants NYSP and McKee retaliated against her for filing EEO complaints of harassment and retaliation by forcing her to transfer from CNET to CTIU. Specifically, Plaintiff asserted that she expected to elicit information about the May 13, 2014 operation that immediately preceded the allegedly retaliatory transfer in order to contradict Defendants' contentions that she was "rushing" and "wasn't planning out" the operation. Plaintiff further asserted that she intended to show that that the memos and documents Bruggman, who was working on the operation with Plaintiff, and Davis, who was Plaintiff's supervisor at the time, prepared regarding the May 13 operation were false. Plaintiff also explained that it was her "contention" that when Davis "testified under oath, he committed perjury."[6] After listening to Plaintiff's proffer, the Court, after weighing the evidence in accordance with Federal Rule of Evidence 403,[7] declined to permit Plaintiff to call Davis or Bruggman as witnesses:

> I've tried to listen very carefully to your claims and I've tried to look at the documents that you've submitted to me very carefully, and I don't find that you've made a proffer of how the testimony of Mike has no excuse for transferring me on to the same team as Jeremy Peterson. So he hides that fact.
>
> And if you look at the letter of censure from Kevin Gagan, it's hidden again. Why is nobody willing to indicate that Jeremy Peterson was founded, because they forced me to transfer. And when they did, your Honor, you're not going to participate in any unit investigations, you're not going to go do anything, you're going to sit there by yourself and we're going to isolate you and we're going to keep coming after you and we're going to keep building these documents.
>
> You saw it, your Honor, in the testimony that I presented, the documents that Martin McKee is streamlining, the memorandums of his individuals to go directly to Wayne Olson who sent that right up to division level. They didn't see those documents, there is no one in the Division of State Police that would ever send an undercover in a situation where the target had already threatened that informant with a gun, but he'll stand there under sworn, under sworn testimony and say that . . . that he would.

---

[6] Plaintiff did not identify the testimony to which she was referring.

[7] Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

10

> Davis or Mr. Bruggman would be relevant and admissible at this point in the trial, and that . . . any relevant testimony they have would be outweighed by the confusion of issues, misleading the jury, and cumulative evidence because we already have a fair amount of evidence regarding these transactions.

Neither the parties nor the Court further addressed Defendants' decision not to call Bour and Temple as witnesses. As noted above, of the four witnesses at issue, only Davis appeared on Plaintiff's witness lists. However, given Plaintiff's pro se status and Defendants' representation that she need not seek subpoenas for these witnesses, the Court nonetheless considers whether the absence of these witnesses from trial warrants a new trial in this case.

### 3. Davis and Bruggman

Neither at trial nor in her post-trial motion did Plaintiff provide a proffer calling into question the Court's conclusion that the danger of presenting cumulative evidence, confusing the issues, or misleading the jury substantially outweighed any minimal probative value of Davis's or Bruggman's testimony. Plaintiff, Defendant Kelly, Defendant McKee, Defendant Olson, Jacqueline Baldwin, June Bradley, and Francis Christensen provided extensive testimony regarding the events of May 13, 2014 and/or Plaintiff's transfer out of CNET. Bradley, whom Plaintiff called to tell she had found a memo Bruggman had drafted about her on the office share drive, testified that Plaintiff was "so upset" when she called that Bradley asked Investigator Scott Gilman in the NYSP's employee assistance unit to contact her. Christensen stated that he helped to orchestrate Plaintiff's transfer after receiving a call from Gilman, who was concerned not only about a personnel complaint against Plaintiff in connection with taking a file, but also about Plaintiff "not being in the best work environment for her." Plaintiff presented her version of these events at trial, including the planning for the May 13 operation, Bruggman's actions at the office that day, her discovery of Bruggman's memo, her belief that Bruggman's memo was "not accurate," her reporting of the memo to Bradley, her overhearing Defendant McKee "telling

11

someone on the phone" that "she's stealing files," and the memo she received that night regarding her transfer.

Plaintiff has not identified any additional information that Davis or Bruggman could have provided and argues only that she would have shown that both made false statements regarding the underlying May 13 undercover operation that led to Bruggman's memo. Thus, given the minimal probative value of any testimony by these witnesses, and the danger of presenting cumulative evidence and confusing the issues—the May 13 undercover operation was an underlying event, tangential to her transfer—the Court's denial of Plaintiff's request that Davis and Bruggman testify does not warrant a new trial. "Rule 403 determinations command especial deference because the district court is in 'the best position to do the balancing mandated by Rule 403.'" *United States v. Al Kassar*, 660 F.3d 108, 123 (2d Cir. 2011) (quoting *United States v. Stewart*, 590 F.3d 93, 133 (2d Cir. 2009)). The Second Circuit has explained that "[s]o long as the trial court 'conscientiously balanced the proffered evidence's probative value with the risk for prejudice,'" it "will reverse its conclusion 'only if it is arbitrary or irrational.'" *Id.* (quoting *United States v. Awadallah*, 436 F.3d 125, 131 (2d Cir. 2006)). "Even manifest error does not require reversal if the error was harmless," that is, if we can conclude with fair assurance that the evidence would not have substantially influenced the jury. *Id.* (citing *United States v. Miller*, 626 F.3d at 682, 687–88 (2d Cir. 2010)). Moreover, it is clear that the jury credited Defendants' version of events regarding the transfer, while discrediting Plaintiff's. The Court declines to disturb the jury's evaluation of the credibility of the trial witnesses. *Raedle*, 670 F.3d at 418 (noting that "a judge 'should rarely disturb a jury's evaluation of a witness's credibility'" (quoting *DLC Mgmt. Corp.*, 163 F.3d at 134)).

### 4. Temple and Bour

As to Temple and Bour, Plaintiff presented no argument at trial and made no specific objection to Defendants' announcement that they no longer intended to call Temple and Bour as witnesses. Further, Plaintiff makes no proffer as to the testimony either might have provided at trial; she asserts only that she had evidence that "would have contradicted the false statements contained in the memoranda these witnesses submitted to Martin McKee and Wayne Olson in support of my forced transfer" to CTIU.[8] (Dkt. No. 462, at 2). For all the reasons discussed above, the Court therefore finds Defendants' decision not to call Temple or Bour provides no basis on which to grant a new trial.

### D. Impeachment of Witnesses

Plaintiff argues that the Court prohibited her from impeaching Defendants McKee and Kelly with "the false statements they filed and the false sworn testimony defendant, Martin McKee, repeatedly offered in this case . . . all of which would have certainly established my claims against these defendants beyond a preponderance of the evidence." (Dkt. No. 462, at 2). As Plaintiff does not identify the statements or testimony to which she refers in her post-trial motion and given the large number of exhibits discussed at trial, the Court has no basis on which to evaluate Plaintiff's argument. In addition, Plaintiff conducted an extensive cross-examination of both McKee and Kelly, during which she repeatedly questioned not only the procedures they used in collecting memoranda regarding Plaintiff's conduct and various events at issue in this case, but also the veracity of statements they made in the memoranda they issued. Indeed, Plaintiff cross-examined McKee regarding his prior deposition testimony in this case. Plaintiff is therefore not entitled to a new trial based on the Court's refusal to admit unidentified evidence.

---

[8] Plaintiff does not identify this evidence.

In sum, none of Plaintiff's arguments—whether taken singly or in combination—raises a possibility that the jury verdict in this case was "seriously erroneous" or a "miscarriage of justice." *Farrior*, 277 F.3d at 635. The Court therefore denies Plaintiff's motion for a new trial.

## III.    BILL OF COSTS

### A.    Applicable Standard

Federal Rule of Civil Procedure 54(d)(1) states in relevant part that, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs . . . should be allowed to the prevailing party." "[T]he Supreme Court has held that the term 'costs' includes only the specific items enumerated in 28 U.S.C. § 1920." *Whitfield v. Scully*, 241 F.3d 264, 269 (2d Cir. 2001), *abrogated on other grounds by Bruce v. Samuels*, 577 U.S. 82 (2016). Section 1920 provides that the following costs are taxable: (1) fees of the clerk and marshal; (2) fees for transcripts "necessarily obtained for use in the case"; (3) fees for printing and witnesses; (4) fees for exemplification and copying costs "where the copies are necessarily obtained for use in the case"; (5) docketing fees under 28 U.S.C. § 1923; and (6) fees for court-appointed experts and interpreters. 28 U.S.C. § 1920. "The burden is on the prevailing party to establish to the court's satisfaction that the taxation of costs is justified." *Cohen v. Bank of N.Y. Mellon Corp.*, No. 11-cv-456, 2014 WL 1652229, at *1, 2014 U.S. Dist. LEXIS 57829, at *2 (S.D.N.Y. Apr. 24, 2014) (quoting *John G. v. Bd. of Educ.*, 891 F. Supp. 122, 123 (S.D.N.Y. 1995)). "[B]ecause Rule 54(d) allows costs 'as of course,' such an award against the losing party is the normal rule obtaining in civil litigation, not an exception." *Whitfield*, 241 F.3d at 270.

### B.    Discussion

Defendant NYSP, Paul Kelly, and Wayne Olson seek a total of $12,081.64 in costs associated with defending this action. (Dkt. No. 478). Plaintiff filed a response and cross-motion for a stay of Defendants' motion for costs pending appeal. (Dkt. No. 479). However, Plaintiff

14

does not advance any argument otherwise opposing Defendants' motion for costs. Defendants seek $11,047.78 for transcripts and $1,033.86 for witness fees.

### 1. Transcript Fees

A prevailing party is "ordinarily . . . permitted to recover costs for the original and one copy of [a] transcript[]." *C.C. ex rel. Camarata v. Polaris Indus., Inc.*, No. 14-cv-0975, 2018 WL 3031848, at *5, 2018 U.S. Dist. LEXIS 101785, at *18 (N.D.N.Y. June 19, 2018). Stenographer fees are generally recoverable, *Hines v. City of Albany*, 862 F.3d 215, 219 n.2 (2d Cir. 2017), as are exhibit fees, because "exhibits are a necessary part of an original deposition transcript," *In re Omeprazole Patent Litig.*, No. 00-cv-6749, 2012 WL 5427849, at *4, 2012 U.S. Dist. LEXIS 160046, at *18 (S.D.N.Y. Nov. 7, 2012); *see* N.D.N.Y. *Guidelines for Bills of Costs*, II(D)(1)(h), (i) (listing "[c]ourt reporter fees for attendance and travel for depositions" and "copies of papers obtained as exhibits in the deposition" as taxable costs).[9]

Here, Defendants seek costs for an original and two copies of Plaintiff's deposition, for a total of $9,581.73. (Dkt. Nos. 478-1, at 5–8). It appears that one of the copies of Plaintiff's deposition was for Defendant McKee, who is separately represented and who has not made an application for costs. Therefore, as Defendants NYSP, Kelly, and Olson are only entitled to an original and one copy, the Court reduces Defendants' award by one-third, to $6,419.76. That amount is further reduced by $156, the amount charged for "postage and handling fees" in connection with Plaintiff's deposition transcript. Delivery fees are generally disallowed. *See Sevenson Envtl. Servs., Inc. v. Shaw Envtl., Inc.*, 246 F.R.D. 154, 156 (W.D.N.Y. 2007); *Cutie v. Sheehan*, No. 11-cv-66, 2016 WL 3661395, at *5, 2016 U.S. Dist. LEXIS 86548, at *16 (N.D.N.Y. July 5, 2016); *see also* N.D.N.Y. *Guidelines for Bills of Costs*, II(D)(2)(d) (providing

---

[9] *Available at* https://www.nynd.uscourts.gov/sites/nynd/files/Guidelines_Bill_of_Costs_091021.pdf.

that "[c]ourt reporter postage or delivery charges for a transcript" are not taxable). Therefore, the total to which Defendants are entitled for Plaintiff's transcript is $6,283.82. Defendants' request for an award of costs for transcripts of several pretrial proceedings, which total $1,466.05, appears to be for a single copy, (*see* Dkt. No. 478-1, at 10–15), and is therefore warranted. Accordingly, Defendants are entitled to a total award of costs in the amount of $7,749.87 for transcript fees.

2. **Witness Fees**

Defendants seek an award of costs in the amount of $240.00 for the attendance of six witnesses at trial, as well as $793.86 in mileage for those witnesses. (Dkt. No. 478-1, at 3). As the statutory attendance fee is $40.00 per witness, and the mileage for each of those witnesses has been calculated at the rate of $0.585, as prescribed under 28 U.S.C. § 1821(c)(2) and the United States General Services Administration Privately Owned Vehicle Mileage Rates, effective January 1, 2022, see https://www.gsa.gov/travel/plan-book/transportation-airfare-pov-etc/privately-owned-vehicle-mileage-rates/pov-mileage-rates-archived (last visited Jan. 17, 2023), Defendants' request for costs in the amount of $1,033.86 is granted. *See* N.D.N.Y. *Guidelines for Bills of Costs* II(F)(1)(a), (b) (providing that "[w]itnesses are entitled to $40.00 per day of testimony" and mileage at the rate "set by the General Services Administration").

C. **Stay Pending Appeal**

Plaintiff moves for a stay of Defendants' motion for costs "pending a decision by the U.S. Court of Appeals." (Dkt. No. 479, ¶ 3). Under this Court's Guidelines for Bills of Costs, "[u]less otherwise ordered by the District Court, or the Circuit Court of Appeals pursuant to Fed. R. App. P. 8, the filing of an appeal shall not stay the taxation of costs." N.D.N.Y. *Guidelines for Bills of Costs* I(F)(2). While Plaintiff does not identify the legal authority for such a stay, the Court notes that while Fed. R. Civ. P. 62, which governs stays of proceedings to enforce a

16

judgment and "outlines the mechanism for how a stay may be obtained while an appeal is pending," does not appear applicable to a bill of costs. *Miller v. City of Ithaca*, No. 10-cv-597, 2017 WL 61947, at *4, 2017 U.S. Dist. LEXIS 1310, at *12 (N.D.N.Y. Jan. 5, 2017). However, because "Rule 62 it does not limit the district court's inherent power to issue a stay in a manner that does not fall within the scope of the Rule," *id.*; *accord Eddystone Rail Co., LLC v. Jamex Transfer Servs., LLC*, No. 17-cv-1266, 2019 WL 181308, at *4, 2019 U.S. Dist. LEXIS 5416, at *10–11 (S.D.N.Y. Jan. 11, 2019) ("It is well-settled that a district court has discretionary power to stay proceedings pursuant to its inherent power to control its docket." (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936))), the Court utilizes its framework for evaluating Plaintiff's request. The Court concludes that Plaintiff has failed to meet her burden of showing that a stay is warranted.

"The party requesting a stay bears the burden of showing that the circumstances justify an exercise of th[e court's] discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009). In deciding whether to stay proceedings, courts consider four factors, the first two of which "are the most critical": "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *accord In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007).

Here, Plaintiff has not made any showing of a likelihood of success on the merits or irreparable injury absent a stay. Having considered the applicable factors, the Court finds that Plaintiff has failed to meet her burden of showing that the circumstances here warrant a stay, and her motion for a stay of taxation of costs pending appeal is therefore denied.

## IV. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's motion for a new trial (Dkt. No. 462) is **DENIED**; and it is further

**ORDERED** that the motion to strike (Dkt. No. 483) by Defendants NYSP, Kelly, and Olson is **DENIED**; and it is further

**ORDERED** that the motion for costs (Dkt. No. 478) by Defendants NYSP, Kelly, and Olson is **GRANTED in part** to the extent that Defendants are awarded $8,783.73 in costs, but is otherwise **DENIED**; and it is further

**ORDERED** that Plaintiff's cross-motion for a stay of Defendants' motion for costs pending appeal (Dkt. No. 479) is **DENIED.**

**IT IS SO ORDERED.**

Dated: January 18, 2023
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge